# EXHIBIT 1

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form. | ☒ IDHR | 2020CF2631 |
| # 20W1113.09 | ☐ EEOC | |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) | | TELEPHONE NUMBER (include area code) |
|---|---|---|
| Reyna Arroyo | | ▮ |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| ▮ | Chicago, IL 606▮ | |
| | | MM / DD / YYYY |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES. MEMBERS 15+ | TELEPHONE NUMBER (include area |
|---|---|---|
| City of Chicago Police Department | | (312) 745-5000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 3510 S. Michigan Ave. | Chicago, IL 60608 | Cook |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Disability | 3/31/2019   12/15/2019 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

**S E E   A T T A C H E D**

Page 1 of 3                                                                                                    DCK

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME |
|---|---|
| | THIS _10_ DAY OF _July_, 202_ |
| | x _E. Fabiola Castaneda_ |
| | NOTARY SIGNATURE |

E FABIOLA CASTANEDA
Official Seal
Notary Public - State of Illinois
My Commission Expires Apr 10, 2022
NOTARY STAMP

x _____ 10 July 2020
SIGNATURE OF COMPLAINANT              DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

EEO-5 FORM (Rev. 7/12-INT)                                                        **Return this copy**

**ARROYO.DEF.002419**

Charge Number: 2020CF2631
Complainant: Reyna Arroyo
Page 2 of 3

I.    A.    **ISSUES/BASIS**
**FAILURE TO ACCOMMODATE- MARCH 31, 2019, DUE TO MY DISABILITY, LEFT SHOULDER DISORDER**

       B.    **PRIMA FACIE ALLEGATIONS**

         1.    I am an individual with a disability within the meaning of Section 1-103(I) of the Human Rights Act.

         2.    Respondent was aware of my disability.

         3.    I was hired on March 16, 1998. My performance as a police officer met Respondent's expectations.

         4.    On March 31, 2019, I was subjected to a failure to accommodate when Respondent removed me from my limited duty position. Respondent offered no alternative positions which met my limited mobility restrictions.

         5.    Respondent failed to provide any reasonable accommodation which would have permitted me to perform the essential functions of the job.

II.    A.    **ISSUES/BASIS**
**FAILURE TO ASSIGN- MARCH 31, 2019, DUE TO MY DISABILITY, LEFT SHOULDER DISORDER**

       B.    **PRIMA FACIE ALLEGATIONS**

         1.    I am an individual with a disability within the meaning of Section 1-103(I) of the Human Rights Act.

         2.    Respondent was aware of my disability.

         3.    I was hired on March 16, 1998. My performance as a police officer met Respondent's expectations.

         4.    On March 31, 2019, Respondent removed me from my limited duty position. Respondent refused to assign me any additional duties. I was not placed on any official leave and was forced to use my benefit time while remaining unassigned.

         5.    My disability is unrelated to my ability to perform the essential functions of my job.

**Return this copy**

ARROYO.DEF.002420

Charge Number:  2020CF2631
Complainant:  Reyna Arroyo
Page 3 of 3

III.  A.  **ISSUES/BASIS**
**FORCED MEDICAL LEAVE- DECEMBER 15, 2019, DUE TO MY DISABILITY, LEFT SHOULDER DISORDER**

B.  **PRIMA FACIE ALLEGATIONS**

1.  I am an individual with a disability within the meaning of Section 1-103(I) of the Human Rights Act.

2.  I was hired on March 16, 1998. My performance as a police officer met Respondent's expectations.

3.  On December 15, 2019, my benefit time expired and Respondent placed me on an unpaid forced medical leave.

4.  My disability is unrelated to my ability to perform the essential functions of my job.

**Return this copy**

**ARROYO.DEF.002421**

EXHIBIT 2

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**

REYNA ARROYO, )
)
)
COMPLAINANT, ) CHARGE NO. 2020CF2631
AND ) EEOC NO. 21BA01450
)
CITY OF CHICAGO POLICE )
DEPARTMENT, )
)
)
)
RESPONDENT. )

**ORDER OF CLOSURE**

Charge Number 2020CF2631 having been filed with the Department of Human Rights by Complainant against Respondent, and Complainant having submitted a written request to withdraw the charge pursuant to the Department's Rules and Regulations;

NOW, THEREFORE, it is hereby ORDERED that Complainant's request to withdraw is approved and that Complainant's charge(s) be and the same is (are) closed. Further, this action also terminates the Equal Employment Opportunity Commission's (EEOC's) processing of this charge.

ENTERED ON November 6, 2020

DEPARTMENT OF HUMAN RIGHTS

BY: _____
Brent A. Harzman, Manager
Charge Processing Division

OdrCls_EEOC Rev. 02/2020

**ARROYO.DEF.002241**

# EXHIBIT 3

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**VOLUNTARY WITHDRAWAL REQUEST FORM**

RESPONDENT:  City of Chicago Police Department

COMPLAINANT: Reyna Arroyo

I hereby request to withdraw my charge filed against the above named Respondent with the

Illinois Department of Human Rights (Charge Number 2020CF2631).  Withdrawal is being

made of my own free will, without pressure from any organization or individual.

If I am withdrawing this charge because I have reached a settlement with the Respondent, which

has not been approved by both the Department and the Human Rights Commission, those agencies

cannot enforce that settlement.

I understand that the withdrawal of my charge is effective upon receipt by the Department of my

signed and dated Voluntary Withdrawal Request Form.  The Department will then issue an Order

of Closure as soon as administratively feasible and will not otherwise delay processing.

_____
Signature

01 Oct 2020
_____
Date

NOTE:     The Department of Human Rights will not accept or process a Voluntary
Withdrawal Request Form with different, additional, edited or changed text from
its standard form above.

6 Voluntary Withdrawal Request Form.docm
9 18

ARROYO.DEF.002243

EXHIBIT 4

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**
REYNA ARROYO )
)
)
COMPLAINANT, ) CHARGE NO.    2020CF2631
AND ) EEOC NO.        N/A
)
CITY OF CHICAGO POLICE )
DEPARTMENT )
)
)
)
RESPONDENT. )

## CORRECTED ORDER OF CLOSURE

Charge Number 2020CF2631 having been filed with the Department of Human Rights by Complainant against Respondent, and Complainant having submitted a written request to opt out of the investigation and the charge pursuant to the Department's Rules and Regulations;

NOW, THEREFORE, it is hereby ORDERED that Complainant's request to withdraw is approved and that Complainant's charge(s) be and the same is (are) closed.

ENTERED ON November 18, 2020

DEPARTMENT OF HUMAN RIGHTS

BY: _____
Brent A. Harzman, Manager
Charge Processing Division

OdrCls_woEEOC Rev. 03/06/2020

**ARROYO.DEF.002239**

# EXHIBIT 5



U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

December 30, 2020

Ms. Reyna Arroyo

██████████████████████

██████████████████████

Re:  EEOC Charge Against City of Chicago Police Dept.
     No. 21B202001450

Dear Ms. Arroyo:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under:  Title I of the Americans with Disabilities Act of 1990,   42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

    The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by     /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Chicago District Office, EEOC

City of Chicago Police Dept.

# EXHIBIT 6

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

RECEIVED *JMK*

FEB 25 2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Reyna Arroyo
_____

_____

Plaintiff(s),

v.

City of Chicago Police Dept.
_____

_____

Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)

C
21cv1148
Judge Feinerman
Mag. Judge Cummings

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Reyna Arroyo of the county of Cook in the state of Illinois.

3. The defendant is City of Chicago Police Dept., whose street address is 3510 S. Michigan Avenue - Human Resources 4th Floor,
(city) Chicago (county) Cook (state) Illinois (ZIP) 60653
(Defendant's telephone number) (312)- 745-5300

4. The plaintiff sought employment or was employed by the defendant at (street address)
3510 S.Michigan Avenue (city) Chicago
(county) Cook (state) Illinois (ZIP code) 60653

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.     The plaintiff [*check one box*]

    (a)  ☐   was denied employment by the defendant.

    (b)  ☒   was hired and is still employed by the defendant.

    (c)  ☐   was employed but is no longer employed by the defendant.

6.     The defendant discriminated against the plaintiff on or about, or beginning on or about,
(month)3/31/2019 , _____12/15/2019_____.

7.1    *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a)    The defendant is not a federal governmental agency, and the plaintiff
[*check one box*] ☒*has*  ☐*has not* filed a charge or charges against the defendant

asserting the acts of discrimination indicated in this complaint with any of the

following government agencies:

      (i)   ☐ the United States Equal Employment Opportunity Commission, on or about

(month)_____ (day)_____ (year)_____.

      (ii)  ☒  the Illinois Department of Human Rights, on or about

(month)_____July_____ (day)____10th_____ (year)__2020_____.

    (b)   If charges *were* filed with an agency indicated above, a copy of the charge is

attached. ☒  Yes, ☐  No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received. The

plaintiff has no reason to believe that this policy was not followed in this case.

7.2    The defendant is a federal governmental agency, and

    (a)    the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

2

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)_____ (day)_____ (year) _____

☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)    Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ Yes   ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ Yes   ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐    the United States Equal Employment Opportunity Commission has not

issued a *Notice of Right to Sue.*

(b) ☒    the United States Equal Employment Opportunity Commission has issued

a *Notice of Right to Sue*, which was received by the plaintiff on

(month)____December_____ (day)___30th_____ (year)__2020_____ a copy of which

*Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [***check only***

***those that apply***]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

Rev. 06/27/2016

(c) ☒ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12.    The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☒ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h)    other (specify): _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

13.     The facts supporting the plaintiff's claim of discrimination are as follows:

         Please see attached. _____

         _____

         _____

         _____

         _____

14.     *[AGE DISCRIMINATION ONLY]* Defendant knowingly, intentionally, and willfully
         discriminated against the plaintiff.

15.     The plaintiff demands that the case be tried by a jury.     ☒ Yes ☐ No

16.     THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff
         [*check only those that apply*]

         (a)     ☐ Direct the defendant to hire the plaintiff.

         (b)     ☐ Direct the defendant to re-employ the plaintiff.

         (c)     ☐ Direct the defendant to promote the plaintiff.

         (d)     ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

         (e)     ☒ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

         (f)     ☐ Direct the defendant to (specify): _____

                 _____

                 _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g)  ☑  If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h)  ☐  Grant such other relief as the Court may find appropriate.

_____
(Plaintiff's signature)

  Reyna Arroyo
_____
(Plaintiff's name)

███████████ █
_____
(Plaintiff's street address)

(City) ███████ ██████          (State)  Illinois       (ZIP)   60██

(Plaintiff's telephone number) ( ██ )  ████████

                              Date:  2/25/2021

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**(Continues )**

**13. The fact supporting the plaintiff's claim of discrimination are as follows:** –

Please note that the following is a summary and approximate dates:

1. Plaintiff is Reyna Arroyo, she is currently an individual with disability within the meaning of the Human Rights Act.

2. The Defendant (City of Chicago Police Dept.) was aware of the plaintiff's disability.

3. Plaintiff's disability is unrelated to her ability to perform the essential functions of her job.

4. Plaintiff was hired on March 16, 1998. Her performance when hired as a police officer met Defendant's expectations.

5. During the course of plaintiff's career, she sustained an approximate 25+ injuries in which the defendant certified them as work related incidents - except plaintiff's last work injury that took place in October, 2016. Being that the defendant rejected plaintiff's 2016 claim, she filed a grievance that same year with the Fraternal Order of Police.

6. As a result of the 2016 injury (tair left shoulder), the Defendant placed the plaintiff in a temporary administrative desk duty position.

7. During 2017 - the Defendant was aware that plaintiff could not get shoulder surgery because plaintiff was dealing with other medical issues at that time.

8. In 2018, plaintiff was diagnosed & later operated for cancer (radical hysterectomy- minus 7 organs). Plaintiff was off work with her own medical benefits for an approximate four months. Defendant was aware of this situation.

9. On March 31, 2019, the Defendant removed the plaintiff from her limited duty position. Defendant refused to assign plaintiff to any additional duties, and failed to accommodate her. Plaintiff was not placed on any official leave and was forced to use her benefits/ medical time while unassigned. Defendants failed to provide any reasonable accommodation which would have permitted the plaintiff to perform the essential functions of the job.

10. In June, 2019 - plaintiff's physician finally gave the okay for plaintiff to have shoulder surgery, following physical therapy. Physical therapy and cortisone shot did not work.

11. In November, 2019, plaintiff returned to the Defendant's Medical Section with her orthopedic approval to return to work with limited duty/ administratively with restrictions but Defendant refused to accommodate me once again.

12. On December 15, 2019, plaintiff's benefit time expired. Defendant placed plaintiff on unpaid forced medical leave. Plaintiff could not get surgery due to Covid19 and other medical reasons.

13. January, 2020 - Plaintiff had arbitration for the 2016 grievance shoulder injury. Still waiting for arbitration's decision.

14. Between March 31-June 2, 2020 - plaintiff was ordered to surrender her police badge and work identification ID. Before being stripped out of her police powers with Defendant's Human Resources supervisor, plaintiff asked if she could come back to work limited duty. Once again, Defendants Employee offered no alternative - the Defendant's personnel failed to do this.

15. Plaintiff is currently not working, unable to get second shoulder surgery due to depression and other illnesses.



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

December 30, 2020

Ms. Reyna Arroyo


Re: EEOC Charge Against City of Chicago Police Dept.
No. 21B202001450

Dear Ms. Arroyo:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under: Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice. If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney. If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above. A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by    /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Chicago District Office, EEOC

City of Chicago Police Dept.

Charge Number: 2020CF2631
Complainant: Reyna Arroyo
Page 2 of 3

I.   A.   **ISSUES/BASIS**
**FAILURE TO ACCOMMODATE- MARCH 31, 2019, DUE TO MY DISABILITY, LEFT SHOULDER DISORDER**

   B.   **PRIMA FACIE ALLEGATIONS**

1. I am an individual with a disability within the meaning of Section 1-103(I) of the Human Rights Act.

2. Respondent was aware of my disability.

3. I was hired on March 16, 1998. My performance as a police officer met Respondent's expectations.

4. On March 31, 2019, I was subjected to a failure to accommodate when Respondent removed me from my limited duty position. Respondent offered no alternative positions which met my limited mobility restrictions.

5. Respondent failed to provide any reasonable accommodation which would have permitted me to perform the essential functions of the job.

II.   A.   **ISSUES/BASIS**
**FAILURE TO ASSIGN- MARCH 31, 2019, DUE TO MY DISABILITY, LEFT SHOULDER DISORDER**

   B.   **PRIMA FACIE ALLEGATIONS**

1. I am an individual with a disability within the meaning of Section 1-103(I) of the Human Rights Act.

2. Respondent was aware of my disability.

3. I was hired on March 16, 1998. My performance as a police officer met Respondent's expectations.

4. On March 31, 2019, Respondent removed me from my limited duty position. Respondent refused to assign me any additional duties. I was not placed on any official leave and was forced to use my benefit time while remaining unassigned.

5. My disability is unrelated to my ability to perform the essential functions of my job.

**Return this copy**

Charge Number: 2020CF2631
Complainant: Reyna Arroyo
Page 3 of 3

III.   A.   ISSUES/BASIS
FORCED MEDICAL LEAVE- DECEMBER 15, 2019, DUE TO MY
DISABILITY, LEFT SHOULDER DISORDER

      B.   PRIMA FACIE ALLEGATIONS

1.   I am an individual with a disability within the meaning of Section 1-103(I) of the Human Rights Act.

2.   I was hired on March 16, 1998. My performance as a police officer met Respondent's expectations.

3.   On December 15, 2019, my benefit time expired and Respondent placed me on an unpaid forced medical leave.

4.   My disability is unrelated to my ability to perform the essential functions of my job.

**Return this copy**

Medical Section
Human Resources Division
Chicago Police Department

*24 JAN 19*

## LIMITED DUTY NOTIFICATION LETTER - B

TO: *ARROYO, REYNA*
Name

Chicago, IL-606___
Zip

*45919*
Employee #

*18014*
Star #

*010 / 122*
District/Unit

Please be advised that the records of the Medical Section (MS) of the Chicago Police
Department indicate that as of *31 MAR 19*, you will exceed the maximum allowable time in a
            Date
Limited Duty status for your non-duty related condition as described in Employee Resource E03-01-03,
Sworn Limited Duty Program. If you are unable to return to Full Duty by that date, you must choose one
of the following options:

- You may use any available Medical Roll days;
- You may retire or resign by submitting a Personnel Action Request (PAR);
- You may apply for a leave of absence in order to apply for disability benefits;
- If applicable, you may request a Reasonable Accommodation as defined by the American with Disabilities Act; or
- If applicable, you may request leave under the Family Medical Leave Act.

You are encouraged to discuss your medical condition, treatment options and potential to return to work
in a Full Duty status with your physician as soon as possible. You are required to keep the Medical
Section apprised of your medical condition as information becomes available.
**You must notify the MS no later than** *01 MAR 19* **of which of the listed
options you will take** so that there will be no delay in processing. **Failure to complete processing
before the expiration of your Limited Duty time will lead to you being placed in a NO PAY status
as of** *31 MAR 19*.

If you have any questions about leaves of absence, the Family Medical Leave Act, Reasonable
Accommodations or disability benefits, please direct your questions to the Human Resources Division at
(312) 745-5310 or PAX 0349. If you have any questions about your medical records, please contact the
Medical Section at (312) 745- 5000 or PAX 0130 or 0134.

Commanding Officer
Medical Section

cc: Director of Human Resources
    Unit CO
    Unit Timekeeper
    Medical File

Rec: _____     Date: _____

Witness or certified: _____     Date/Time: _____

CPD-62.479 (Rev. 9/15)

BUREAU OF ORGANIZATIONAL DEVELOPMENT   DATE: *03 SEP 19*
HUMAN RESOURCE DIVISION
MEDICAL SECTION

TO: *ARROYO, REYNA*                          *45919*
    (Name)                                    (Employee #)

                                              *18014*
    (Street)                                  (Star #)

    Chicago, IL 606▮                          *010 / 122*
         (Zip)                                (District/Unit)

Please be advised that the records of the Medical Section of the Chicago Police

Department indicate that as of *03 SEP 19* you have used *290*
                                    (Date)                    (Number)

Days of the maximum allowable for your current <u>Duty/Non-Duty</u> medical absence:

If you are not able to return to work, your last day on the Medical Roll is projected

to be *17 NOV 19*.
        (Date)

If you do not return to Duty before you exhaust these paid medical absence benefits, you
will be removed from the Active Roll. Your options at that time will include Retirement,
Resignation or Leave of Absence, such as to apply for Disability Pension benefits.

You are encouraged to consider your situation and discuss your medical condition,
treatment options and potential to return to Duty with your physician as soon as possible.
Keep the Medical Section advised as information becomes available. The Medical
Section can assist you as questions arise in coordinating your medical status with your
employment status.

_____
Medical Section
P.O. Marilyn Bishop #17542

CC:     Unit Commander
        Unit Timekeeper
        Medical File

(Revised May 2017)

# EXHIBIT 7

**IN THE FEDERAL DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

REYNA ARROYO,

Plaintiff,

v.

CITY OF CHICAGO POLICE
DEPARTMENT,

Defendant.

Case No.: 21-cv-01148

Hon. Judge Gary Feinerman

<u>**AMENDED COMPLAINT AND JURY DEMAND**</u>

Now Comes Plaintiff, Reyna Arroyo ("Plaintiff"), by and through undersigned counsel,

complaining of Defendant City of Chicago Police Department ("Defendant"), for disability

discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §

12101 *et seq*. Plaintiff also brings a supplemental state law claim for violation of 820 ILCS

305/4(h) for failure to rehire or recall an employee to active service because of Plaintiff's

exercise of her rights under the Illinois Workers' Compensation Act. In support of her claims,

Plaintiff states as follows:

**JURISDICTION AND VENUE**

1.      Jurisdiction of this court is proper under 28 U.S.C. 451, 1331, 1337, and 1342.

This action is instituted under Section 12117(a) of the Americans With Disabilities Act, 42

U.S.C. § 12117 – incorporating by reference Sections 706(f)(1), (d) of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1), (3), and Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 791. Plaintiff filed a complaint of discrimination

with the Illinois Department of Human Rights on July 10, 2020. Plaintiff received a Notice

1

of Right to Sue from the Equal Employment Opportunity Commission on December 30, 2020. Plaintiff filed her initial *pro se* complaint on February 25, 2021. This Court has supplemental state law jurisdiction over Plaintiff's failure to recall claim under the Illinois Workers' Compensation Act pursuant to 28 U.S.C. §1367.

2.  Venue is proper under 28 U.S.C. § 1391(b). The parties reside and/or conduct business in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district as well.

## THE PARTIES

3.  Plaintiff Reyna Arroyo ("Plaintiff") was employed at Defendant as a police officer since March 16, 1998 until on or around December 2019 when she was placed on involuntary leave and ordered to turn in her star and badge.

4.  Defendant City of Chicago Police Department ("Defendant") is the police department maintained by the City of Chicago, a municipal government entity.

## FACTUAL ALLEGATIONS

5.  Plaintiff was hired by Defendant as a police officer on or about March 16, 1998.

6.  As an active duty police officer, Plaintiff sustained several work related injuries during her employment at Defendant.

7.  In 2013, Plaintiff injured her ankle while on duty.

8.  Plaintiff reported the 2013 ankle injury and filed a claim with the Illinois Workers' Compensation Commission. Defendant disputed the claim.

9.  In or around October of 2016, Plaintiff injured her left shoulder while on duty.

10. Plaintiff reported the 2016 shoulder injury and filed a claim with the Illinois Workers' Compensation Commission. Defendant disputed the claim.

11.     Following the 2016 shoulder injury, Defendant placed Plaintiff on desk duty.

12.     Plaintiff was able to perform the essential functions of the desk duty position.

13.     Plaintiff worked the desk duty position for approximately two years.  During this time, Defendant pressured Plaintiff to return to full duty work, despite her ankle and shoulder injuries.

14.     During this time, Defendant disputed both the 2013 ankle and 2016 shoulder injuries.

15.     In 2018, between around June and November 2018 Plaintiff took four (4) months medical leave for cancer treatment that included major surgery.

16.     Sometime in late 2019, Defendant offered Plaintiff a permanent light duty position if she released Defendant from her 2016 shoulder injury claim.  Plaintiff declined to do so.

17.     Shortly thereafter, Defendant refused to allow Plaintiff to work a light duty position.

18.     Plaintiff requested accommodation for her disability and provided medical documentation to support the need for accommodation.  Defendant denied her requests.

19.     In or around November 2019, Defendant placed Plaintiff on involuntary unpaid medical leave.

20.     On or about May 1, 2020, Defendant ordered Plaintiff to turn in her badge and star.

21.     Upon information and belief, at the time Defendant removed Plaintiff from her light duty position, there were at least two open light duty positions available.

22.     Upon information and belief, other similarly situated employees who did not engage in protected activity were given permanent light duty positions at Defendant.

**Count I**
**Disability Discrimination in Violation of the Americans with Disabilities Act**

23.     Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

24.     At all relevant times, Plaintiff was disabled within the meaning of the Americans with Disabilities Act, 42 U.S.C. 12111 *et seq* and under Section 504 of the Rehabilitation Act of 1973.  Plaintiff has a musculoskeletal condition stemming from an injury suffered to her left shoulder in October 2016.

25.     Plaintiff's musculoskeletal condition substantially limits one or more major life activities.  The condition limits Plaintiff's ability to perform manual tasks, to lift, and to reach as identified under the ADA.  (42 U.S.C. § 12102(2)(A)).  Furthermore, the ADA specifies that major life activities also include the operation of major bodily functions such as musculoskeletal functions.  (42 U.S.C. § 12102(2)(b)).

26.      Plaintiff is a qualified individual as she is a person who met the legitimate skill, experience, education, or other requirements of the employment position that she held and she could perform the essential functions of the position with or without reasonable accommodation.  Plaintiff was employed by Defendant since March 16, 1998.  Plaintiff performed her job well, received adequate evaluations, and received many accolades for her work.

27.     Because of Plaintiff's physical impairment, Defendant placed Plaintiff on involuntary unpaid medical leave on or around December 15, 2019 and then ordered Plaintiff to surrender her badge and star on or about May 1, 2020.

4

28.     Defendant was able to accommodate Plaintiff before placing her on involuntary

unpaid medical leave in December 2019 because Defendant had light duty positions available

and had provided permanent light duty positions to other similarly situated employees who

did not engage in protected activity.  Being assigned a permanent light duty position would

have been a reasonable accommodation to Plaintiff's disability and would not have placed an

undue hardship on Defendant.

29.     Defendant's unlawful failure to accommodate Plaintiff's disability caused

Plaintiff damages, including but not limited to: lost wages, emotional pain and suffering,

costs  and fees.

### Count II
### Retaliation in Violation of the Americans with Disabilities Act

30.     Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated

herein.

31.     Plaintiff was exercising her rights under the Americans With Disabilities Act, 42

U.S.C. 12111 *et seq*. when she believed she met the statutory definition of disability under

the statute and requested a reasonable accommodation.  The reasonable accommodation she

sought was to be assigned to a light duty position for her disability, an accommodation

Defendant could have provided her.

32.     Defendant took a materially adverse employment action after opposing Plaintiff's

reasonable accommodation request.  After Plaintiff declined Defendant's offer in late 2019 to

be assigned to a permanent light duty position if she released Defendant from her 2016

shoulder injury claim, Defendant then refused to allow Plaintiff for work a light duty

position.  Defendant did this despite such positions being vacant.  Furthermore, on or around

December 15, 2019, Defendant then placed Plaintiff on involuntary, unpaid medical leave. On or about May 1, 2020, Defendant then ordered Plaintiff to surrender her badge and star.

33.     There is a causal connection between the protected activity and the adverse action Defendant exercised against Plaintiff such that, when viewed together, an inference of retaliatory intent is apparent.  The timing of events raises suspicion in that Plaintiff sought reasonable accommodation for her disability and Defendant offered her a permanent light duty position if she released Defendant from her 2016 should injury claim.  Shortly after Plaintiff declined this offer, Defendant refused to accommodate Plaintiff's reasonable accommodation request and then placed Plaintiff on involuntary, unpaid medical leave.  Five months later Defendant ordered Plaintiff to surrender her badge.  Before being placed on involuntary, unpaid, medical leave, permanent light duty positions were available.  At this time, other similarly situated employees who did not engage in protected activity were assigned permanent light duty positions.

34.     Defendant's unlawful, retaliatory conduct caused Plaintiff damages, including but not limited to: lost wages, emotional pain and suffering, costs and fees.

**Count III**
**Disability Discrimination in Violation of the Rehabilitation Act**

35.     Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

36.     Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a).

37.     Rehabilitation Act claims are analyzed under the same standards as those used for ADA claims, except the Rehabilitation Act includes as an additional element the receipt of federal funds by the defendant.

38.     Defendant receives federal funding through the Bureau of Justice Assistance ("BJA").  The BJA is a component of the U.S. Department of Justice, Office of Justice Programs.  Defendant also receives federal funding through the Office of Community Oriented Policing Services, which is also a component of the U.S. Department of Justice.

39.     Defendant's acts as described above, including its refusal to accommodate Plaintiff's disability after she requested accommodation, were prohibited by Section 504 of the Rehabilitation Act.

40.     Defendant's unlawful retaliatory discrimination against Plaintiff's disability in violation of the Rehabilitation Act caused Plaintiff damages, including but not limited to, lost wages, emotional pain and suffering, costs and fees.

## Count IV
### Supplemental State Law Claim for Failure to Rehire or Recall for Active Service in Violation of the Illinois Workers' Compensation Act

41.     Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

42.     Plaintiff was exercising her rights under the Illinois Workers' Compensation Act, 820 ILCS 305/ *et seq.* when she sought her own medical treatment and when she pursued a claim with the Illinois Workers' Compensation Commission for her 2013 ankle and 2016 shoulder injuries.

43.     Defendant disputed Plaintiff's 2013 and 2016 injury claims.  Defendant leveraged the light duty position Plaintiff was working at in order to pressure her to forgo one of her

injury claims. After Plaintiff refused, Defendant refused to provide her with a light duty position and forced her on unpaid medical leave.

44.     Defendant's refusal to allow Plaintiff to return to work was motivated by an intent to retaliate against Plaintiff for having pursued rights under the Illinois Workers' Compensation Act, in violation of section 4(h) of the Act.

45.     Defendant's unlawful conduct caused Plaintiff damages, including but not limited to, lost wages, emotional pain and suffering, costs and fees.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE Plaintiff REYNA ARROYO respectfully requests the Honorable Court grant judgment in her favor and against Defendant, awarding:

A.  Actual damages;

B.  Compensatory Damages;

C.  Liquidated Damages;

D.  Reinstatement with full benefits and seniority in a permanent light duty position;

E.  Costs;

F.  Attorney's fees; and

G.  Such other relief as the Court deems just and equitable.


Respectfully Submitted,
REYNA ARROYO
Plaintiff

By:

Christina Abraham, Esq.
Abraham Law and Consulting, LLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
(312) 588-7150
Christina.w.abraham@gmail.com

Janaan Hashim, Esq.
Amal Law Group, LLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
(312) 882-4122
jhashim@amallaw.com

Attorneys for Plaintiff

# EXHIBIT 8

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.3.3
### Eastern Division

Reyna Arroyo

                              Plaintiff,

v.                                          Case No.: 1:21−cv−01148
                                            Honorable Gary Feinerman

City of Chicago Police Dept.

                              Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, July 9, 2021:

      MINUTE entry before the Honorable Gary Feinerman:Motion to dismiss [24] is granted. Count IV of the amended complaint is dismissed. City of Chicago, a municipal corporation, is substituted for City of Chicago Police Dept. as the party defendant. The Clerk is directed to effectuate that substitution on the docket. Motion hearing set for 7/13/2021 [25] is stricken. Mailed notice.(jlj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# EXHIBIT 9



161 N. Clark St. | Ste. 1600 | Chicago, IL 60601
Ph: 312-882-4122 | amallaw.com

May 7, 2024

Via E-mail Delivery:  phillip.santell@cityofchicago.org;
                      John.Catalano2@cityofchicago.org

Philip Santell
Assistant Corporation Counsel
City of Chicago
Department of Law
Employment Litigation Division
2 N. LaSalle St., Suite 640
Chicago, Illinois 60602

**Re: Arroyo v. City of Chicago, No. 21-CV-1148**

Dear Mr. Santell:

On behalf of Plaintiff Reyna Arroyo ("Ofcr. Arroyo" or "Plaintiff"), Atty. Abraham and I provide Plaintiff's response to the City of Chicago's ("City" or "Defendant") letter.  Per Judge Seeger's minute entry, Plaintiff's letter includes granularity to support her position in fact and law.  (Dkt. 116).  While Judge Seeger's standing order requires the inclusion of a summary of facts, we note that the City did not provide one in its letter. Plaintiff includes a summary of facts to provide context that was absent from the City's letter.

## SUMMARY OF FACTS

Ofcr. Arroyo has been an employee of the City of Chicago serving as a police officer with the Chicago Police Department ("CPD") since 1998.  Arroyo Dep. Ex. 2, Arroyo.Def.193-95 (Plf Work Hx).  On October 12, 2016, Ofcr. Arroyo suffered a left shoulder injury while working. Jones Dep. Ex. 3, Arroyo.Def.400-514 (CLEAR-MSS Prog Notes) at Arroyo.Def.425.  CPD's Medical Services Section ("MSS") ultimately determined her injury was non-injury on duty ("non-IOD") and Ofcr. Arroyo grieved this decision in January 2017; another grievance for a 2013 ankle injury was simultaneously pending.  Chapman Decl. at ¶¶4-6.  MSS records indicate Ofcr. Arroyo's diagnosis as a tear of the left shoulder rotator cuff. Jones Dep. Ex. 3, Arroyo.Def.400-514 (CLEAR-MSS Prog Notes) at Arroyo.Def.405.  Ofcr. Arroyo's injury initially placed her on medical roll until she was cleared to return to work on September 26, 2017, in a limited duty ("LD") status.  Arroyo Dep. Ex. 6, Arroyo.Def.395-99 (Day Count Summary) at Arroyo.Def.399.

*Applicable Governing Documents*

As a department of the City of Chicago, CPD adheres to the City's policies while also issuing its own policies called Directives.  Relevant City policies include the: (1) City's Personnel

Rules; (2) City's Reasonable Accommodation Policy; (3) CPD's Reasonable Accommodation Policy, Collective Bargaining Agreement ("CBA"); and, (4) CPD Directive E03-01-03 Sworn Limited Duty Program ("Directive E03-01-03"). Jackson Dep. Ex. 2, Arroyo.Def.001-082 (City's Personnel Rules); Jackson Dep. Ex. 3, Arroyo.Def.083-096 (City's Reas Accom Policy); Jackson Dep. Ex. 5, Arroyo.Def.165-67 (CPD's Reas Accom Policy E01-04 Resc, 9/23/19); Jackson Dep. Ex. 6, Arroyo.Def.168-70 (CPD's Reas Accom Policy E01-04 Eff, 9/24/19); Johnson Dep. Ex. 1, Arroyo.Def.4595-4753 (CBA); and, Jones Dep. Ex. 2, Arroyo.Def.190-192 (LD Program E03-01-03).

CPD employs civilians and sworn officers and it follows a paramilitary business model which includes a chain of command. Jones dep. at 17:22-25; 19:11-20:6. Officers are assigned to units and, during that assignment, can also be detailed (e.g., loaned) to other units. *Id*. at 91:3-8. These other units can include non-patrolling or administrative units. Jones dep. at 42:10-12. An officer's immediate supervisor during these details can be a civilian employee. *Id*. at 55:16-19. While an officer is on medical roll, their first in command is the one to where the officer is detailed to from their unit. *Id*. at 26:2-7.

When a police officer is injured, one of their responsibilities is to report the injury to MSS who ultimately determines and certifies the injury as either injured on duty ("IOD") or non-IOD. *Id*. at 44:15-22; 46:1-9. If an officer disagrees with MSS's certification, the CBA allows the officer to grieve the decision. Johnson Dep. Ex. 1, Arroyo.Def.4595-4753 (CBA) at Arroyo.Def.4609.

An injured officer may return to work in a limited duty capacity upon certification from the officer's physician indicating the officer can perform the essential functions of a police officer as listed on a form titled, "Essential Functions For Limited Duty" ("Essential Functions form"). Jones dep. at 47:8-48:6; Jones dep. Ex. 9, Arroyo.Def.2079-81 (Ho Esstl Fx Form, 9/8/17). The functions listed under the heading "Essential Functions of a Police Officer" are considered the essential functions of the police officer position for ADA purposes. Smith dep. at 28:24-29:4; Jones dep. at 110:14-18; Jackson dep. at 22:19-23, 54:21-55:6. The physician may also include certain restrictions within which the officer must work. Jones dep. at 112:4-11. An MSS case worker reviews this form and, if approved for limited duty ("LD") status, the officer returns to work being detailed to where there is an operational need. *Id*. at 46:1-9; 54:1-12. Officers who cannot perform the essential functions of a police officer position are not given LD status and are prohibited from returning to work. 117:9-16. The detail is a match between the officer's skill set and the needs of CPD. Jones dep. 54:8-15. Officers on LD status are not deployed or assigned to patrol the streets and, instead, work sedentary desk jobs. Jackson dep. at 71:16-20; James dep. at 189:21-23; Jones dep. at 42:8-24. By comparison, full duty officers are expected to perform all of their duties which are listed on CPD's Police Officer Job Description. Jones dep. at 108:14-109:12; Arroyo Dep. Ex. 3, Arroyo.Def.124-128 (Job Description for PO).

Article 18 of the CBA addresses disability income in the context of IOD and non-IOD officers. Johnson Dep. Ex. 1, Arroyo.Def.4595-4753 (CBA) Arroyo.Def.4621. Section 18.4 states that "[a]ny officer" certified as LD may be placed in those recognized openings (aka vacancies) as defined in Sec. 23.9. *Id*. at 4633. This latter section provides an exception to the bidding process, giving CPD discretionary powers in assigning officers to specific positions within specific units. *Id*. at 4633-34. The CBA does not provide a time limit in which a non-IOD officer may remain in a LD status. *Id*. at 4621. CPD Directive E03-01-03 provides the scope of CPD's LD Program.

1

Jones Dep. Ex. 2, Arroyo.Def.190-192 (LD Program E03-01-03). The directive states that IOD officers certified by MSS as being able to perform LD assignments remain in LD status until they can perform full duty assignments or until they are mandatorily retired, whichever occurs first. *Id.* at Arroyo.Def.190. By comparison, non-IOD officers certified by MSS as being able to perform LD assignments are not able to work in this status beyond 730 days unless they can perform their full duty assignment, whichever occurs first. *Id*. at Arroyo.Def.190-191.

If a non-IOD officer reaches that maximum time and is unable to return to their full duty role, MSS works with the officer to identify their next steps which include: using any available Medical Roll days; retire or resign; apply for a leave of absence ("LOA") in order to apply for disability benefits; request a reasonable accommodation per the Americans with Disabilities Act ("ADA") or request leave under the Family Medical Leave Act. Jones Dep. Ex. 6, Arroyo.Def.2012-13 (Notif Ltrs A, B). CPD instructs the non-IOD officer to discuss these options with the supervisor of MSS; here, this was Sheree Jones. Jones Dep. Ex. 4, Arroyo.Def.3303 (email 1/14/19 re Notif Ltr A) If an officer chooses the first option and their medical roll expires, they have four options: return to full duty, return to limited duty if they have any remaining time left, take a LOA to apply for disability pension, or retire/resign. Jones Dep. Ex. 8, Arroyo.Def.3534 (Notif Ltr 9/3/19).

### Ofcr. Arroyo's Non-IOD Status and Grievances

CPD granted Ofcr. Arroyo LD status due to her disability on September 26, 2017 and she was detailed to CPD's Finance Division and worked in its Travel Section. Arroyo Dep. Ex. 2, Arroyo.Def.193-95 (Plf Work Hx). This assignment was based on her pre-CPD finance background and relevant skill set built while at CPD as well as CPD's need in the Finance Division. Arroyo dep. at 16:13-17:7, 42:15-23; 46:18-47:2; 111:15-112:2; 112:20-113:14; 115:5-115:15. James dep. at 93:8-17. Her immediate supervisor was civilian Sup. Helen Lee and the next in command was Asst. Dir. of Finance Michele James. The head of the department was Finance Director Jonathon Johnson. At the time of the City's employment decision regarding Ofcr. Arroyo, her physician certified her ability to perform the essential functions of a police officer and identified various physical restrictions. From this initial accommodation until she went on LOA, Ofcr. Arroyo followed proper protocol to remain in a limited duty status. Jones dep. Ex. 3, Arroyo.Def.400-514 (CLEAR-MSS Prog Notes) at Arroyo.Def.400-412.

In January 2019, MSS sent notification letters to Ofcr. Arroyo stating that her non-IOD LD status would expire on March 31, 2019, and the letter provided the options indicated *supra* should she not be able to return to full duty. Jones Dep. Ex. 6, Arroyo.Def.2012-13 (Notif Ltrs A, B). Ofcr. Arroyo met with MSS Sup. Sheree Jones and chose the first option of using her medical roll days. Arroyo Decl. at §17; Jones dep. at 94:5-11; Arroyo dep. Ex. 2, Arroyo.Def.193-95 (Plf Work History) at Arroyo.Def.195. At the time of her decision, her two grievances remained pending. Chapman Decl. at ¶¶4-7. Ofcr. Arroyo expected two things during this time: that her shoulder would continue to heal and that the grievance would be resolved so that she would then be able to continue working in her limited duty position until the shoulder fully healed. Arroyo Decl. at ¶17; Arroyo dep. at 75:5-24. Using one's medical roll time to allow an injury to heal is a typical choice. Jones Dep. at 98:13-23. The option of requesting a reasonable accommodation was not discussed between Arroyo and Jones. Arroyo Decl. at §17; Jones dep. at 94:5-11. Before her non-IOD LD status expired on March 31, 2019, Ofcr. Arroyo communicated to her supervisors and the Director

of Finance and to her MSS caseworker at the time, LaTonya Smith, that she wanted to continue working in either an extended LD status or permanent LD status and she sought their assistance to do so.    James dep. at 122:3-6; 125:1-8; Arroyo dep. at 74:3-75:24; 117:9-14-118:10; 106:1-8; James dep. Ex. 7, Arroyo.Def.3482 (email 6/7-10/19 w/ Plf).

Ofcr. Arroyo's medical roll expired on November 17, 2019.   Arroyo Dep. Ex. 2, Arroyo.Def.193-95 (Plf Work Hx).  Ofcr. Arroyo's MSS case worker was Latonya Smith and the MSS sergeant was Sgt. Kemper.  While on medical roll, she communicated her desire to continue working with her supervisors at the Finance Division and with her supervisors at MSS.   Latonya dep. at 82:20-83:7; Arroyo dep. at 74:3-75:24; 85:4-6; 117:9-14-118:10; 106:1-8; Smith dep. Ex. 11, Arroyo.Def.3307 (5/30/19 email Plf to Sgt. Kemper re perm LD status).  CPD's Disability Liaison is Jermeka Jackson and she was also involved in processing Ofcr. Arroyo's LOA in March 2020.  The City's Disability Officer is Kathryn Perry-Hopkins.  No one discussed with Ofcr. Arroyo either CPD's or the City's reasonable accommodation policies nor was she given any direction in how to proceed with such a request.   Jackson dep. at 44:9-14; 45:16-46:2; 46:9-12; 63:10-13; James dep. at 133:16-20, 138:19-24; Jones dep. at; 133:16-20; 173:24-174:7; Smith dep. at 143:2-5; Smith dep. at 143:2-5; Arroyo Decl. at ¶¶15, 19-20; Arroyo dep. at 89:24-90:12; 110:16-111:6.

While on medical roll, Ofcr. Arroyo had surgery on her shoulder and received physical therapy for it. Jones dep. Ex. 3, Arroyo.Def.400-514 (CLEAR-MSS Prog Notes) at Arroyo.Def.401; Arroyo decl. at ¶7.  Her physician opined that she needed a second surgery which was scheduled in November 2019, but due to medical issues, her physician cancelled it . Arroyo dep. at 85:8-10; Arroyo decl. at ¶7.

Also while on medical roll, Arroyo was in settlement negotiations related to the two grievances.  Arroyo dep. at 138:23-139:1; 69:17-22.  The City offered to change the status of her ankle injury from non-IOD to IOD in exchange for Ofcr. Arroyo dropping her shoulder claim. Ofcr. Arroyo counter-offered, and, stuck at an impasse, arbitration was set for both grievances.  *Id.* at 71:8-72:10; Arroyo decl at ¶6.  The ankle grievance, however, was resolved without going to arbitration.  Chapman decl. at ¶7.  The shoulder injury was arbitrated in January 2020.  Arroyo decl. at ¶6.  After attorney intervention by Ofcr. Arroyo's counsel in this matter (and with the City's counsel's awareness), the arbitrator issued her award in June 2022 in favor of the City.  *Id.*

The Travel Section always had a need for more employees and within the Finance Division, at least nine Clerk III position job announcements were posted between January 2019 and May 5, 2023. Johnson dep. at 154:8-155:1, 157:6-9, 133:5-10, 142:23-24; accord, James dep. 95:18; 96:4-7. Johnson dep. Ex. 21 (Defendant's Responses to Plaintiff's Second Set of Request for Production); see also, O'Brien Decl.  Outside of CPD, the City had 161 general administrative vacancies across its various departments during this same timeframe.  O'Brien Decl.; Johnson dep. at 157:6-9.

In March 2020, Ofcr. Arroyo went on involuntary LOA. At this time, she initiated the necessary paperwork to receive income through the Policemen's Annuity and Benefit Fund of Chicago ("PABF").  Arroyo Decl. at ¶8.  This included authorization to release her medical file to PABF.  *Id*. at ¶¶10-11.  In April 2020, Ofcr. Arroyo informed CPD management that PABF had

not received her medical file and asked for guidance. *Id.* at ¶11. CPD management said they could not assist her and she consequently reached out to her union representative and the attorney who represented her at the arbitration. *Id.* No one responded to her emails or subsequent phone call messages. *Id.* In the fall of 2019 Ofcr. Arroyo reached out to the Disability Manager of PABF Ofcr. Seeking guidance as to which kind of disability pension she should apply for and he suggested she wait until the arbitration was decided since that would be the determining factor. Arroyo dep. at 93:19-94:6. Arroyo re-started the process. Arroyo dep. at 92:13. Arroyo has not looked for outside work because the City prohibits this per City Personnel Rule Rule XX.§3(a)(6). Arroyo dep. at 99:8-17; Jackson Dep. Ex. 2, Arroyo.Def.001-082 (City's Personnel Rules) at Arroyo.Def.070.

Ofcr. Arroyo brought a claim of disability discrimination for failure to accommodate under both the ADA and Rehab Act and retaliation in violation of the ADA.

## ARGUMENT

**I. Ofcr. Arroyo Can Establish Disability Discrimination For Failure To Accommodate.[1]**
Prohibited discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee…." 42 U.S.C. § 12112(b)(5). Moreover, the ADA "mandates that all employers engage in a flexible, interactive process to accommodate disabled employees." *Ammons v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 08-C-566, 2011 U.S. Dist. WL 5507370 at *3 (N.D. Ill. 11/9/11) (citation omitted). The City's policy of mandating Ofcr. Arroyo to take a leave of absence after her non-IOD LD and medical roll ended without offering alternative reasonable accommodations through reassignment or other measures violates the ADA.

The prima facie elements of a failure to accommodate claim include the employee showing that: (1) she is a qualified individual with a disability; (2) the defendant was aware of her disability; and (3) the defendant failed to reasonably accommodate that disability. *Gray v. FleetPride, Inc.*, No. 21-C-4981, 2022 U.S. Dist. WL 10080811, at *6 (N.D. Ill. 10/17/22). Based on the City's letter, at issue is: (1) whether Ofcr. Arroyo is a qualified individual with a disability; (2) whether she made a reasonable accommodation request; and (3) whether defendant failed to reasonably accommodate her disability[2].

**A. Ofcr. Arroyo is a qualified individual with a disability because she was able to perform the essential functions of a police officer position with a reasonable accommodation as initially provided by CPD.**

---

[1] To clarify, Plaintiff only asserts a failure to accommodate claim and not disability discrimination claim, both of which have their own separate prima facie elements. Ceska v. City of Chicago, No. 13-C-6403, 2014 U.S. Dist. WL 468767, at *2; *5 (N.D. Ill. 2/3/15).

[2] The City does not dispute: (1) that the claims asserted fall under the ADA and the Rehab Act; (2) Ofcr. Arroyo has the required pre-requisites for her position; (3) she has a disability as defined by the ADA; and (4) that the City was aware of her disability.

4

The ADA generally defines a "qualified individual" with a disability as "'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or *desires*.'" *Elzeftawy v. Pernix Group, Inc.*, 477 F.Supp.3d 734, 762 (N.D. Ill. 8/8/20) (citing *Brumfield v. City of Chi*cago, 735 F.3d 619, 631 (7th Cir. 2013) (quoting 42 U.S.C. § 12111(8) (emphasis by court)). Whether or not an individual meets the definition of a qualified individual with a disability is to be determined as of the time the employment decision was made. *Babnik v. Village of Antioch*, 18-CV-04490, 2023 U.S. Dist. WL 4817655, at *9 (N.D. Ill. 7/27/23) (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004) (citation omitted). The City's statement of Ofcr. Arroyo's June 1, 2020 medical note regarding her work restrictions is, accordingly, irrelevant to the analysis. For purposes of the ADA, the inquiry as to what is an essential job function is a factual question, not a question of law. *Bilinsky v. American Airlines, Inc*., 928 F.3d 565, 570 (7th Cir. 2019) (citation omitted). In determining essential functions of a position, deference is given to the employer and five factors are generally considered including, among them, the employer's job description. *Gratzl v. Officer of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674 (7th Cir. 2010). An employer's job description is not the sole determining factor.

Here, the City relies solely on the police officer job description which lists "Essential Duties" of the position. Arroyo dep. Ex. 3, Arroyo.Def.124-128 (Job Description for PO). Plaintiff disputes this list are the essential functions of a police officer. By contrast, Section II.B. of Directive E03-01-03 (CPD's Limited Duty Program) lists eligibility requirements for a member to be approved for LD status. Jones dep. Ex. 2, Arroyo.Def.190-192 (LD Program E03-01-03. These same requirements were found by the court in *Sams v. City of Chicago* as "essential functions" of plaintiff's job as a Chicago police officer. *Sams v. City of Chicago*, No. 13 C 7625, 2018 U.S. Dist. WL 4679581, at *12 (N.D. Ill. 9/28/18). Directive E03-01-03 contains within it those changes made from its prior 2012 version as cited in *Sams*. Jones dep. Ex. 2, Arroyo.Def.190-192 (LD Program E03-01-03); cf. *Sams*, 2018 U.S. Dist. WL 4679581, at *12 (N.D. Ill. 9/28/18). Section II.B of both versions are verbatim. *Id.* Additionally, the eligibility requirements in §II.B. are duplicated and listed as "Essential Functions of a Police Officer" on the Essential Functions For Limited Duty form and they are considered essential functions as they relate to reasonable accommodations. Deposition of MSS Case Worker Latonya Smith ("Smith dep.") at 28:24-29:4. Jones dep. Ex. 9, Arroyo.Def.2079-81 (Ho Esstl Fx Form, 9/8/17). On the form, the officer's physician must sign off on whether the officer could or could not fulfill the essential functions listed, and if they are not all initiated, then the officer is prohibited from returning to work. Smith dep. at 29:5-8; deposition of CPD Disability Liaison Jermeka Jackson ("Jackson dep.") at 54:21-55:6. Thus, Ofcr. Arroyo asserts that the essential functions of a police officer position are not as broad as those duties listed in the job description and are, instead, those identically listed on the Essential Functions form and Directive E03-01-03. *See also, Winkfield v. Chicago Transit Auth*., 435 F.Supp.3d 904, 909 (N.D. Ill. 2020) (holding that plaintiff's physician's verification clearing her to work and having performed the essential functions of the job she desired for 14 years was sufficient to allege she was a qualified individual under the ADA.).

As to whether Ofcr. Arroyo could perform the essential functions of a police officer, she disputes the City's position that her "working LD has no bearing on her admitted inability to perform the essential functions of her position as a police officer." In *Fortino*, the court held that the plaintiff sufficiently alleged that he was a "qualified individual" within the meaning of the

ADA. *Fortino v. Vill. of Woodridge*, No. 17 C 5037, 2018 U.S. Dist. WL 1695363, at *4 (N.D. Ill. 4/7/18). Plaintiff, a police officer, admitted he could not perform the essential functions of a patrol officer position, but asserted he could perform the essential functions of vacant, non-patrol duty positions to which he could have been reassigned. *Id*. The court explained that a qualified individual includes those who can perform the essential functions of their position "with reasonable accommodation," and reasonable accommodation under the ADA includes reassignment to a vacant position. *Id*. Plaintiff asserted he was qualified to perform the essential functions of an "inactive status" position and that he could have been reassigned to non-patrol positions for which he qualified. *Id*. Thus, the court held that the plaintiff satisfied this prong. *Id*.

Here, the City's focus on performing the essential functions of a full duty police officer *without* reasonable accommodation ignores the key statutory language that the court in *Fortino* emphasized: *with* a reasonable accommodation. *See* 42 U.S.C. § 12111(8) (emphasis added). Job role modifications and changes to one's job responsibilities, such as being assigned limited duty work, fit the definition of a reasonable accommodation under the ADA. *Babnik*, 2023 U.S. Dist. WL 4817655, at *8 (holding "[l]ight duty could not be anything other than an accommodation" under the ADA. More on point, CPD itself considers limited duty assignments as a modification of an officer's full duty position and a reasonable accommodation. Jackson dep. at 71:22-24; 36:16-24; deposition of MSS Sup. Sheree Jones ("Jones dep.") at 123:16-25; 42:25-43:5; deposition of Asst. Dir. Finance Michele James ("James dep.") at 48:5-49:4. Moreover, Ofcr. Arroyo would not have been given LD status had MSS determined that she was unable to perform the essential functions of a police officer. Jones dep. at 153:6-16; 148:5-9; 116:19-117:1. While on LD status, Ofcr. Arroyo's physician periodically submitted to MSS Essential Functions forms certifying her ability to perform the essential functions of a police officer as identified on form. Jones dep. Exs. 9, 13-14, 16-17 (Essential Function forms signed by Drs. Ho and Dettore); Jones dep. at 134:13-19. MSS progress notes state affirmatively Ofcr. Arroyo's ability to perform the essential functions of a police officer. Jones dep. Ex. 3, Arroyo.Def.400-514 (CLEAR-MSS Prog Notes) at Arroyo.Def.407, 410. As such, from September 26, 2017 until she went on LOA, Ofcr. Arroyo was able to perform the essential functions of a police officer with the reasonable accommodation of limited duty status.

With no citation to supporting evidence, the City states that Ofcr. Arroyo admitted she could not perform any of the essential functions of a full duty officer. Plaintiff disputes that Ofcr. Arroyo made such statement as it is not reflected in the record. To the extent that the City might be referring to Ofcr. Arroyo's deposition, no such admission exists. While Ofcr. Arroyo agreed to the job description's essential duties of a full duty police officer in her deposition, there is no testimony that she was unable to perform these duties other than when she was placed on medical roll. Arroyo dep. 26:7-11. To the contrary, Ofcr. Arroyo testified that while in limited duty status, she could perform – and did perform - the essential functions of a police officer listed on the Essential Functions Form from 2016[3] until her LOA. Deposition of Reyna Arroyo ("Arroyo dep.") at 134:5-10; Arroyo Decl. ¶¶3-4. As explained *supra*, Arroyo's testimony is corroborated by the Essential Duties form signed by her physician, MSS progress notes, and the depositions of MSS Sup. Jones and CPD Disability Liaison Jackson. Thus, Ofcr. Arroyo could perform the essential functions of her position with a reasonable accommodation.

---

[3] Ofcr. Arroyo was on medical roll from the time of her injury in 2016 until September 26, 2017 at which point she resumed her duties in a LD status. Jones dep. Ex. 11, at Arroyo.Def.2641 (CLEAR Detail Hx)

6

**B.  Ofcr. Arroyo made a sufficient reasonable accommodation request.**

To show that an employer failed to reasonably accommodate an employee's disability, the employee must show that she made a reasonable accommodation request and that the employer's failure to engage in the interactive process to determine a reasonable accommodation resulted in the City's failure to offer any reasonable accommodation to her.  *Ammons*, 2011 U.S. Dist. WL 5507370 at *3 (citation omitted).  Plaintiff disputes the City's position that Ofcr. Arroyo failed to make a request for reasonable accommodation.  Plaintiff also asserts that Defendant failed to participate in the interactive process in good faith resulting in Defendant's failure to offer any reasonable accommodation to Ofcr. Arroyo.  *See* §C. *infra*.

     i.   *Ofcr. Arroyo Made A Request For Reasonable Accommodation By Stating To Her Supervisors She Wanted To Continue Working*.

The City posits, absent evidentiary support, that Ofcr. Arroyo "at no point" made a reasonable accommodation request.  Ofcr. Arroyo disputes this assertion as the evidence shows she made a sufficient request.

When making a reasonable accommodation request, "The employee need not use the word 'accommodation' or any other magic words…."  *EEOC v. AutoZone, Inc.*, No. 14-cv-3385, 2022 U.S. Dist. WL 4596755, at *8 (N.D. Ill. 9/30/22) (citations omitted); *accord, Hendricks-Robinson v. Excel Corp.*, 154 F.3d at 694 (7th Cir. 1998). Indeed, "The Seventh Circuit has emphasized that '[a] request as straightforward as asking for continued employment is a sufficient request for accommodation.'" *Gray v. FleetPride, Inc.*, 2022 U.S. Dist. WL 10080811, at *8 (quoting *Hendricks-Robinson*, 154 F.3d at 694); *see also, Miller v. Illinois Dep't of Corrections*, 107 F.3d 483, 486–87 (7th Cir. 1997) ("Even if an employee who as here becomes disabled while employed just says to the employer, 'I want to keep working for you—do you have any suggestions?' the employer has a duty under the Act to ascertain whether he has some job that the employee might be able to fill.").

Section IV.b. of the City's Reasonable Accommodation Policy ("City's Policy") and §IV.B.1. of CPD's Reasonable Accommodation Policy ("CPD Policy") permit accommodation requests to be made verbally.  Jackson dep. Ex. 3, Arroyo.Def.083-096 (City's Reas Accom Policy) at Arroyo.Def.086; Jackson dep. Ex. 5, Arroyo.Def.165-67 (CPD's Reas Accom Policy E01-04 Resc, 9/23/19) at Arroyo.Def.166; Jackson dep. Ex. 6, Arroyo.Def.168-70 (CPD's Reas Accom Policy E01-04 Eff, 9/24/19) at Arroyo.Def.169.  Additionally, within CPD the process of making a reasonable accommodation request would be through its chain of command structure. Deposition of Dir. of Finance Jonathon Johnson[4] ("Johnson dep.") at 19:10-21.

Here, Ofcr. Arroyo made numerous verbal requests through her chain-of-command for an accommodation, albeit, without using the word accommodation, *per se*.  Before being placed on LOA, Ofcr. Arroyo indicated to her supervisors while assigned to the Finance Division and her supervisors at MSS while on medical roll (and to their superiors) her desire to keep working. Arroyo dep. at 74:3-75:24; 85:4-6; 117:9-14-118:10.  She asked for extended LD status or permanent LD status because she wanted to continue working and she knew there were at least two vacant positions that she could fill.  *Id*.  In March 2019 during the pandemic, Ofcr. Arroyo

---

[4]  Finance Dir. Johnson served as Acting CPD Director of HR from Oct. 2016 - May 2017.

was surrendering her badge and, upon noticing how short-staffed CPD was, she offered to return to work to help with the shortage. *Id*. at 106:1-8.

Former Asst. Director of Finance Michele James, one of Ofcr. Arroyo's supervisors when she was detailed to the Finance Division, corroborates Ofcr. Arroyo's testimony that she was trying to find a way to continue working. James dep. at 122:3-6; 125:1-8. After going on medical roll, Ofcr. Arroyo emailed Finance Asst. Dir. James stating, "I want to work," and that she wanted to "come back to work." James dep. Ex. 7, Arroyo.Def.3482 (email 6/7-10/19 w/ Plf). Ofcr. Arroyo's MSS case manager, Latonya Smith, also corroborates Ofcr. Arroyo's testimony adding, "she wanted to go through whatever the steps were to continue to be on payroll." Latonya dep. at 82:20-83:7. In an email while on medical roll, Ofcr. Arroyo emailed her next in command, Sgt. Kemper, inquiring about the status of working permanent LD assignment, thus indicating her interest in continuing to work. Smith dep. Ex. 11, Arroyo.Def.3307 (5/30/19 email Plf to Sgt. Kemper re perm LD status). This documentary and testimonial evidence shows that Ofcr. Arroyo sufficiently made a reasonable accommodation request pursuant to ADA.

> ii. *Alternatively, Ofcr. Arroyo Was Excused From Making a Second Affirmative Request For A Reasonable Accommodation.*

An affirmative request for accommodations is not required to state a claim for failure to accommodate under the ADA where an employer knows both: (1) that the employee has a disability, and (2) that the employee is seeking assistance from the employer in the form of accommodations. *Pappas v. District of Columbia*, 513 F.Supp.3d 64, 89 (D.D.C. 2021) (citing *Thompson v. Rice*, 305 F. App'x 665, 668 (D.C. Cir. 2008); *Lee v. District of Columbia*, 920 F. Supp. 2d 127, 136 (D.D.C. 2013) (excusing need for express request where the employer "knows of the disability and the employee's desire for accommodations.").

Here, Defendant does not dispute that it was aware of Ofcr. Arroyo's disability nor does it dispute that Ofcr. Arroyo was assigned to a LD detail until she went on LOA. As such, in placing Ofcr. Arroyo in her LD assignment, CPD gave her an initial accommodation because being placed on LD was a change to Ofcr. Arroyo's job responsibilities and is, thus, considered a reasonable accommodation under the ADA. *Pappas*, 513 F.Supp.3d at 92 (holding Plaintiffs were excused from making an affirmative request because the employees' placements on light duty assignment was itself an initial accommodation that triggered the continuing interactive process); *see also*, *Babnik*, 2023 U.S. Dist. WL 4817655, at *8 (holding "[l]ight duty could not be anything other than an accommodation" under the ADA.); Jackson dep. at 71:22-24; 36:16-24 (an officer assigned to a limited duty position is considered a modification of their full duty position); James dep. at 48:5-49:4 (identifying LD officers, including Plaintiff, who were detailed to Finance Division as a result of providing an ADA accommodation). Through the initial accommodation, Ofcr. Arroyo had conveyed to the City that she sought assistance from it in the form of an accommodation. *Pappas*, 513 F.Supp.3d at 93. Once an employee requests an accommodation, the interactive process begins. *Spurling v. C&M Fine Pack, Inc*., 739 F.3d 1055, 1061 (7th Cir. 2014). An employer's duty to accommodate is a "continuous activity" that is not exhausted by one effort. *Ammons,* 2011 U.S. Dist. WL 5507370 at *2; *Moore-Fotso v. Bd. of Educ. of Chi.*, 211 F.Supp.3d 1012, 1029 (N.D. Ill. 2016).

Accordingly, case law excuses Ofcr. Arroyo from making an affirmative request for accommodations because: (1) the City knew of her disability through its initial accommodation of her disability; (2) because of that, the City knew that she sought assistance from the City in the form of accommodations; and, (3) seeking an accommodation does not end after the employer provides the initial accommodation. *Thompson*, 305 F. App'x at 668.

### C. The City's failure to participate in the interactive process in good faith resulted in a failure to identify an appropriate accommodation for Ofcr. Arroyo.

Knowing that Arroyo's initial accommodation would fail by virtue of its own policy, the City had an obligation to engage in the interactive process. Despite this obligation, the City never engaged with Ofcr. Arroyo in an interactive attempt to find a reasonable accommodation. This prevented the City from offering Ofcr. Arroyo a reasonable accommodation that was otherwise available to her. As such, the City is "on the hook," for its failure. *Babnik*, 2023 U.S. Dist. WL 4817655, at *8 ("By summarily denying [Plaintiff] light duty, [Defendant] failed to identify a reasonable accommodation that was available to her at the time.").

"[I]f an employee tells his employer that he has a disability, the employer then knows of the disability, and the ADA's further requirements bind the employer." *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d, 928, 934 (7th Cir. 1995). Once an employee requests an accommodation, "the ADA obligates the employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Spurling*, 739 F.3d at 1061. The interactive process "imposes a duty upon employers to engage in a flexible ... process with the disabled employee needing accommodation so that, together, they might identify the employee's precise limitations and discuss accommodations which might enable the employee to continue working." *Kirincich v. Ill. State Police*, 196 F.Supp.3d 845, 852 (N.D. Ill. 7/22/16) (citing *Hendricks-Robinson*, 154 F.3d at 693). An employer's duty to accommodate is a "continuous activity" that is not exhausted by one effort. *Ammons*, 2011 U.S. Dist. WL 5507370 at *2; *Moore-Fotso v. Bd. of Educ. of Chicago*, 211 F.Supp.3d at 1029. Failure to engage in the interactive process is "actionable if it prevents identification of an appropriate accommodation for a qualified individual," and where the employer is responsible for the breakdown of the process. *Spurling*, 739 F.3d at 1059 n.1, 1062.

As an initial matter, the record shows that the City bore a continuing obligation to work with Ofcr. Arroyo to identify another reasonable accommodation since the City knew its initial accommodation would fail. It is undisputed that Ofcr. Arroyo was detailed to a LD assignment at CPD's Finance Division in September 2017 due to her disability that left her unable to fulfill the duties of a full duty officer without accommodations. CPD sought to terminate this initial accommodation after 730 days pursuant to Directive E03-01-03, precisely *because* she could no longer fulfill the duties of a full duty CPD officer. Jones dep. Ex. 2, Arroyo.Def.190-192 (LD Program E03-01-03) at Arroyo.Def.190-191; Jones dep. at 170:17-20, 173:9-11; James dep. at 118:3-5; Smith dep. at 83:16-19. Ofcr. Arroyo disputes the City's unsupported assertion that she did not follow procedure by not conferring with MSS Sup. Jones as instructed. Rather, Ofcr. Arroyo met with MSS Sup. Jones to discuss her options as MSS instructed. Arroyo Decl. at §17; Jones dep. at 94:5-11. Ofcr. Arroyo chose to use her remaining medical roll time after her non-IOD expired because she could not return to FD status. *Id*. CPD knew Ofcr. Arroyo could not resume her prior full duty officer role due to her disability, so by terminating the initial

accommodation, CPD knew Ofcr. Arroyo would be forced out of CPD. Jones dep. Ex. 2, Arroyo.Def.190-192 (LD Program E03-01-03); Jones dep. Ex. 6, Arroyo.Def.2012-13 (Notif Ltrs A, B); James dep. at 118:3-5; Jones dep. at 170:17-20; 171:25-172:3; 173:2-8. It is thus reasonable to infer that CPD was aware that further accommodations would be needed for Ofcr. Arroyo to continue her employment given that the initial accommodations only failed *because CPD withdrew them.* As such, the interactive process was already ongoing when Ofcr. Arroyo's non-IOD days expired and when she was on medical roll, and CPD knew that the initial accommodation was failing because it chose to terminate the accommodation. The City, therefore, had an affirmative obligation to engage in the interactive process with Ofcr. Arroyo and identify another reasonable accommodation. *See Pappas v. District of Columbia*, 513 F.Supp.3d 64 at 93-94.

i. *Vacant positions were available within CPD and the City departments for which Ofcr. Arroyo was qualified.*

While the City is correct in stating that the ADA does not obligate it to create a new position as an accommodation for Ofcr. Arroyo, she disputes that she requested it to create a new position to accommodate her. Ofcr. Arroyo's requests were to either extend her LD status or to fill vacant positions of which she was aware. Arroyo dep. at 75:5-24 Under the ADA, "[t]he duty to reasonably accommodate a disabled employee may include reassignment to a vacant position." *Gray v. FleetPride, Inc.*, 2022 U.S. Dist. WL 10080811, at *6 (citing *Brown v. Milwaukee Bd. of Sch. Directors*, 855 F.3d 818, 820 (7th Cir. 2017)). As such, because the City knew that its initial accommodation through its Limited Duty Program would fail, thus leaving Ofcr. Arroyo unable to perform the essential functions of a police officer without an accommodation, it was under the obligation of engaging in the interactive process to find a new reasonable accommodation or reassign her to a vacant position.

Employers "must make a good faith effort of reasonable accommodation of an employee's disability." *Sams*, 2018 U.S. Dist. WL 4679581, at *12 (citation omitted). Reassignment to a vacant position is a form of reasonable accommodation. *Smith v. Dept. of Human Svcs.*, No. 17-CV-3786, 2020 U.S. Dist. WL 887486, at *9 (N.D. Ill. 2/24/20) (citing *Ozlowski v. Henderson*, 237 F.3d 837 (7th Cir. 2001) (Citing to 42 U.S.C. § 12111(9)(B)). If a vacant position is available and the disabled employee is qualified for it, "the ADA may require the employer to reassign [him]…as a reasonable accommodation." *Sams*, 2018 U.S. Dist. WL 4679581, at *7. Furthermore, "An employer cannot sit behind a closed door and reject the employee's requests for accommodation without explaining why the requests have been rejected or offering alternatives." *Id*. (emphasis added). In terms of scope of alternative positions for reassignment, employers are "required to identify 'the full range of alternative positions' available and 'to consider transferring the employee to any of these other jobs…" *Hendricks-Robinson v. Excel Corp*., 154 F.3d at 694 (citation omitted) (emphasis added by court).

Here, the record shows that vacant positions existed within CPD and across other City departments to which Ofcr. Arroyo could have been reassigned as a civilian employee. Prior to working at CPD, Ofcr. Arroyo carried eight to nine years of experience in accounts payable positions including employment at large corporations after completing one year at Northwestern Business College. Arroyo dep. at 16:13-17:7. Over the course of her career at CPD, the department had detailed Ofcr. Arroyo to numerous administrative and clerical positions including working in CPD Human Resources Division and working as a Review Officer, Citation Officer,

District Desk position, and the Alternate Response Unit. Arroyo dep. at 42:15-23; 46:18-47:2; 111:15-112:2; 112:20-113:14; 115:5-115:15. Within the Finance Division, in addition to using her finance skill set, Ofcr. Arroyo assisted in an administrative capacity, clerical capacity, preparing travel packets for senior CPD leadership, processing of travel requests for approval, and learning the reimbursement aspect of the Travel Section. James dep. at 108:25-109:6, 136:7-16, 93:8-17; Arroyo dep. at 105:20-22. Collectively, this extensive experience only served to fortify her administrative and clerical skill set qualifying her for clerical and administrative positions within City departments.

The record shows that the Travel Section to which Arroyo was detailed had civilian vacancies "because there was a need and CPD began reassigning police officers out of Travel to other areas." Johnson dep. at 154:8-155:1, 133:5-10, 142:23-24; accord, James dep. 95:18; 96:4-7. Furthermore, Finance Dir. Johnson identified nine Clerk III position job announcements that were listed for the Finance Division and vacant between January 2019 through May 5, 2023. Johnson dep. at 157:6-9; Johnson dep. Ex. 21 (Defendant's Responses to Plaintiff's Second Set of Request for Production); see also, O'Brien Decl. Because she was qualified to work in the Finance Division and satisfactorily executed administrative, clerical and Accounting Technician 2 responsibilities, Ofcr. Arroyo was qualified for the Clerk III vacancies within the division. James dep. at 109:7-110:3; 108:4-15.

The record also shows that the City had 170 general administrative vacancies across its various departments from January 2019 through May 5, 2023. O'Brien Decl.; Johnson dep. at 157:6-9. Ofcr. Arroyo's extensive administrative and clerical experience as described *supra* supports her qualification to fill any of the Clerk IV, Clerk III (posted for the Finance Division), Clerk II, Administrative Assistant III, and Administrative Assistant II vacancies. O'Brien Decl.; Johnson dep. at 157:6-9.

### ii. *The City is responsible for the breakdown in the interactive process.*

"If a reasonable accommodation was available but [the] employer prevented its identification by failing to engage in the interactive process, that failure is actionable." *Gray v. FleetPride, Inc*., U.S. Dist. WL 10080811, at *6 (citation omitted). To determine who is responsible for a breakdown in the interactive process, "courts look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Suvada*, No. 11-C-07892, 2013 U.S. Dist. WL 5166213, at *7 (9/13/13) (citing *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996). "A party that fails to communicate, by way of initiation or response, might also be acting in bad faith." *Id*.

Here, the City caused the interactive process to break down. The record reflects that there was a substantial number of vacant positions citywide for which Ofcr. Arroyo qualified and of which she could perform the essential functions with or without a reasonable accommodation. The record also shows that no one from CPD (whether her supervisors, those in MSS, CPD HR or the CPD Disability Liaison) or the City's Department of Human Resources or its Disability Officer Kathryn Perry-Hopkins, communicated with Ofcr. Arroyo about being reassigned to a vacant position as an accommodation. Jackson dep. at 44:9-14; 45:16-46:2; 46:9-12; 63:10-13; James dep. at 133:16-20, 138:19-24; Jones dep. at; 133:16-20; 173:24-174:7; Smith dep. at 143:2-5;

11

Smith dep. at 143:2-5; Arroyo Decl. at ¶¶15, 19-20; Arroyo dep. at 89:24-90:12; 110:16-111:6. The only response that Ofcr. Arroyo received to her requests was that there was nothing anyone could do because her time had expired. Arroyo dep. at 96:12-22; James dep. at 131:12-13; 132:19-133:15. This is not enough to absolve the City from its responsibility to engage in the interactive process. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d at 806 ("Although the employer believed that the employees proposed accommodation would have been ineffective, it 'had the affirmative obligation to seek [the employee] out and work with her to craft a reasonable accommodation.'" (citation omitted)). The City acted in bad faith when it failed to respond to Ofcr. Arroyo and help her determine what specific accommodations are available, such as reassignment. *Suvada*, 2013 U.S. Dist. WL 5166213, at *7 ("A party that fails to communicate, by way of initiation or response, might also be acting in bad faith.") (citation omitted); *Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 786 (7th Cir. 2016). ("[s]ummary refusal of an employee's request is indicative of failure to engage in interactive process;: *Gray v. FleetPride, Inc*., 2022 U.S. Dist. WL 10080811, at *7 (Finding plausible claim where employer "responded to plaintiff's request for reassignment by telling him that 'since your restrictions are permanent, unfortunately we are unable to accommodate' and terminated him with no further action or communication."). Accordingly, the City's breakdown in the interactive process in failing to engage with Ofcr. Arroyo resulted in a failure to identify an appropriate accommodation for Ofcr. Arroyo.

iii.     *CPD employs a common practice that violates the ADA and Rehab Act.*

A reasonable accommodation request was always available to Ofcr. Arroyo. Jones dep. at 103:20-5. However, CPD employs a common practice that undermines this general policy, precluding officers, including Ofcr. Arroyo, from realizing this option. CPD management exercises a common practice of excluding reasonable accommodation requests as an option for those officers: (1) whose non-IOD time was set to expire; (2) who were unable to return to full duty; (3) who chose to go on medical roll, and; (4) when their medical roll exhausted, they were still unable to return to full duty status. Here, this practice prevented Arroyo from continuing to work after her non-IOD LD time expired because she was unaware that this option remained open and, as the record shows, CPD management did not consider this an available option.

The City, through its CPD management, mailed two notification letters in January 2019 to Arroyo providing her various options after her LD non-IOD days were to expire should she not be able to return to work full duty. Jones dep. Ex. 6, Arroyo.Def.2012-13 (Notif Ltrs A, B). One of the options was to use the remaining time in her medical roll (which would end in November 2019) and other was to request a reasonable accommodation. *Id*.

Ofcr. Arroyo reiterates her dispute of the City's unsupported assertion that Ofcr. Arroyo did not follow procedure by conferring with MSS Sup. Jones as instructed. At her meeting with MSS Sup. Jones, the focus of their conversation was on the option of Ofcr. Arroyo using her medical time because this would give her shoulder time to heal. Arroyo Decl. at §17. Medical roll is normally chosen by officers so as to give time for the officer to heal. Jones dep. at 98:13-23. Reasonable accommodation as an option was not discussed at the meeting. Arroyo Decl. at §17.

The record shows that when officers who chose medical roll over a request for reasonable accommodations when their non-IOD time expires, and are then unable to return to full duty status when their medical roll expires have, in essence, lost the opportunity to request an accommodation;

it is an unwritten use-it-or-lose-it rule. In practice, CPD's management does not consider reasonable accommodation requests as an option after the non-IOD time expires. Ofcr. Arroyo agrees that because her non-IOD time expired and she could not return to full duty, she could not continue in an LD assignment through CPD's LD program. An officer in Arroyo's position, though, has no option to continue working once their medical roll expires and they are still unable to work full duty. Smith dep. at 51:24-52:4; 83:16-19. Ofcr. Arroyo received a notification letter in September 2019 shortly before her medical roll expiration date. Jones dep. Ex. 8, Arroyo.Def.3534 (Notif Ltr 9/3/19). This letter included the same options as the January 2019 letters should she be unable to return to full duty, but it <u>excluded</u> the option to make a reasonable accommodation request. Her only options were to resign, retire, or go on LOA to apply for disability pension. *Id*. As such, it did not properly inform Ofcr. Arroyo that such an option did, indeed, exist. *Id*.; Jones dep. at 104:9-12; Arroyo Decl. at §18. *Suvada*, 2013 U.S. Dist. WL 5166213, at *7 ("But whether [Plaintiff] knew about the resources available to her on [Defendant's] website does not absolve [Defendant] of its duty to engage in the interactive process. The ADA imposes an *affirmative* duty on employers to make reasonable accommodations for disabilities of an employee who can perform the essential functions of her job with or without accommodation. (emphasis in original) (citing *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir. 1999) (citation omitted)).

To reconcile this against the policy that an ADA accommodation was always available to Arroyo, MSS Sup. Jones testified that because Arroyo chose to go on medical when her non-IOD time expired, these are now Ofcr. Arroyo's options (referring to those in the September 2019 letter), which exclude requesting reasonable accommodations. Jones dep. Ex. 8, Arroyo.Def.3534 (Notif Ltr 9/3/19); Jones dep. at 103:20-5. This practice is confirmed in a December 2019 email thread involving Director of Human Resources Robert Landowski. Johnson dep. Ex. 20, Arroyo.Def.3541 (email 12/24/19 re Plfs options). Sgt. Russel provided HR Dir. Landowski with the options available to Ofcr. Arroyo when her medical roll ended and, like the September letter, it excluded an option for her to request reasonable accommodations. Finance Dir. Johnson testified that the options Sgt. Russell provided are correct. Johnson dep. at 151:9-15.

Both the City's and CPD's reasonable accommodation policies require supervisors to report requests for accommodations to the department's disability liaison. Jackson dep. Ex. 3, Arroyo.Def.083-096 (City's Reas Accom Policy) at Arroyo.Def.086; Jackson dep. Ex. 5, Arroyo.Def.165-67 (CPD's Reas Accom Policy E01-04 Resc, 9/23/19) at Arroyo.Def.166; Jackson dep. Ex. 6, Arroyo.Def.168-70 (CPD's Reas Accom Policy E01-04 Eff, 9/24/19) at Arroyo.Def.169.

Additionally, §I of the City's Policy "replaces and supersedes any reasonable accommodation *practices* and procedures that may exist at the departmental level." *Id*. at Arroyo.Def.083 (emphasis added). The record shows that Ofcr. Arroyo's chain of command and CPD management did not discuss with each other Ofcr. Arroyo's request for accommodation nor did they report the request to CPD Disability Liaison Jermeka Jackson. James dep. at 133:16-20, 138:19-24; Jones dep. at 173:24-174:7; Smith dep. at 143:2-5; Jackson dep. at 44:12-14, 63:10-13. Corroborating Ofcr. Arroyo, CPD Disability Liaison Jackson agreed that no one informed Arroyo about the reasonable accommodation process. *Id*. at 44:9-17; Arroyo Decl. at §17-20; Arroyo dep. at 117:8-122:5.

Moreover, as established *supra* §C., the City had a continuing duty to engage in the interactive process with Ofcr. Arroyo because it knew that, by virtue of its policy, her initial accommodation would fail. The common practice in excluding reasonable accommodations, however, undermined this duty, preventing the interactive process from continuing and thereby keeping Ofcr. Arroyo employed. Arroyo informed her supervisors that she wanted to continue working and yet she received no ADA guidance. *Id*. at 117:8-122:5; 123:16-24; Arroyo Decl. at §§15, 17-20.

Accordingly, CPD's common practice of excluding reasonable accommodations as an option for Ofcr. Arroyo when her medical roll expired, which prevented her from remaining employed with the City, violated the ADA and Rehab Act.

## II. OFFICER ARROYO CAN ESTABLISH RETALIATION BECAUSE A CAUSAL CONNECTION EXISTS.

To survive summary judgment on a retaliation claim, a plaintiff must show the existence of a genuine issue of material fact that: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Elzeftawy v. Pernix Group, Inc*., 477 F.Supp.3d at 766. The City does not dispute Ofcr. Arroyo has met the first and second elements of a retaliation claim. The City argues Ofcr. Arroyo will not be able to show a genuine issue of material fact exists as to the element of causation.

The City claims, without summarizing the facts or citing to a reference, that Ofcr. Arroyo's arguments as to her retaliation claim have somehow changed. The City appears to obfuscate or misapprehend the facts related to Officer Arroyo's retaliation claim. It should go without saying that a plaintiff can point to more than one instance of engaging in protected activity. When Ofcr. Arroyo sought to certify her 2013 and 2016 injuries as IOD, the denial of said certifications adversely impacted her access to accommodations for her disability. When the City refused to certify her shoulder injury as work related (after initially certifying it as IOD and then asking Arroyo to resubmit her claim as a new injury only to have the COF deny this, thus leading to her grievance), it was ostensibly trying to cut Ofcr. Arroyo off from access to a permanent limited duty status.

Moreover, the City does not dispute that Ofcr. Arroyo engaged in protected activity when she requested a permanent limited duty assignment. In cursory and circular fashion, the City argues Officer Arroyo cannot show a causal connection between her protected activity and an adverse action because the alleged adverse actions occurred "pursuant to the terms and conditions of the CBA and CPD's general orders after she ran out of non-IOD medical time and non-IOD time in an LD assignment." For the reasons stated *supra*, the City will have a difficult time receiving summary judgment on its claim that its decisions as to Ofcr. Arroyo were in line with its policies and procedures and that it could not provide a reasonable accommodation to Ofcr. Arroyo. Accordingly, a genuine issue of material fact would exist as to causation with respect to Officer Arroyo's retaliation claim.

14

The City argues that Officer Arroyo cannot point to the denial of the accommodation as retaliation. However, an adverse employment action under a retaliation claim includes any action that would dissuade a reasonable employee from exercising his rights. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008); see also *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Majors v. Tootsie Roll Indus.*, 20-CV-03044, pgs. 3, 7 (N.D. Ill. 2021) (finding adverse action where employer told disabled employee that his only path was separation from the company and that they forced him to take Long-Term Disability benefits and would place employee on unpaid leave of absence while on Long-Term Disability). Here, a reasonable person would be dissuaded from seeking accommodations under these facts.

The City cannot and does not dispute that Ofcr. Arroyo engaged in protected activity. Further, the City cannot and does not dispute that Ofcr. Arroyo suffered an adverse employment action. Because the City chose to push Ofcr. Arroyo out from employment rather than accommodate her disability in good faith and in accordance with the processes and procedures available to her, and because this all occurred after she had engaged in protected activity, Ofcr. Arroyo will be able to show that a genuine issue of material fact exists as to her retaliation claim.

## III. OFFICER ARROYO MADE REASONABLE EFFORTS TO MITIGATE DAMAGES.

The City argues Officer Arroyo "wholly failed to mitigate her damages" because she did not "seek outside employment for over 3 years." Ofcr. Arroyo disputes this assertion.

First, pursuant to City Personnel Rules, Rule XX.§3(a)(6), the City prohibits its employees who are on duty disability from seeking outside employment while on leave. Jackson Dep. Ex. 2, Arroyo.Def.001-082 (City's Personnel Rules), Arroyo.Def.070. Aware of this rule, Ofcr. Arroyo did not seek outside employment. Arroyo dep. at 99:8-17; Jackson Dep. Ex. 2, Arroyo.Def.001-082 (City's Personnel Rules) at Arroyo.Def.070. As such, the City cannot state that Ofcr. Arroyo failed to mitigate damages by not seeking other work when its own rules prohibit this.

Moreover, when Ofcr. Arroyo submitted her LOA paperwork in March 2020, she initiated the necessary paperwork to receive income through the Policemen's Annuity and Benefit Fund of Chicago ("PABF"). Arroyo Decl. at ¶8. This included authorization to release her medical file to PABF. *Id*. at ¶¶10-11. In April 2020, Ofcr. Arroyo informed CPD management that PABF had not received her medical file and asked for guidance. *Id*. at ¶11. CPD management said they could not assist her and she consequently reached out to her union representative and the attorney who represented her at the arbitration. *Id*. No one responded to her emails or subsequent phone call messages. *Id*. In the October 2019 Ofcr. Arroyo reached out to the Disability Manager of PABF Ofcr. Bob Crawford who suggested she wait until the arbitration was decided since that would be the determining factor. Arroyo dep. at 93:19-94:6. After the arbitrator made her decision, Arroyo re-started the process. Arroyo dep. at 92:13. Thus, Ofcr. Arroyo took reasonable steps within her power to try to mitigate damages.

For the above reasons, Plaintiff is confident she would prevail against a motion for summary judgment as genuine issues of material fact exist to each claim. Despite the strengths of her case, Plaintiff is open to settlement negotiations. We look forward to scheduling a time for a FRCP Rule 26 meet and confer in the forthcoming days per J. Seeger's Minute Entry. (Dkt. 116).

Sincerely,


/S/ *Janaan Hashim*

Janaan Hashim, Esq.
One of Plaintiff's Attorneys


Janaan Hashim
Amal Law Group, LLC
161 N. Clark St.
Suite 1600
Chicago, IL 60607
jhashim@amallaw.com
312-882-4122

Christina Abraham, Est.
Abraham Law and Consulting
161 N. Clark St.
Suite 1600
Chicago, IL 60607
christina.w.abraham@gmail.com
312-588-7150


cc: John Catalano, City of Chicago Assist. Corp. Counsel

EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| REYNA ARROYO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-1148 |
| | ) | |
| v. | ) | Hon. Gary S. Feinerman |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, | ) | Magistrate Judge Jeffrey Cummings |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant City of Chicago ("City"), through its attorney, Celia Meza, Corporation Counsel of the City, submits the following for its Answer and Affirmative Defenses to the Amended Complaint filed on May 11, 2021, CM/ECF #15, by Plaintiff Reyna Arroyo ("Arroyo"), and its Jury Demand.

**JURISDICTION AND VENUE**

1. Jurisdiction of this court is proper under 28 U.S.C. 451, 1331, 1337, and 1342. This action is instituted under Section 12117(a) of the Americans With Disabilities Act, 42 U.S.C. § 12117 – incorporating by reference Sections 706(f)(1), (d) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1), (3), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791. Plaintiff filed a complaint of discrimination with the Illinois Department of Human Rights on July 10, 2020. Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission on December 30, 2020. Plaintiff filed her initial *pro se* complaint on February 25, 2021. This Court has supplemental state law jurisdiction over Plaintiff's failure to recall claim under the Illinois Workers' Compensation Act pursuant to 28 U.S.C. §1367.

**ANSWER:** **The City admits Plaintiff purports to bring this action under the Americans with Disabilities Act, 42 U.S.C. §12111, *et seq*. ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. §701, *et seq*. ("RHA"), and the Illinois Workers' Compensation Act, 820 ILCS 305/1,**

*et seq*. ("IWCA"),[1] and admits the Court has jurisdiction over Plaintiff's claims under the ADA and RHA. The City admits Plaintiff filed a pro se Complaint on February 25, 2021 and admits Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") that is dated July 10, 2020. The City denies the Court has supplemental jurisdiction over her claim under the IWCA because that claim has since been dismissed by the Court. The City denies 28 U.S.C. § 451 confers jurisdictional authority and denies 28 U.S.C. § 1337 or § 1342 are applicable in this matter. The City lacks knowledge sufficient to form a belief as to when Plaintiff received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission ("EEOC").

2.      Venue is proper under 28 U.S.C. § 1391(b). The parties reside and/or conduct business in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district as well.

**<u>ANSWER</u>:     The City admits venue is proper, that it is a municipal corporation within the State of Illinois and this judicial district, and that its records reflect Plaintiff self-reported her residency as Chicago, Illinois.**

### THE PARTIES

3.      Plaintiff Reyna Arroyo ("Plaintiff") was employed at Defendant as a police officer since March 16, 1998 until on or around December 2019 when she was placed on involuntary leave and ordered to turn in her star and badge.

**<u>ANSWER</u>:     The City admits it has employed Plaintiff in the title of Police Officer since March 16, 1998, admits its records reflect that Plaintiff's leave of absence began on or about November 18, 2019, and admits it is standard procedure for Police Officers to turn in their star/shield and ID when going out on a leave of absence. The City lacks information or**

---

[1] Plaintiff's IWCA claim in Count IV was dismissed by the Court on July 9, 2021. CM/ECF #26.

knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

4.      Defendant City of Chicago Police Department ("Defendant") is the police department maintained by the City of Chicago, a municipal government entity.

**ANSWER:      The City admits it is a municipal corporation within the State of Illinois and that the Chicago Police Department ("CPD") is an organizational department within the City.**

## FACTUAL ALLEGATIONS

5.      Plaintiff was hired by Defendant as a police officer on or about March 16, 1998.

**ANSWER:      The City admits it has employed Plaintiff in the title of Police Officer since March 16, 1998.**

6.      As an active duty police officer, Plaintiff sustained several work related injuries during her employment at Defendant.

**ANSWER:      The City admits its records reflect Plaintiff has reported to have incurred several injuries while employed by the City, some of which were determined to have been sustained while in the performance of police duties ("IOD").**

7.      In 2013, Plaintiff injured her ankle while on duty.

**ANSWER:      The City admits that on January 21, 2013, Plaintiff reported having sustained an injury involving her right ankle on January 21, 2013, which was later certified as an IOD.**

8.      Plaintiff reported the 2013 ankle injury and filed a claim with the Illinois Workers' Compensation Commission. Defendant disputed the claim.

**ANSWER:      The City admits that on or about January 21, 2013, Plaintiff reported having sustained an injury involving her right ankle on January 21, 2013, but lacks knowledge or information sufficient to form a belief as to whether Plaintiff filed a claim with the Illinois**

Workers' Compensation Commission in 2013 and to what Plaintiff means by "reported" the injury or "disputed" the claim, as those terms are vague and ambiguous.

9.      In or around October of 2016, Plaintiff injured her left shoulder while on duty.

**ANSWER:      The City admits that on October 13, 2016, Plaintiff reported having sustained a reoccurrence injury involving her left shoulder on October 12, 2016, but denies the injury was sustained in the performance of her police duties.**

10.      Plaintiff reported the 2016 shoulder injury and filed a claim with the Illinois Workers' Compensation Commission. Defendant disputed the claim.

**ANSWER:      The City admits that on October 13, 2016, Plaintiff reported having sustained a reoccurrence injury involving her left shoulder on October 12, 2016, but lacks knowledge or information sufficient to form a belief as to whether Plaintiff filed a claim with the Illinois Workers' Compensation Commission in 2016 and to what Plaintiff means by "disputed" the claim as that term is vague and ambiguous.**

11.      Following the 2016 shoulder injury, Defendant placed Plaintiff on desk duty.

**ANSWER:      The City lacks knowledge or information sufficient to know what Plaintiff means by "desk duty," but admits that on or about September 25, 2017, Plaintiff requested and was placed in a limited duty assignment.**

12.      Plaintiff was able to perform the essential functions of the desk duty position.

**ANSWER:      The City lacks knowledge or information sufficient to know what Plaintiff means by "desk duty position," but admits that, at certain times, Plaintiff was able to perform the functions of a temporary limited duty assignment.**

13.      Plaintiff worked the desk duty position for approximately two years. During this time, Defendant pressured Plaintiff to return to full duty work, despite her ankle and shoulder injuries.

4

**ANSWER:** **The City lacks knowledge or information sufficient to know what Plaintiff means by "desk duty position," but admits Plaintiff remained in a limited duty assignment from on or about September 25, 2017, until on or about March 31, 2019.**

14. During this time, Defendant disputed both the 2013 ankle and 2016 shoulder injuries.

**ANSWER:** **The City admits the Committee on Finance denied Plaintiff's claims relating to her January 21, 2013 injury and her October 12, 2016 injury. The City denies the remaining allegations in this paragraph.**

15. In 2018, between around June and November 2018 Plaintiff took four (4) months medical leave for cancer treatment that included major surgery.

**ANSWER:** **The City admits its records reflect Plaintiff underwent surgery on or about July 19, 2018, and was on CPD's Medical Roll until on or about November 2, 2018, but lacks knowledge or information sufficient to form a belief to the truth of the remaining allegations in this paragraph.**

16. Sometime in late 2019, Defendant offered Plaintiff a permanent light duty position if she released Defendant from her 2016 shoulder injury claim. Plaintiff declined to do so.

**ANSWER:** **The City lacks knowledge or information sufficient to form a belief to the truth of the allegations in this paragraph because the term "released" and phrases "shoulder injury claim" are vague and ambiguous and because Plaintiff fails to allege time, locations, or events.**

17. Shortly thereafter, Defendant refused to allow Plaintiff to work a light duty position.

**ANSWER:** **The City lacks knowledge or information sufficient to know what Plaintiff means by "light duty position," but admits Plaintiff exhausted the time available to her in CPD's Sworn Limited Duty Program for a non-IOD injury on or about November 17, 2019.**

18. Plaintiff requested accommodation for her disability and provided medical documentation to support the need for accommodation. Defendant denied her requests.

5

**ANSWER:** **The City lacks knowledge or information sufficient to form a belief to the truth of the allegations in this paragraph because Plaintiff fails to allege time, locations, or events. The City denies failing to provide Plaintiff with a reasonable accommodation or otherwise violating any law or statute.**

19.     In or around November 2019, Defendant placed Plaintiff on involuntary unpaid medical leave.

**ANSWER:** **The City admits it placed Plaintiff on an unpaid leave of absence on or about November 18, 2019 because she had exhausted the amount of time available to her under CPD's Sworn Limited Duty Program for a non-IOD injury.**

20.     On or about May 1, 2020, Defendant ordered Plaintiff to turn in her badge and star.

**ANSWER:** **The City admits its records reflect that Plaintiff remains an inactive employee with the City on a leave of absence, which began on or about November 18, 2019, and admits it is standard procedure for Police Officers to turn in their star/shield and ID when placed on an unpaid leave of absence. The City lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

21.     Upon information and belief, at the time Defendant removed Plaintiff from her light duty position, there were at least two open light duty positions available.

**ANSWER:** **The City denies it has "light duty" positions and denies additional time is available to Plaintiff under CPD's Sworn Limited Duty Program for a non-IOD injury.**

22.     Upon information and belief, other similarly situated employees who did not engage in protected activity were given permanent light duty positions at Defendant.

**ANSWER:** **The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations because Plaintiff fails to identify the "similarly situated employees" or what protected activity they may have engage in.**

6

**Count I**
**Disability Discrimination in Violation of the Americans with Disabilities Act**

23.    Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

**ANSWER:    The City restates its answers to the previous paragraphs as if fully set forth**

**herein.**

24.    At all relevant times, Plaintiff was disabled within the meaning of the Americans with Disabilities Act, 42 U.S.C. 12111 *et seq* and under Section 504 of the Rehabilitation Act of 1973. Plaintiff has a musculoskeletal condition stemming from an injury suffered to her left shoulder in October 2016.

**ANSWER:    The City admits 42 U.S.C. § 12102 defines the term "disability" under the ADA**

**and 29 U.S.C. § 705(9) defines the term "disability" under the RHA, but lacks information or**

**knowledge sufficient to form a belief as to the truth of the remaining allegations in this**

**paragraph.**

25.    Plaintiff's musculoskeletal condition substantially limits one or more major life activities. The condition limits Plaintiff's ability to perform manual tasks, to lift, and to reach as identified under the ADA. (42 U.S.C. § 12102(2)(A)). Furthermore, the ADA specifies that major life activities also include the operation of major bodily functions such as musculoskeletal functions. (42 U.S.C. § 12102(2)(b)).

**ANSWER:    The City admits 42 U.S.C. § 12102 defines the term "disability" and subsection**

**(2)(A) is a non-exhaustive list of major life activities as that relates to the definition of the**

**term "disability." The City lacks information or knowledge sufficient to form a belief as to**

**the truth of the remaining allegations in this paragraph.**

26.    Plaintiff is a qualified individual as she is a person who met the legitimate skill, experience, education, or other requirements of the employment position that she held and she could perform the essential functions of the position with or without reasonable accommodation. Plaintiff was employed by Defendant since March 16, 1998. Plaintiff performed her job well, received adequate evaluations, and received many accolades for her work.

**ANSWER:    The City admits it has employed Plaintiff in the title of Police Officer since**

**March 16, 1998, but denies Plaintiff could perform the essential functions of the position with**

or without a reasonable accommodation for various periods during her employment. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations because Plaintiff has not performed the essential duties of the position in nearly 5 years and because the term "accolades" is vague and ambiguous.

27.     Because of Plaintiff's physical impairment, Defendant placed Plaintiff on involuntary unpaid medical leave on or around December 15, 2019 and then ordered Plaintiff to surrender her badge and star on or about May 1, 2020.

**ANSWER:     The City admits its records reflect that Plaintiff's leave of absence began on or about November 18, 2019, that Plaintiff remains an inactive employee with the City on a leave of absence, and admits it is standard procedure for Police Officers to turn in their star/shield and ID when going out on a leave of absence. The City lacks information or knowledge sufficient to form a belief as to the truth of whether Plaintiff was "ordered" to surrender her badge and star.**

28.     Defendant was able to accommodate Plaintiff before placing her on involuntary unpaid medical leave in December 2019 because Defendant had light duty positions available and had provided permanent light duty positions to other similarly situated employees who did not engage in protected activity. Being assigned a permanent light duty position would have been a reasonable accommodation to Plaintiff's disability and would not have placed an undue hardship on Defendant.

**ANSWER:     The City denies having "light duty" or "permanent light duty" positions and denies that allowing Plaintiff to permanently remain in Limited Duty Status for a non-IOD injury would have been a reasonable accommodation. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations because Plaintiff fails to identify the "similarly situated employees."**

29.     Defendant's unlawful failure to accommodate Plaintiff's disability caused Plaintiff damages, including but not limited to: lost wages, emotional pain and suffering, costs and fees.

**ANSWER:** **The City denies it failed to reasonably accommodate Plaintiff, denies its conduct was unlawful, and denies it caused Plaintiff any damages.**

**Count II**
**Retaliation in Violation of the Americans with Disabilities Act**

30.     Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

**ANSWER:** **The City restates its answers to the previous paragraphs as if fully set forth herein.**

31.     Plaintiff was exercising her rights under the Americans With Disabilities Act, 42 U.S.C. 12111 *et seq.* when she believed she met the statutory definition of disability under the statute and requested a reasonable accommodation. The reasonable accommodation she sought was to be assigned to a light duty position for her disability, an accommodation Defendant could have provided her.

**ANSWER:** **The City denies having "light duty" positions and denies that allowing Plaintiff to permanently remain in Limited Duty Status for a non-IOD injury would have been a reasonable accommodation. The City lacks knowledge or information sufficient to know what "believed".**

32.     Defendant took a materially adverse employment action after opposing Plaintiff's reasonable accommodation request. After Plaintiff declined Defendant's offer in late 2019 to be assigned to a permanent light duty position if she released Defendant from her 2016 shoulder injury claim, Defendant then refused to allow Plaintiff for work a light duty position. Defendant did this despite such positions being vacant. Furthermore, on or around December 15, 2019, Defendant then placed Plaintiff on involuntary, unpaid medical leave. On or about May 1, 2020, Defendant then ordered Plaintiff to surrender her badge and star.

**ANSWER:** **The City admits its records reflect that Plaintiff remains an inactive employee with the City on a leave of absence, which began on or about November 18, 2019, and admits it is standard procedure for Police Officers to turn in their star/shield and ID when going out on a leave of absence. The City denies having "light duty" or "permanent light duty" positions and denies that allowing Plaintiff to permanently remain in Limited Duty Status for**

a non-IOD injury would have been a reasonable accommodation. The City lacks information or knowledge sufficient to form a belief as to the truth of whether Plaintiff was "ordered" to surrender her badge and star.

33. There is a causal connection between the protected activity and the adverse action Defendant exercised against Plaintiff such that, when viewed together, an inference of retaliatory intent is apparent. The timing of events raises suspicion in that Plaintiff sought reasonable accommodation for her disability and Defendant offered her a permanent light duty position if she released Defendant from her 2016 should injury claim. Shortly after Plaintiff declined this offer, Defendant refused to accommodate Plaintiff's reasonable accommodation request and then placed Plaintiff on involuntary, unpaid medical leave. Five months later Defendant ordered Plaintiff to surrender her badge. Before being placed on involuntary, unpaid, medical leave, permanent light duty positions were available. At this time, other similarly situated employees who did not engage in protected activity were assigned permanent light duty positions.

**ANSWER:** The City admits its records reflect that Plaintiff's leave of absence began on or about November 18, 2019, admits that Plaintiff remains an inactive employee with the City on a leave of absence, and admits it is standard procedure for Police Officers to turn in their star/shield and ID when going out on a leave of absence. The City denies having "light duty" or "permanent light duty" positions and denies that allowing Plaintiff to permanently remain in Limited Duty Status for a non-IOD injury would have been a reasonable accommodation. The City further denies retaliating against Plaintiff in any way.

The City lacks information or knowledge sufficient to form a belief as to the truth of whether Plaintiff was "ordered" to surrender her badge and star. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations because Plaintiff fails to identify "similarly situated employees."

34. Defendant's unlawful, retaliatory conduct caused Plaintiff damages, including but not limited to: lost wages, emotional pain and suffering, costs and fees.

**ANSWER:** The City denies it retaliated against conduct Plaintiff, denies its conduct was unlawful, and denies it caused Plaintiff any damages.

10

## Count III
## Disability Discrimination in Violation of the Rehabilitation Act

35.     Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

**ANSWER:     The City restates its answers to the previous paragraphs as if fully set forth**

**herein.**

36.     Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794(a).

**ANSWER:     The City admits paragraph 36 accurately quotes 29 U.S.C. § 794(a).**

37.     Rehabilitation Act claims are analyzed under the same standards as those used for ADA claims, except the Rehabilitation Act includes as an additional element [sic] the receipt of federal funds by the defendant.

**ANSWER:     The City lacks knowledge or information sufficient to form a belief as to the**

**truth of the allegations in this paragraph because the phrases "Rehabilitation Act claims"**

**and "same standards" are vague and ambiguous.**

38.     Defendant receives federal funding through the Bureau of Justice Assistance ("BJA"). The BJA is a component of the U.S. Department of Justice, Office of Justice Programs. Defendant also receives federal funding through the Office of Community Oriented Policing Services, which is also a component of the U.S. Department of Justice.

**ANSWER:     The City admits it receives funding through various Federal programs and**

**departments.**

39.     Defendant's acts as described above, including its refusal to accommodate Plaintiff's disability after she requested accommodation, were prohibited by Section 504 of the Rehabilitation Act.

**ANSWER:     The City admits the RHA prohibits federally funded programs or activities**

**from discriminating against otherwise qualified individuals with disabilities, but denies**

Plaintiff was otherwise qualified, denies it discriminated against her or that she requested a reasonable accommodation, and denies it otherwise violated the RHA.

40. Defendant's unlawful retaliatory discrimination against Plaintiff's disability in violation of the Rehabilitation Act caused Plaintiff damages, including but not limited to, lost wages, emotional pain and suffering, costs and fees.

**ANSWER:** **The City denies it retaliated against or discriminated against Plaintiff, denies its conduct was unlawful, and denies it caused Plaintiff any damages.**

### Count IV
### Supplemental State Law Claim for Failure to Rehire or Recall for Active Service in Violation of the Illinois Workers' Compensation Act

41. Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

**ANSWER:** **The Court dismissed Count IV on July 9, 2021 (CM/ECF #26) and, therefore, no answer is required.**

42. Plaintiff was exercising her rights under the Illinois Workers' Compensation Act, 820 ILCS 305/ *et seq.* when she sought her own medical treatment and when she pursued a claim with the Illinois Workers' Compensation Commission for her 2013 ankle and 2016 shoulder injuries.

**ANSWER:** **The Court dismissed Count IV on July 9, 2021 (CM/ECF #26) and, therefore, no answer is required.**

43. Defendant disputed Plaintiff's 2013 and 2016 injury claims. Defendant leveraged the light duty position Plaintiff was working at in order to pressure her to forgo one of her injury claims. After Plaintiff refused, Defendant refused to provide her with a light duty position and forced her on unpaid medical leave.

**ANSWER:** **The Court dismissed Count IV on July 9, 2021 (CM/ECF #26) and, therefore, no answer is required.**

44. Defendant's refusal to allow Plaintiff to return to work was motivated by an intent to retaliate against Plaintiff for having pursued rights under the Illinois Workers' Compensation Act, in violation of section 4(h) of the Act.

**ANSWER:**     **The Court dismissed Count IV on July 9, 2021 (CM/ECF #26) and, therefore, no answer is required.**

45.     Defendant's unlawful conduct caused Plaintiff damages, including but not limited to, lost wages, emotional pain and suffering, costs and fees.

**ANSWER:**     **The Court dismissed Count IV on July 9, 2021 (CM/ECF #26) and, therefore, no answer is required.**

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE Plaintiff REYNA ARROYO respectfully requests the Honorable Court grant judgment in her favor and against Defendant, awarding:

A.     Actual damages;
B.     Compensatory Damages;
C.     Liquidated Damages;
D.     Reinstatement with full benefits and seniority in a permanent light duty position;
E.     Costs;
F.     Attorney's fees; and
G.     Such other relief as the Court deems just and equitable.

**ANSWER:**     **The City denies Plaintiff is entitled to any relief requested.**

## AFFIRMATIVE DEFENSES

1.     The City had legitimate non-discriminatory reasons for its employment decisions with respect to Plaintiff.

2.     The City would have taken the same employment actions towards Plaintiff regardless of her purported disability.

3.     The City did not take a tangible employment action towards Plaintiff to support a claim for retaliation under the ADA.

4.     To the extent Plaintiff's ADA claims are based on conduct or omissions by the City not within the scope of her charge of discrimination dated July 10, 2020 filed with the IDHR, including but not limited to her alleged 2013 injury, they cannot form a basis of a claim in the

Amended Complaint because she failed to exhaust administrative remedies prior to commencing this suit.

5. To the extent Plaintiff's ADA claims are based on conduct or omissions by the City that occurred more than 300 days prior to her filing the charge of discrimination with IDHR dated July 10, 2010, including but not limited to her alleged 2013 injury, they are untimely.

6. Plaintiff's alleged damages are not recoverable to the extent they are hypothetical or speculative, or due to Plaintiff's failure to mitigate damages.

7. Plaintiff's claim for liquidated damages are not recoverable under either the ADA or the RHA.

8. Plaintiff's alleged damages are not recoverable to the extent they are attributable to unrelated, pre-existing, intervening, or subsequent causes.

## **JURY DEMAND**

The City demands trial by jury on all counts so triable.


Dated: July 19, 2021      Respectfully submitted,

CELIA MEZA
Corporation Counsel of the City of Chicago

By: *s/ Kristen Woytowicz*
KRISTEN WOYTOWICZ
Assistant Corporation Counsel


City of Chicago
Department of Law
Employment Litigation Division
2 North LaSalle Street, Suite 640
Chicago, Illinois 60602
(312) 744-0428
kristen.woytowicz3@cityofchicago.org

EXHIBIT 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| REYNA ARROYO, | No.: 21 cv 1148 |
| Plaintiff, | |
| | Hon. Steven C. Seeger |
| v. | |
| | Magistrate Judge Jeannice W. Appenteng |
| CITY OF CHICAGO, | |
| Defendant. | |

## <u>DECLARATION OF JOY BROWN</u>

I, Joy Brown, have personal knowledge of the facts set forth in this declaration and under penalty of perjury pursuant to 28 U.S.C. § 1746 certify that the statements made herein are true and correct.

1. I am over the age of 18 and I am competent to testify in this matter. If called upon to testify as a witness, I would competently testify to the matter contained herein.

2. I am currently employed as the Director of Human Resources, City of Chicago Office of Public Safety Administration ("OPSA"), and I have held this position since 2022.

3. As Deputy Director of Human Resources, my duties include human resources management for the City of Chicago Police Department.

4. Through my position as Director of Human Resources, I am familiar with the records kept by OPSA and I personally know how OPSA stores these records in the ordinary course of the City's business.

5. I have reviewed the document attached as "Ex. A," Police Officer Reyna Arroyo's work history, Bates labeled ARROYO.DEF.000193-195. Exhibit A is a true and accurate copy of Officer Arroyo's work history and is kept and maintained in the ordinary course of the City's business.

1

6.     I have reviewed the document attached as "Ex. B," Officer Arroyo's Employee Assignment/Detail History, Bates labeled ARROYO.DEF.002641. Exhibit B is a true and accurate copy of Officer Arroyo's Employee Assignment/Detail History and is kept and maintained in the ordinary course of the City's business.

7.     I have reviewed the document attached as "Ex. C," the Police Officer job description, bates labeled ARROYO.DEF.000124-128. Exhibit C is a true and accurate copy of the job description for the Police Officer position and is kept and maintained in the ordinary course of the City's business.

8.     I have reviewed the document attached as "Ex. D," a copy of Employee Resource E03-01, "Medical Policy," effective date April 1, 1998, Bates labeled ARROYO.DEF.000171-174. Exhibit D is a true and accurate copy of Employee Resource E03-01, "Medical Policy," and is kept and maintained in the ordinary course of the City's business.

9.     I have reviewed the document attached as "Ex. E," a copy of Employee Resource E03-01-01, "Sworn Medical Roll – Injury on Duty Status," Effective August 27, 2009 through January 28, 2020, Bates labeled ARROYO.DEF.000175-179. Exhibit E is a true and accurate copy of Employee Resource E03-01-01, "Sworn Medical Roll – Injury on Duty Status," Effective August 27, 2009 through January 28, 2020, and is kept and maintained in the ordinary course of the City's business.

10.     I have reviewed the document attached as "Ex. F," a copy of Employee Resource E03-01-01, "Sworn Medical Roll – Injury on Duty Status," Effective January 28, 2020, Bates labeled ARROYO.DEF.000180-184. Exhibit F is a true and accurate copy of Employee Resource E03-01-01, "Sworn Medical Roll – Injury on Duty Status," Effective January 28, 2020, and is kept and maintained in the ordinary course of the City's business.

11.     I have reviewed the document attached as "Ex. G," a copy of Employee Resource E03-01-02, "Sworn Medical Roll – Non Injury on Duty Status," Effective June 30, 2000, Bates labeled

ARROYO.DEF.000185-189. Exhibit G is a true and accurate copy of Employee Resource E03-01-02, "Sworn Medical Roll – Non Injury on Duty Status," Effective June 30, 2000, and is kept and maintained in the ordinary course of the City's business.

12.     I have reviewed the document attached as "Ex. H," a copy of the Collective Bargaining Agreement between the City of Chicago and the Fraternal Order of Police Lodge No. 7, Bates labeled ARROYO.DEF.000129-152. Exhibit H is a true and accurate copy of the Collective Bargaining Agreement between the City of Chicago and the Fraternal Order of Police Lodge No. 7 and is kept and maintained in the ordinary course of the City's business.

13.     I have reviewed the document attached as "Ex. I," a copy of Employee Resource E03-01-03, "Sworn Limited Duty Program," Effective December 5, 2013, Bates labeled ARROYO.DEF.000190-192. Exhibit I is a true and accurate copy of Employee Resource E03-01-03, "Sworn Limited Duty Program," Effective December 5, 2013, and is kept and maintained in the ordinary course of the City's business.

14.     I have reviewed the document attached as "Ex. J," a copy of Officer Reyna Arroyo's "Essential Functions for Limited Duty Approval" form dated February 26, 2018, Bates labeled ARROYO.DEF.002042-43. Exhibit J is a true and accurate copy of "Essential Functions for Limited Duty Approval" form dated February 26, 2018 and is kept and maintained in the ordinary course of the City's business.

15.     I have reviewed the document attached as "Ex. K," a copy of the "Certification of Eligibility for a Limited Duty Assignment" form, Bates labeled ARROYO.DEF.002086. Exhibit K is a true and accurate copy of the "Certification for Eligibility for a Limited Duty Assignment" form and is kept and maintained in the ordinary course of the City's business.

16.     I have reviewed the document attached as "Ex. L," a copy of Officer Arroyo's CLEAR Progress notes" from September 25, 2017, Bates labeled ARROYO.DEF.000412. Exhibit L is a true

3

and accurate copy of the September 25, 2017, CLEAR Progress notes for Officer Arroyo and is kept and maintained in the ordinary course of the City's business.

17.     I have reviewed the document attached as "Ex. M," a copy of Officer Reyna Arroyo's "Essential Functions for Limited Duty Approval" form dated September 8, 2017, Bates labeled ARROYO.DEF.002080-82. Exhibit M is a true and accurate copy of "Essential Functions for Limited Duty Approval" form dated September 8, 2017, and is kept and maintained in the ordinary course of the City's business.

18.     I have reviewed the document attached as "Ex. N," a copy of Officer Reyna Arroyo's "Essential Functions for Limited Duty Approval" form dated February 26, 2018, Bates labeled ARROYO.DEF.002042-43. Exhibit N is a true and accurate copy of "Essential Functions for Limited Duty Approval" form dated February 26, 2018, and is kept and maintained in the ordinary course of the City's business.

19.     I have reviewed the document attached as "Ex. O," a copy of Officer Reyna Arroyo's "Essential Functions for Limited Duty Approval" form dated May 18, 2018, Bates labeled ARROYO.DEF.002037-39. Exhibit O is a true and accurate copy of "Essential Functions for Limited Duty Approval" form dated May 18, 2018, and is kept and maintained in the ordinary course of the City's business.

20.     I have reviewed the document attached as "Ex. P," a copy of Officer Reyna Arroyo's "Essential Functions for Limited Duty Approval" form dated August 31, 2018, Bates labeled ARROYO.DEF.002020-22. Exhibit P is a true and accurate copy of "Essential Functions for Limited Duty Approval" form dated August 31, 2018, and is kept and maintained in the ordinary course of the City's business.

21.     I have reviewed the document attached as "Ex. Q," a copy of Officer Reyna Arroyo's "Essential Functions for Limited Duty Approval" form dated October 1, 2018, Bates labeled

ARROYO.DEF.002014-16. Exhibit Q is a true and accurate copy of "Essential Functions for Limited Duty Approval" form dated August 31, 2018, and is kept and maintained in the ordinary course of the City's business.

22.     I have reviewed the document attached as "Ex. R," a copy of Officer Reyna Arroyo's "Essential Functions for Limited Duty Approval" form dated March 1, 2019, Bates labeled ARROYO.DEF.001956-58. Exhibit R is a true and accurate copy of "Essential Functions for Limited Duty Approval" form dated March 1, 2019, and is kept and maintained in the ordinary course of the City's business.

23.     I have reviewed the document attached as "Ex. S," a copy of Doctor Diamond Dettore's note concerning Officer Reyna Arroyo dated June 1, 2020, Bates labeled ARROYO.DEF.001814. Exhibit S is a true and accurate copy of Doctor Diamond Dettore's note concerning Officer Reyna Arroyo and is kept and maintained in the ordinary course of the City's business.

24.     I have reviewed the document attached as "Ex. T," a copy of the "Limited Duty Notification Letter – A" Addressed to Officer Reyna Arroyo and dated January 8, 2019, Bates labeled ARROYO.DEF.002013. Exhibit T is a true and accurate copy of the "Limited Duty Notification Letter – A" dated January 8, 2019, and is kept and maintained in the ordinary course of the City's business.

25.     I have reviewed the document attached as "Ex. U," a copy of the "Limited Duty Notification Letter – B" Addressed to Officer Reyna Arroyo and dated January 24, 2019, Bates labeled ARROYO.DEF.002012. Exhibit U is a true and accurate copy of the "Limited Duty Notification Letter – B" dated January 24, 2019, and is kept and maintained in the ordinary course of the City's business.

26.     I have reviewed the document attached as "Ex. V," a copy of the email dated January 29, 2019, with the subject line "Expiration of Non-IOD Limited Duty," Bates labeled ARROYO.DEF.003186. Exhibit V is a true and accurate copy of the email dated January 29, 2019, with the subject line "Expiration of Non-IOD Limited Duty" and is kept and maintained in the ordinary course of the City's business.

27.     I have reviewed the document attached as "Ex. W," a copy of the correspondence dated September 3, 2019 to Reyna Arroyo from the Human Resources Division Medical Section, Bates labeled ARROYO.DEF.003534. Exhibit W is a true and accurate copy of the September 3, 2019, correspondence to Reyan Arroyo and is kept and maintained in the ordinary course of the City's business.

28.     I have reviewed the document attached as "Ex. X," a copy of the email dated March 20, 2020, with the subject line "Re: P.O. Arroyo – Disability Application," Bates labeled ARROYO.DEF.003193-96. Exhibit X is a true and accurate copy of the email dated March 20, 2020, with the subject line "Re: P.O. Arroyo – Disability Application," and is kept and maintained in the ordinary course of the City's business.

29.     I have reviewed the document attached as "Ex. Y," a copy of the email dated March 23, 2020, with the subject line "Re: Cancellation of LOA documents," Bates labeled ARROYO.DEF.003386-88. Exhibit Y is a true and accurate copy of the email dated March 23, 2020, with the subject line "Re: Cancellation of LOA documents," and is kept and maintained in the ordinary course of the City's business.

30.     I have reviewed the document attached as "Ex. Z," a copy of Employee Resource E01-04, "City of Chicago Reasonable Accommodations Policy," Effective September 23, 2019, Bates labeled ARROYO.DEF.000168-170. Exhibit Z is a true and accurate copy of Employee Resource

E01-04, "City of Chicago Reasonable Accommodations Policy," Effective September 23, 2019, and is kept and maintained in the ordinary course of the City's business.

31.     I have reviewed the document attached as "Ex. AA," a copy of Employee Resource E01-06, "Leaves of Absence and Resignations," Bates no. ARROYO.DEF.004365-82. Exhibit AA is a true and accurate copy of Employee Resource E01-06, "Leaves of Absence and Resignations," and is kept and maintained in the ordinary course of the City's business.

32.     Plaintiff Reyna Arroyo remains on Leave of Absence status.

Executed on: _6/13/2024_          By: _____
              Date                                    Joy Brown

# EXHIBIT A



City of Chicago
Department of Human Resources
Records Management
05/06/2021

**EMPLOYEE
WORK HISTORY**

ARROYO, REYNA

| | |
|---|---|
| **TITLE** | 9161-POLICE OFFICER |
| **A/I** | INACTIVE |
| **DEPT** | 057- DEPARTMENT OF POLICE |
| **PAYROLL** | 1180 |
| **STATUS** | CAREER SERVICE |
| **BU** | 91-FRATERNAL ORDER OF POLICE LODGE 7 |

## ASSIGNMENT HISTORY

| TITLE | DEPT | BU | ST | A/I | ACTION | FROM | TO |
|---|---|---|---|---|---|---|---|
| 9161-POLICE OFFICER | 057 | 91 | 1 | ACTIVE | | 09/16/2002 | 12/31/2005 |
| 9161-POLICE OFFICER | 057 | 91 | 1 | ACTIVE | YEAR END POSITION UPDATE | 01/01/2006 | 05/31/2006 |
| 9161-POLICE OFFICER | 057 | 91 | 1 | ACTIVE | ACTIVITY CHANGE | 06/01/2006 | 12/31/2006 |
| 9161-POLICE OFFICER | 057 | 91 | 1 | ACTIVE | YEAR END POSITION UPDATE | 01/01/2007 | 12/31/2008 |
| 9161-POLICE OFFICER | 057 | 91 | 1 | ACTIVE | YEAR END POSITION UPDATE | 01/01/2009 | 12/31/2009 |
| 9161-POLICE OFFICER | 057 | 91 | 1 | ACTIVE | YEAR END POSITION UPDATE | 01/01/2010 | 12/31/2010 |
| 9161-POLICE OFFICER | 057 | 91 | 1 | ACTIVE | YEAR END POSITION UPDATE | 01/01/2011 | 09/12/2018 |
| 9161-POLICE OFFICER | 057 | 91 | 1 | ACTIVE | SUPERVISOR CHANGE | 09/13/2018 | 11/17/2019 |
| 9161-POLICE OFFICER | 057 | 91 | 1 | LOA | LOA - PENDING OCCUPATIONAL (POLI | 11/18/2019 | 02/17/2020 |
| 9161-POLICE OFFICER | 057 | 91 | 1 | LOA | EXTENSION OF LOA | 02/18/2020 | 12/31/2020 |
| 9161-POLICE OFFICER | 057 | 91 | 1 | LOA | YEAR END POSITION UPDATE | 01/01/2021 | **CURRENT** |

## SALARY HISTORY

**ARROYO.DEF.000193**



City of Chicago
Department of Human Resources
Records Management
05/06/2021

**EMPLOYEE**
**WORK HISTORY**

| SALARY | EFFECTIVE | ACTION |
|--------|-----------|--------|
| 4785.50 | 9/16/02 | |
| 4881.00 | 1/1/03 | COST OF LIVING ONLY |
| 5283.00 | 1/1/05 | COST OF LIVING ONLY |
| 5388.50 | 7/1/05 | COST OF LIVING ONLY |
| 5577.00 | 1/1/06 | COST OF LIVING ONLY |
| 5688.50 | 1/1/07 | COST OF LIVING ONLY |
| 5888.00 | 3/16/08 | SCHEDULED CHANGE |
| 6310.50 | 1/1/10 | COST OF LIVING ONLY |
| 6436.50 | 1/1/11 | COST OF LIVING ONLY |
| 6501.00 | 1/1/12 | COST OF LIVING ONLY |
| 6727.00 | 3/16/13 | SCHEDULED CHANGE |
| 7138.50 | 11/16/14 | COST OF LIVING ONLY |
| 7210.00 | 1/1/15 | COST OF LIVING ONLY |
| 7282.00 | 1/1/16 | COST OF LIVING ONLY |
| 7427.50 | 7/1/16 | COST OF LIVING ONLY |
| 7502.00 | 1/1/17 | COST OF LIVING ONLY |
| 7779.50 | 3/16/18 | SCHEDULED CHANGE |

**ABSENCE HISTORY**

| START DATE | END DATE | REASON |
|------------|----------|--------|
| 11/18/19 | 2/17/20 | LOA - PENDING OCCUPATIONAL (POLICE) |
| 2/18/20 | 5/17/20 | EXTENSION OF LOA |

**TERMINATION HISTORY**

| Termination Reason | Termination Date - Actual |
|--------------------|---------------------------|

**HISTORY WAREHOUSE**

ARROYO.DEF.000194



City of Chicago
Department of Human Resources
Records Management
05/06/2021

**EMPLOYEE**
**WORK HISTORY**

| DATE | ACTION | TC | | DEPARTMENT | PAYROLL | ST | PAYRATE |
|------|--------|----|----|-----------|---------|----|---------| 
| 03/16/1998 | 01-NEW APPT-CS | 9161 | POLICE OFFICER | POLICE | 1180 | 0 | 2793.50 |
| 03/16/1999 | 34-SAL CHNG | 9161 | POLICE OFFICER | POLICE | 1180 | 0 | 3404.50 |
| 04/29/1999 | 23-ST CHNG | 9161 | POLICE OFFICER | POLICE | 1180 | 1 | 3404.50 |
| 09/16/1999 | 34-SAL CHNG | 9161 | POLICE OFFICER | POLICE | 1180 | 1 | 3598.50 |
| 09/15/2000 | 64-LLI | 9161 | POLICE OFFICER | POLICE | 1180 | 1 | 3783.50 |
| 09/16/2000 | 37-BUDG CHNG | 9161 | POLICE OFFICER | POLICE | 1180 | 1 | 3783.50 |
| 09/16/2001 | 34-SAL CHNG | 9161 | POLICE OFFICER | POLICE | 1180 | 1 | 3971.00 |
| 09/16/2002 | 34-SAL CHNG | 9161 | POLICE OFFICER | POLICE | 1180 | 1 | 4785.50 |

ARROYO.DEF.000195

# EXHIBIT B

Report Date: 08-SEP-2021
Report Time: 13:03:46
Produced By: Information Services Division
Run By: PC0W512

# Chicago Police Department
## Employee Assignment / Detail History
### ARROYO, REYNA   - Emp# 45919

| CHANGE DATE | STAR | TITLE DESCR | TITLE CODE | UNIT ASSIGNED | | ASSIGNED EFFECTIVE DATE | ASSIGNED END DATE | UNIT DETAILED | | DETAIL EFFECTIVE DATE | DETAIL END DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01-JAN-1900 | | POLICE OFFICER | 9161 | | | | | 384 | JUVENILE INTERVENTION SUPPORT CENTER (JISC) | 01-JAN-1900 | 27-APR-2006 |
| 16-MAR-1998 | | POLICE OFFICER | 9161 | 044 | RECRUIT TRAINING SECTION (RTS) | 16-MAR-1998 | 03-MAR-1999 | 384 | JUVENILE INTERVENTION SUPPORT CENTER (JISC) | | |
| 04-MAR-1999 | 14081 | POLICE OFFICER | 9161 | 010 | 10TH DISTRICT - OGDEN | 04-MAR-1999 | 13-SEP-2000 | 384 | JUVENILE INTERVENTION SUPPORT CENTER (JISC) | | |
| 14-SEP-2000 | 14081 | POLICE OFFICER | 9161 | 701 | PUBLIC TRANSPORTATION (PT) | 14-SEP-2000 | 22-MAY-2002 | 384 | JUVENILE INTERVENTION SUPPORT CENTER (JISC) | | |
| 23-MAY-2002 | 14081 | POLICE OFFICER | 9161 | 010 | 10TH DISTRICT - OGDEN | 23-MAY-2002 | | 384 | JUVENILE INTERVENTION SUPPORT CENTER (JISC) | | |
| 15-JAN-2008 | 18014 | POLICE OFFICER | 9161 | 010 | 10TH DISTRICT - OGDEN | 23-MAY-2002 | | 001 | 1ST DISTRICT - CENTRAL | 15-JAN-2008 | 09-FEB-2008 |
| 01-JAN-2015 | 18014 | POLICE OFFICER | 9161 | 010 | 10TH DISTRICT - OGDEN | 23-MAY-2002 | | 123 | HUMAN RESOURCES DIVISION (HRD) | 01-JAN-2015 | 12-JUL-2016 |
| 26-SEP-2017 | 18014 | POLICE OFFICER | 9161 | 010 | 10TH DISTRICT - OGDEN | 23-MAY-2002 | | 122 | FINANCE DIVISION (FD) | 26-SEP-2017 | |
| 08-SEP-2021 | 18014 | POLICE OFFICER | 9161 | 010 | 10TH DISTRICT - OGDEN | 23-MAY-2002 | | 122 | FINANCE DIVISION (FD) | 26-SEP-2017 | |

NOTE: THIS REPORT IS FOR OFFICIAL LAW ENFORCEMENT/AUTHORIZED USE ONLY. THE INFORMATION IS CURRENT AS OF THE DATE AND TIME OF THE REPORT. THIS REPORT IS NOT FOR PUBLIC DISSEMINATION.

ARROYO.DEF.002641

EXHIBIT C



**Code: 9161**
Family: Public Safety
Service: Public Safety
Group: Police Service
Series: Police General Duty

# CLASS TITLE: POLICE OFFICER

## CHARACTERISTICS OF THE CLASS

Under supervision, works for the benefit of citizens by protecting life and property from harm and maintains order. The police officer accomplishes the mission through his or her presence and the use of enforcement of Federal, State, and Municipal laws as necessary.

## ESSENTIAL DUTIES

- Monitors environment and crime conditions of an assigned geographic area through the use of random patrol methods.
- Responds to incidents either assigned or observed as required.
- Gathers relevant information at an incident to conduct a preliminary investigation.
- Ensures any personal property taken into custody is properly documented and secured.
- Seeks to apprehend suspected law violators through the use of physical arrest procedures or citation procedures.
- Actively pursues suspected law violators using search and containment methods.
- Processes through the use of arrest and booking procedures both male and female suspected law violators, adults, and juveniles, who have been arrested.
- Enforces state and municipal traffic laws through the use of physical arrest procedures and citation procedures.
- Gathers information at traffic crash scenes to conduct preliminary investigations.
- Uses hand signals to direct traffic as necessary around accidents, objects in road, or at intersections when traffic signals are not working.
- Protects citizens from life threatening situations by the use of movement or protective cover.
- Prepares written communications in English and completes standardized forms.
- Complies with Department rules, regulations, and policies and all Federal, State, and Municipal laws that govern the activities of Police Officers.
- Communicates by either verbal or written methods with persons either within or outside the Department to complete the task assigned.
- Appears in court and presents testimony.

*NOTE*: *The list of essential duties is not intended to be inclusive; there may be other duties that are essential to particular positions within the class.*

## MINIMUM QUALIFICATIONS

### Education, Training, and Experience

- AGE: Applicants must have reached their 21st birthday at time of hire. Pursuant to the Municipal Code of Chicago, no person may be appointed as a probationary Police Officer after the person's 40th birthday.

**ARROYO.DEF.000124**

- EDUCATION/MILITARY SERVICE: At time of hire, applicants must have at least 60 semester hours (90 quarter hours) from an accredited college or university (Documentation Required). Educational requirement may be waived if:
  - Applicant has served three (3) years continuous service (36 months) on active duty in the Armed Forces of the United States (Documentation Required) OR
  - Applicant has completed at least 30 semester hours (45 quarter hours) from an accredited college or university AND has served one (1) continuous year on active duty in the Armed Forces of the United States (Documentation Required)

**Licensure, Certification, or Other Qualifications**

- Must have a valid State of Illinois driver's license at the time of hire
- Must be a resident in the City of Chicago at the time of hire
- Must have a Firearm Owner's Identification (FOID) card issued by the State of Illinois at the time of hire
- Must pass background investigation
- Must successfully complete academy training program
- Must successfully pass all examinations mandated by State Law to receive certification as a Peace Officer
- Must maintain the ability to safely handle and use a Department approved firearm

**WORKING CONDITIONS**

- Police facility environment
- Assignment anywhere within the boundaries of the City of Chicago
- Assignment Duty hours may be any time. Department operates twenty-four (24) hours a day, every day of the year, including weekends and recognized holidays
- Interact with public in a variety of situations
- Exposure to outdoor weather conditions including extreme weather situations
- Exposure to hazardous or life threatening situations

**EQUIPMENT (including but not limited to)**

- Computers and peripheral equipment (e.g., personal computer, computer terminals, mobile data computers)
- Two-way radio
- Handcuffs
- Personal defense weapons (Baton, Tasers, Handguns, Rifles, Shotgun, etc.)
- Specialized safety equipment (e.g., bulletproof vests)
- Transportation (cars, bicycles, motorcycles, Segway personal transportation, etc.)

**PHYSICAL REQUIREMENTS**

- Using muscular force to lift, carry, drag, push or otherwise move objects using strength in one's arms, hands, back, shoulders and/or legs
- Performing physical activities with skill, speed and balance efficiently and with little wasted motion

ARROYO.DEF.000125

- Using the necessary force to restrain a person when making an arrest
- Quickly bending, stretching, twisting, or reaching out with one's body, arms, and/or legs
- Standing for extended or continuous periods of time
- Sitting for extended periods of time
- Walking for extended periods of time
- Safely and lawfully operate automotive vehicles and associated equipment
- Hearing and recognizing the normal range of sounds in terms of loudness, pitch, tone, patterns or rhythms, or duration
- Remaining alert or vigilant and reacting to infrequent but important events or specific details within a stream of information (e.g., alarms, radio)
- Seeing detail at various distances (e.g., normal reading distance, beyond arm length) and reading ordinary/small print
- Must pass all phases of the selection process including a medical evaluation, drug screen, and physical performance test

## SKILLS, ABILITIES, AND OTHER WORK REQUIREMENTS

### Knowledge

Good knowledge of:

- public safety and security procedures and strategies to effectively enforce laws and protect lives and property
- Federal, State and City criminal and traffic laws and ordinances and related departmental policies and General Orders
- practices and procedures used in community policing
- geographical locations in the City of Chicago
- traffic operations and city's street address grid
- ground traffic control management

Knowledge of applicable City and department policies, procedures, and regulations

### Skills

- *CRITICAL THINKING – Use logic and reasoning to identify the strengths and weaknesses of alternative solutions, conclusions or approaches to problems
- *COMPLEX PROBLEM SOLVING – Identify complex problems and review related information to develop and evaluate options and implement solutions
- *JUDGEMENT AND DECISION MAKING – Consider the relative costs and benefits of potential actions to choose the most appropriate one
- *ACTIVE LEARNING - Understand the implications of new information for both current and future problem-solving and decision-making
- *RESOLVING CONFLICTS AND INFLUENCING OTHERS - Resolve disputes between groups and individuals; negotiate with others to influence behaviors, opinions; deal effectively with various members of the public; handle upset and injured victims, get people to cooperate
- *ORGANIZATIONAL AWARENESS AND COMMITMENT - Remain firm in one's allegiance to the Department's core values and faithful in pursuit of the Department's mission despite obstacles or opposition; follow Department policies and regulations and show support for their

ARROYO.DEF.000126

intent and value; demonstrate positive regard for the Department and personal role; show respect for members in positions of authority; work in a chain-of-command environment

- *SERVICE ORIENTATION – Actively look for ways to help people
- *SOCIAL PERCEPTIVENESS – Be aware of others' reactions and understand why they react as they do

**Abilities**

- *COMPREHEND ORAL INFORMATION – Listen to and understand information and ideas presented through spoken words and sentences
- *PUBLIC SPEAKING - Make formal presentations before large or small audiences
- *SPEAKING – Communicate information and ideas in speaking so others will understand
- *ACTIVE LISTENING – Give full attention to what other people are saying, taking time to understand the points being made, asking questions as appropriate, and not interrupting at inappropriate times
- *COMPREHEND WRITTEN INFORMATION – Read and understand information and ideas presented in writing
- *WRITE – Communicate information and ideas in writing so others will understand.
- *MEMORIZATION – Remember information such as words, numbers, picture, and procedures
- *RECOGNIZE PROBLEMS – Tell when something is wrong or is likely to go wrong
- *REACH CONCLUSIONS – Combine pieces of information to form general rules or conclusions (includes finding a relationship among seemingly unrelated events)
- *MAKE DECISIONS AND SOLVE PROBLEMS – Analyze information and evaluate results to choose the best solution and solve problems

**Other Work Requirements**

- *ANALYTICAL THINKING – Analyze information and use logic to address work or job issues and problems
- *ATTENTION TO DETAIL – Pay careful attention to detail and thoroughness in completing work tasks
- *COOPERATION – Be pleasant with others on the job and display a good-natured, cooperative attitude
- *CONCERN FOR OTHERS – Demonstrate sensitivity to others' needs and feelings and be understanding and helpful on the job
- *SELF CONTROL – Maintain composure, keep emotions in check even in very difficult situations, control anger and avoid aggressive behavior
- *STRESS TOLERANCE – Accept criticism and deal calmly and effectively with high stress situations
- *PERSISTENCE – Persist in the face of obstacles on the job
- *DEPENDABILITY – Demonstrate reliability, responsibility, and dependability and fulfill obligations
- *INITATIVE – Demonstrate willingness to take on job challenges
- *INTEGRITY – Be honest and avoid unethical behavior
- *ADAPTABILITY/FLEXIBILITY – Be open to change (positive or negative) and to considerable variety in the workplace

ARROYO.DEF.000127

**CODE: 9161**
**CLASS TITLE: POLICE OFFICER**

- *LEADERSHIP - Demonstrate willingness to lead, take charge, and offer opinions and direction

All employees of the City of Chicago must demonstrate commitment to and compliance with applicable state and federal laws, and City ordinances and rules; the City's Ethics standards; and other City policies and procedures.

The City of Chicago will consider equivalent foreign degrees, accreditations, and credentials in evaluating qualifications.

* May be required at entry.

City of Chicago
Department of Human Resources
(CEB Valtera Corporation)
July, 2013

ARROYO.DEF.000128

# EXHIBIT D



| | Chicago Police Department | **Employee Resource   E03-01** |
|---|---|---|
| | **MEDICAL POLICY** | |

| **ISSUE DATE:** | 18 March 1998 | **EFFECTIVE DATE:** | 01 April 1998 |
|---|---|---|---|
| **RESCINDS:** | G98-02 | | |
| **INDEX CATEGORY:** | Medical, Health, and Wellness | | |

## I.   PURPOSE

This directive establishes Department procedures for:

A.   Sworn Medical Roll - Injury on Duty Status.

B.   Sworn Medical Roll - Non Injury on Duty Status.

C.   Sworn Limited/Convalescent Duty Program.

D.   Civilian Injury on Duty Status

E.   Civilian Sick Leave

F.   Crossing Guard - Injury on Duty Status

## II.   POLICY

It is the policy and duty of the Chicago Police Department to ensure that its members possess the physical stamina and psychological stability to perform their duties. Sick leave is a benefit to be utilized only in case of a legitimate illness or injury of the member. The medical benefits afforded members are intended to allow a member who has experienced serious or catastrophic illness or injury or an occasional minor malady, time to recover without the loss of pay or benefits.

## III.   GENERAL INFORMATION

A.   The Department has a duty and responsibility to ensure all Department members possess the physical stamina and psychological stability to perform required duties. The Superintendent of Police or his designee may require **any** Department member to submit to physical and/or psychiatric examinations in order to determine fitness for duty.

B.   Sworn members who have completed their probationary period will be allowed medical absences as set forth in this directive.

C.   Medical certification **will** be withheld or withdrawn whenever a sworn Department member fails to comply with the provisions of this directive, relating to:

    1.   procedures for placement on, and removal from, the medical roll.

    2.   procedures for reporting to the Medical Services Section or any medical service provider.

    3.   participation in a treatment plan for recuperation as recommended by a treating physician.

    4.   timely submission of medical documents.

D.   A member can have his medical decertification reviewed by submitting a To/From/Subject report along with substantiating documentation directly to the Medical Administrator showing compliance with medical roll policy.

**NOTE:**     The Medical Services Section will review the actions and/or documentation taken by the member and respond in writing within seven calendar days.

ARROYO.DEF.000171

E.   Probationary Police Officers (Recruits)

1.   Twelve sick leave days will be allowed probationary police officers for use during the probation period.

2.   Probationary police officers will be credited one paid sick leave day on the first day of each month.

**NOTE:**      Leaving the City's employment does not entitle a probationary police officer to payment for unused sick leave days.

3.   In the event a probationary police officer is injured on duty, procedures delineated in Addendum 1 of this directive will be followed.

## IV.   RESPONSIBILITIES

A.   City Council Committee on Finance

1.   The Committee on Finance (COF) is authorized to approve or disapprove payments of injury on duty medical bills. Bills which are recommended for approval of payment will be sent to the City Council for final approval and payment.

2.   The Committee on Finance notifies the Corporation Counsel's Office of cases involving sworn members who are classified as injured on duty and a civil action to receive a settlement from a third party has been initiated.

B.   Finance Division

The Finance Division notifies the Corporation Counsel's Office in all cases that involve a sworn member who was injured off duty by a third party and reimbursement for wages may be possible.

C.   Human Resources Division

1.   The command staff member of the Human Resources Division will be responsible ultimately for exercising oversight and supervision of the Medical Services Section.

2.   The Medical Services Section (MSS):

a.   is the Department repository for medical records of all sworn members.

b.   maintains required governmental medical records.

c.   administers the sworn medical roll.

d.   based upon written recommendations of treating medical professionals, determines a sworn member's fitness for duty.

e.   coordinates and supports the Communicable Disease Program.

f.   supports and/or administers other health related programs as authorized by the Superintendent of Police.

g.   reviews and renders a medical opinion to the COF as to whether injuries documented in the Injury on Duty Report are consistent with the reported circumstances.

h.   approves all medical care for sworn members related to a certified injury on duty.

i.   examines the service charges made for medical attention rendered to a sworn member injured on duty and certifies that those services were authorized and medically appropriate and necessary.

j.   ensures that each Injury on Duty Report and related documents are forwarded to the Committee on Finance.

k.   evaluates claims of a recurrence of an injury on duty to determine certification.

l.   returns to the injured member, through the Department's chain of command, all claims disapproved by the Committee on Finance.

ARROYO.DEF.000172

m.   administers the Sworn Limited/Convalescent Duty Program.

n.   recommends to the command staff member of the Human Resources Division that a sworn member be authorized a leave of absence to apply for disability pension benefits.

o.   schedules an appointment for a civilian Department member to determine fitness for duty.

Authenticated by:

Terry G. Hillard
Acting Superintendent of Police

94-109 MER

**GLOSSARY TERMS:**

1.   **Sworn Injury on Duty**

Any incident, wherein a Department sworn member receives an injury or becomes disabled while in the discharge of police duties and by reason of, or as a consequence of, the performance of such duties, shall be considered an Injury on Duty.

2.   **Medical Certification**

A finding by the Medical Section that use of the medical roll is appropriate as a result of an illness/injury and the member is in compliance with applicable rules and directions.

3.   **Stationary Recuperation**

A member recuperating from an injury or illness that may be remedied by short term rest and/or medication will remain in his or her residence. The member may leave his or her residence for a reasonable period of time to acquire medical services or products, obtain food, vote, attend religious services or attend to an emergency situation. When leaving his or her residence, the **member is required to notify** an on-duty supervisor in his or her unit of assignment or detail and provide them with the information required to complete the Sickness Report/Absence from Home Log (CPD-62.409). In the event the unit of assignment or detail is not staffed at the time of the required notification, the notification will be made to the Crime Prevention and Information Center (CPIC).

4.   **Hospital Recuperation**

A member who is recuperating in a hospital as the result of their illness/injuries.

5.   **Ambulatory Recuperation**

Allows a member who is recuperating from an illness or injury to leave their residence without notifying their unit of assignment or detail. A member assigned to this category will be given appointment dates for review of their illness or injury.

**ARROYO.DEF.000173**

6. **Reasonable Evidence (Medical Time)**

Fact based upon the circumstances in each individual case and may include one or more of the following:

A. Doctor's certificate

B. Medical release

C. Employer directed physical examination

D. Telephoning the employee at home to verify his presence

E. Employee personal statement

F. Questioning of the employee

**ADDENDA:**

1. E03-01-01  -  Sworn Medical Roll -- Injury on Duty Status
2. E03-01-02  -  Sworn Medical Roll - Non Injury on Duty Status
3. E03-01-03  -  Sworn Limited Duty Program
4. E03-01-04  -  Civilian Injured on Duty Status
5. E03-01-05  -  Civilian Sick Leave
6. E03-01-06  -  Crossing Guard - Injury on Duty Status
7. E03-01-07  -  Skin Condition Aggravated by Shaving
8. E03-01-08  -  CLEAR Automated Medical System

ARROYO.DEF.000174

EXHIBIT E



| Chicago Police Department | | **Employee Resource E03-01-01** | |
| --- | --- | --- | --- |
| **SWORN MEDICAL ROLL - INJURY ON DUTY STATUS** | | | |
| **ISSUE DATE:** | 27 August 2009 | **EFFECTIVE DATE:** | 27 August 2009 |
| **RESCINDS:** | G98-02-01A | | |
| **INDEX CATEGORY:** | Medical, Health, and Wellness | | |
| Rescinded on 28 January 2020 by E03-01-01-; 28 January 2020 | | | |

### I. PURPOSE

This directive outlines Department policy and defines procedures for a sworn member to be classified as injured on duty.

### II. DEPARTMENT INJURY ON DUTY POLICY

A sworn member who has been injured on duty will be allowed medical absences as set forth in Chapter 2-84-480 of the Municipal Code of Chicago and the appropriate collective bargaining agreement.

### III. PREPARATION OF AN INJURY ON DUTY REPORT

An Injury on Duty Report will be prepared when the injury occurs in the course of employment:

A. during assigned duty or overtime hours, or

B. arising out of the performance of a necessary police function, during off duty hours, or

C. within a unit facility or other designated reporting location when the member is reporting to work or going off duty.

### IV. REPORTING AN INJURY/ILLNESS ON DUTY

An injured sworn Department member will:

A. notify their supervisor, or if their supervisor is not available, a supervisor from the district in which the injury occurred, as soon as possible, but no later than the end of their tour of duty when sustaining or becoming aware of an injury.

B. notify their supervisor again, if not contacted by their supervisor or another supervisor within twenty-four hours of the injury/illness.

C. identify witnesses for the investigating supervisor whenever possible.

D. be provided with a printed copy of the completed Injury on Duty Report.

### V. TREATMENT FOR AN INJURY ON DUTY

A member injured on duty will obtain:

A. treatment in all situations requiring emergency first aid, at the nearest hospital approved by the Illinois Department of Public Health to provide comprehensive emergency room service.

   **NOTE:** A member who is injured on duty but refuses emergency medical care during their tour of duty must contact the Medical Services Section before obtaining non-emergency medical treatment at a later date.

B. the approval of the Medical Services Section in every instance prior to receiving follow-up medical care.

**ARROYO.DEF.000175**

VI. **PLACEMENT ON THE MEDICAL ROLL - INJURY ON DUTY STATUS**

A.    A member excused before the end of their tour of duty by the watch commander due to an injury on duty will not be placed on the Medical Roll-injury on duty status for that day. The member will however, comply with the provisions of the Stationary Recuperation category, as identified in the Department directive entitled "Medical Policy."

B.    A member who is unable to report for duty on the next scheduled work day due to their injury will notify a supervisor in the unit of assignment or detail at least one hour prior to their scheduled reporting time; in units not staffed until the member's reporting time, within fifteen minutes after the scheduled reporting time. The member will give the reason for the absence and any other information requested by the supervisor.

C.    A member will contact or cause the Medical Services Section to be contacted within twenty-four hours of placement upon the medical roll.

   **NOTE:**       A member will be placed initially in either the Stationary Recuperation or Hospital Recuperation category. Only Medical Services Section personnel may change a member's status to Ambulatory Recuperation.

D.    A member will report to the Medical Services Section or other identified medical service provider as directed during the initial phone consultation.

   **NOTE:**       A member failing to report as scheduled to the Medical Services Section or the identified medical service provider will have their medical certification withheld.

VII. **RELEASE FROM THE MEDICAL ROLL-INJURY ON DUTY STATUS AND RETURN TO DUTY**

A.    A member will report to the Medical Services Section to obtain a Return to Duty Notice releasing them from the Medical Roll. The Medical Service Section will be responsible for submitting the Return to Duty Notice via the CLEAR Automated Medical Application.

   **NOTE:**       No Department member can be released from the Medical Roll - injury on duty status without authorization from the Medical Services Section.

B.    When a member has been granted return to duty status per the Medical Service Section, the member will notify the watch commander of their unit of assignment/detail before leaving the Medical Services Section. The Return to Duty Notice will be verified through the CLEAR Automated Medical Application by the member's unit of assignment or detail prior to the member's actual return to duty.

VIII. **EXPOSURE TO COMMUNICABLE DISEASE / HAZARDOUS MATERIALS**

A member exposed to a communicable disease / hazardous material will:

A.    immediately report the exposure to their supervisor, or a supervisor in the district of occurrence and follow the procedures outlined in the Department directive entitled "Communicable Disease and Infection Control."

B.    request that the supervisor investigate the exposure and prepare a Report of Exposure to Communicable Disease / Hazardous Material.

   **NOTE:**       All Department members assigned to the scene of a Hazardous Material incident will have a Report of Exposure to Communicable Disease / Hazardous Material prepared.

C.    request that the supervisor complete an Injury on Duty Report, in addition, if an injury occurs along with the exposure incident or if a member obtained medical care for the exposure.

D.    contact or cause the Medical Services Section to be contacted within twenty-four hours of placement upon the medical roll.

**ARROYO.DEF.000176**

E.   promptly notify the Medical Services Section by telephone in the event they contract a disease as a result of the exposure incident.

## IX.   INJURED MEMBER'S RESPONSIBILITIES AND PROCEDURES

An Injured Department member:

A.   will comply with the instructions provided by the Medical Services Section.

B.   will obtain the approval of the Medical Services Section before wearing special apparel or equipment for medical reasons while on duty. The apparel or equipment must be prescribed, in writing, by the member's treating physician.

C.   who is scheduled to appear in court, grand jury proceeding, or other governmental hearing and is unable to do so because of an injury or illness will:

1.   when feasible, notify a supervisor in the district/unit of assignment as soon as the member becomes aware of the inability to appear, or

2.   when not feasible, notify a supervisor in the district/unit of assignment at least one hour before the scheduled appearance, to allow for the notification of another member to appear.

> **NOTE:**   An officer on the medical roll will be granted overtime for an appearance in court or other governmental hearing only when the appearance exceeds eight (8) hours.

D.   wishing to leave the state while on the medical roll will submit a To-From-Subject report to the Medical Administrator. A member will not leave the state without the written approval of the Medical Administrator. A member requesting permission to leave the state for a period greater than fifteen (15) days must also obtain the written approval of the Deputy Superintendent, Bureau of Administrative Services.

E.   will prepare and submit a Notification of Legal Action to Recover Damages (CPD-62.388) to the Medical Services Section upon request or within 72 hours of:

1.   taking legal action to recover damages.

2.   negotiating for a settlement of a damage claim.

3.   being contacted by an insurance company or any other interested party.

F.   will reimburse the City for medical expenses paid upon receiving a cash settlement from a responsible third party for an injury sustained.

## X.   SUPERVISOR'S RESPONSIBILITIES AND PROCEDURES

A.   When notified of a member's injury on duty, a supervisor will:

1.   ensure that the injured member receives emergency first aid, when necessary.

2.   for a detailed member, notify the member's district/unit of assignment by telephone.

3.   prepare an Injury on Duty Report using the automated application even if the member does not receive medical treatment.

B.   A supervisor preparing an Injury on Duty Report will:

1.   complete an Injury on Duty Report using the automated application.

2.   investigate conditions under which the injury occurred including careful inspection of:

a.   the site of the incident, and

ARROYO.DEF.000177

       b.     any mechanical device which contributed to the injury.

> **NOTE:** The assigned supervisor will request photographs of scene or device, if necessary.

3. clearly and carefully explain the result of the investigation.

4. obtain a description of the injury from the treating physician if medical attention was required or fully describe the injury.

5. describe in detail how, when, and where the injury occurred.

6. indicate if the injured member remained on duty after the incident.

7. include all report numbers (i.e., Record Division, Central Booking, Complaint Log, etc.).

8. obtain written statements and signatures of any witnesses to the incident.

9. obtain a copy of the hospital emergency room report, when available.

10. verify that they have investigated the incident and that all facts and circumstances are accurate and true to the best of their knowledge and belief by submitting the Injury on Duty Report using the automated application.

11. scan any supplemental reports (e.g., Arrest Report, case report, witness statement, hospital emergency room report) and any other pertinent documents and send the documents via an email attachment to iod@chicagopolice.org.

12. provide the injured member with a printed copy of the Injury on Duty Report.

13. forward a printed copy of the completed Injury on Duty Report, accompanied by all supporting documentation and reports, to the commanding officer of the injured member's district/unit of assignment or detail.

14. if necessary, respond to follow-up telephone calls from the Committee on Finance Case Manager regarding the specifics of the reported injury on duty.

C. A supervisor receiving a report of a medical absence due to an injury on duty or recurrence of a previously reported injury on duty will complete a Medical Absence Report via the CLEAR Automated Medical Application.

D. The watch commander will ensure that:

1. Medical Absence Reports are approved and submitted via the CLEAR Automated Medical Application.

2. proper notifications are made when the sick or injured member is unable to appear in court or other assignment/detail.

E. A district/unit commanding officer will:

1. ensure that there are no discrepancies between the Injury on Duty Report and the supporting documentation.

ARROYO.DEF.000178

2.    be responsible for forwarding any additional reports required by the Medical Services Section.

Authenticated by:

Jody P. Weis
Superintendent of Police

08-202 SEP

**GLOSSARY TERMS:**

1.  **Stationary Recuperation**

A member recuperating from an injury or illness that may be remedied by short term rest and/or medication will remain in his or her residence. The member may leave his or her residence for a reasonable period of time to acquire medical services or products, obtain food, vote, attend religious services or attend to an emergency situation. When leaving his or her residence, the **member is required to notify** an on-duty supervisor in his or her unit of assignment or detail and provide them with the information required to complete the Sickness Report/Absence from Home Log (CPD-62.409). In the event the unit of assignment or detail is not staffed at the time of the required notification, the notification will be made to the Crime Prevention and Information Center (CPIC).

2.  **Hospital Recuperation**

A member who is recuperating in a hospital as the result of their illness/injuries.

3.  **Ambulatory Recuperation**

Allows a member who is recuperating from an illness or injury to leave their residence without notifying their unit of assignment or detail. A member assigned to this category will be given appointment dates for review of their illness or injury.

4.  **Medical Certification**

A finding by the Medical Section that use of the medical roll is appropriate as a result of an illness/injury and the member is in compliance with applicable rules and directions.

**ARROYO.DEF.000179**

# EXHIBIT F

| Chicago Police Department | **Employee Resource   E03-01-01** |
|---|---|
| **SWORN MEDICAL ROLL -- INJURY ON DUTY STATUS** | |

| **ISSUE DATE:** | 28 January 2020 | **EFFECTIVE DATE:** | 28 January 2020 |
|---|---|---|---|
| **RESCINDS:** | 27 August 2009 Version | | |
| **INDEX CATEGORY:** | Medical, Health, and Wellness | | |

## I.   PURPOSE

This directive:

A.   outlines Department policy and defines procedures for a sworn member to be classified as injured on duty; and

B.   *introduces the Injury on Duty (IOD) Reporting Application—RisxFacs, a City of Chicago automated application used to report IOD's for City employees.*

## II.   DEPARTMENT INJURY ON DUTY POLICY

A.   A sworn member who has been injured on duty will be allowed medical absences as set forth in Chapter 2-84-480 of the Municipal Code of Chicago and the appropriate collective bargaining agreement.

B.   *Probationary police officers who have not completed the first twelve months of the probationary period will follow the procedures set forth in the Department directive titled* "**Civilian Injured on Duty Status**."

## III.   PREPARATION OF AN INJURY ON DUTY REPORT

An Injury on Duty Report will be prepared when the injury occurs in the course of employment:

A.   during assigned duty or overtime hours, or

B.   arising out of the performance of a necessary police function during off duty hours, or

C.   within a unit facility or other designated reporting location when the member is reporting to work or going off duty.

## IV.   REPORTING AN INJURY/ILLNESS ON DUTY

Injured sworn Department members will:

A.   notify their supervisor, or if their supervisor is not available, a supervisor from the district/*unit of assignment* in which the injury occurred, as soon as possible, but no later than the end of their tours of duty when sustaining or becoming aware of an injury.

B.   notify their supervisor again, if not contacted by their supervisor or another supervisor within twenty-four hours of the injury/illness.

C.   identify witnesses for the investigating supervisor whenever possible.

D.   be provided with a printed copy of the completed Injury on Duty Report.

ARROYO.DEF.000180

**V.      TREATMENT FOR AN INJURY ON DUTY**

A member injured on duty will obtain:

A.      treatment in all situations requiring emergency first aid at the nearest hospital approved by the Illinois Department of Public Health to provide comprehensive emergency room service.

> **NOTE:**      Members who are injured on duty but refuse emergency medical care during their tour of duty must contact the Medical Services Section before obtaining non-emergency medical treatment at a later date.

B.      the approval of the Medical Services Section in every instance prior to receiving follow-up medical care.

**VI.      PLACEMENT ON THE MEDICAL ROLL—INJURY ON DUTY STATUS**

A.      Members excused before the end of their tour of duty by the *watch operations lieutenant/unit commanding officer* due to an injury on duty will not be placed on the Medical Roll—Injury on Duty Status for that day. The member will, however, comply with the provisions of the Stationary Recuperation category as identified in the Department directive titled "**Medical Policy**."

B.      Members who are unable to report for duty on the next scheduled workday due to their injury will notify a supervisor in the unit of assignment or detail at least one hour prior to the scheduled reporting time; in units not staffed until the members' reporting time, within fifteen minutes after the scheduled reporting time. The members will give the reason for the absence and any other information requested by the supervisor.

C.      A member will contact or cause the Medical Services Section to be contacted within twenty-four hours of placement upon the medical roll.

> **NOTE:**      A member will be initially placed in the Stationary Recuperation or Hospital Recuperation category. Only Medical Services Section personnel may change a member's status to Ambulatory Recuperation.

D.      Members will report to the Medical Services Section or other identified medical service provider as directed during the initial phone consultation.

> **NOTE:**      Members failing to report as scheduled to the Medical Services Section or the identified medical service provider will have their medical certification withheld.

**VII.      RELEASE FROM THE MEDICAL ROLL—INJURY ON DUTY STATUS AND RETURN TO DUTY**

A.      A member will report to the Medical Services Section to obtain a Return to Duty Notice releasing them from the Medical Roll. The Medical Service Section will be responsible for submitting the Return to Duty Notice via the CLEAR Automated Medical Application.

> **NOTE:**      No Department member can be released from the Medical Roll—Injury on Duty Status without authorization from the Medical Services Section.

B.      Members granted return-to-duty status per the Medical Services Section will notify their *watch operations lieutenant/unit commanding officer* before leaving the Medical Services Section. The Return to Duty Notice will be verified through the CLEAR Automated Medical Application by the member's unit of assignment or detail prior to the member's actual return to duty.

**ARROYO.DEF.000181**

**VIII.   EXPOSURE TO COMMUNICABLE DISEASE / HAZARDOUS MATERIALS**

Members exposed to a communicable disease / hazardous material will:

A.   immediately report the exposure to their supervisor or a supervisor in the district of occurrence and follow the procedures outlined in the Department directive titled "**Exposure Control Plan**."

B.   request that the supervisor investigate the exposure and prepare a Report of Exposure to Communicable Disease / Hazardous Material (CPD-62.418).

> **NOTE:**     All Department members assigned to the scene of a Hazardous Material incident will have a Report of Exposure to Communicable Disease / Hazardous Material (CPD-62.418) prepared.

C.   if an injury occurs along with the exposure incident, or if a member obtained medical care for the exposure, request that the supervisor complete an Injury on Duty Report.

D.   contact or cause the Medical Services Section to be contacted within twenty-four hours of placement upon the medical roll.

E.   promptly notify the Medical Services Section by telephone if they contract a disease as a result of the exposure incident.

**IX.   INJURED MEMBER'S RESPONSIBILITIES AND PROCEDURES**

An Injured Department member:

A.   will comply with the instructions provided by the Medical Services Section.

B.   will obtain the approval of the Medical Services Section, *who will provide the special accommodation,* before wearing special apparel or equipment for medical reasons while on duty. The apparel or equipment must be prescribed in writing by the member's treating physician.

C.   who is scheduled to appear in court, grand jury proceeding, or other governmental hearing and is unable to do so because of an injury or illness will, *when feasible, notify a supervisor in the district/ unit of assignment as soon the member becomes aware of the inability to appear to allow for the notification of another member to appear.*

> **NOTE:**     An officer on the medical roll will be granted overtime for an appearance in court or other governmental hearing only when the appearance exceeds eight hours.

D.   wishing to leave the state while on the medical roll will submit a To-From-Subject Report to the *Commanding Officer, Medical Services Section.* A member will not leave the state without the written approval of the *Commanding Officer, Medical Services Section.* A member requesting permission to leave the state for a period greater than fifteen days must also obtain the written approval of the *Chief, Bureau of Organizational Development.*

E.   *will submit bills to Gallagher Bassett Services, Inc., P.O. Box 2831 Clinton, IA 52733-2831.*

F.   will prepare and submit a Notification of Legal Action to Recover Damages (CPD-62.388) to the Medical Services Section upon request or within 72 hours of:

1.   taking legal action to recover damages.

2.   negotiating for a settlement of a damage claim.

3.   being contacted by an insurance company or any other interested party.

G.   will reimburse the City for medical expenses paid upon receiving a cash settlement from a responsible third party for an injury sustained.

**X.     SUPERVISOR RESPONSIBILITIES AND PROCEDURES**

A.    When notified of a member's injury on duty, a supervisor will:

    1.    *when practicable, immediately respond to the scene.*

    2.    ensure that the injured member receives emergency first aid, when necessary.

    3.    for a detailed member, notify the member's district/unit of assignment by telephone.

    4.    prepare an Injury on Duty Report using the automated application even if the member does not receive medical treatment.

B.    Supervisors preparing an Injury on Duty Report will:

    1.    complete an Injury on Duty Report using *RisxFacs, the IOD reporting application.*

    2.    investigate conditions under which the injury occurred including careful inspection of:

        a.    the site of the incident; and

        b.    any mechanical device which contributed to the injury.

    3.    *describe with specificity results of the investigation by completing each field. The "Notes" feature will be used for additional comments relating to the incident.*

        **NOTE:**      The assigned supervisor will request photographs of the scene or device, if necessary.

    4.    obtain written statements and signatures of any witnesses to the incident.

    5.    *use the "Documents" feature to attach copies of all generated reports relating to the incident (e.g., Arrest Report, case report, witness statement, etc.).*

    6.    verify that they have investigated the incident and that all facts and circumstances are accurate and true to the best of their knowledge and belief by *clicking "submit incident."*

    7.    *provide the member with a copy of the "Confirmation Page" containing the report number.*

    8.    if necessary, respond to follow-up telephone calls from the *adjuster* regarding the specifics of the reported injury on duty.

C.    A supervisor receiving a report of a medical absence due to an injury on duty or recurrence of a previously reported injury on duty will complete a Medical Absence Report via the CLEAR Automated Medical Application.


Authenticated by: KC

                          Charlie Beck
                          Interim Superintendent of Police

18-044 MJC


**GLOSSARY TERMS:**

    1.    **Stationary Recuperation**

ARROYO.DEF.000183

A member recuperating from an injury or illness that may be remedied by short term rest and/or medication will remain in his or her residence. The member may leave his or her residence for a reasonable period of time to acquire medical services or products, obtain food, vote, attend religious services or attend to an emergency situation. When leaving his or her residence, the **member is required to notify** an on-duty supervisor in his or her unit of assignment or detail and provide them with the information required to complete the Sickness Report/Absence from Home Log (CPD-62.409). In the event the unit of assignment or detail is not staffed at the time of the required notification, the notification will be made to the Crime Prevention and Information Center (CPIC).

2.    **Hospital Recuperation**

A member who is recuperating in a hospital as the result of their illness/injuries.

3.    **Ambulatory Recuperation**

Allows a member who is recuperating from an illness or injury to leave their residence without notifying their unit of assignment or detail. A member assigned to this category will be given appointment dates for review of their illness or injury.

4.    **Medical Certification**

A finding by the Medical Section that use of the medical roll is appropriate as a result of an illness/ injury and the member is in compliance with applicable rules and directions.

# EXHIBIT G



| Chicago Police Department | Employee Resource E03-01-02 |
|---|---|
| **SWORN MEDICAL ROLL - NON INJURY ON DUTY STATUS** | |

| ISSUE DATE: | 29 June 2000 | EFFECTIVE DATE: | 30 June 2000 |
|---|---|---|---|
| RESCINDS: | G98-02-02A | | |
| INDEX CATEGORY: | Medical, Health, and Wellness | | |

**I.     PURPOSE**

This directive outlines Department policy and defines procedures for a sworn member to be placed on the medical roll non injury on duty status.

**II.     GENERAL INFORMATION**

A.     Illness While on Duty

A member excused by the watch commander due to illness while on duty will not be placed on the medical roll for that day. The excused member will comply with the provisions outlined in stationary recuperation. Members who are unable to report for duty on their next scheduled work day will follow the procedures outlined in Item III of this addendum.

B.     Illness or Injury While on Suspension or Furlough

Members who become ill or injured while on suspension or furlough and are unable to return to duty after the expiration of the suspension or furlough period will follow the procedures outlined in Item III of this addendum.

C.     Reporting to the Medical Services Section

A member will report to the Medical Services Section or other medical service provider as directed. Department members are responsible for the timely submission of all medical records.

**NOTE:**      Any member who fails to report as scheduled to the Medical Services Section or submit medical documentation will have their medical certification withheld.

D.     Medical Roll

A member absent from duty because of illness or injury sustained off duty will be carried on the medical roll.

E.     Timekeeping

A member will be carried as ill or injured for the full period of the member's absence including regular days off and holidays.

F.     Permission to Leave the State

A member wishing to leave the state while on the medical roll will submit a TO-FROM-SUBJECT report to the Medical Administrator. A member will not leave the state without the written approval of the Medical Administrator. A member requesting permission to leave the state for a period greater than fifteen days must also obtain the written approval of the Deputy Superintendent, Bureau of Administrative Services.

ARROYO.DEF.000185

G. Special Apparel or Equipment

A member will obtain the written approval of the Medical Administrator before wearing special apparel or equipment for medical reasons while on duty. The apparel or equipment must be prescribed in writing by the member's treating physician.

H. Court or Other Governmental Hearings

A member unable to report at a scheduled court, grand jury proceedings or other governmental hearing because of an injury or illness will:

1. notify a supervisor in the district/unit of assignment twenty-four hours in advance when feasible, or

2. when not feasible, notify a supervisor in the district/unit of assignment at least one hour before the scheduled appearance, to allow for the notification of another member to appear.

NOTE: An officer on the medical roll will be granted overtime for an appearance in court or other governmental hearing only when the appearance exceeds 8 hours.

I. Pregnancy and Postpartum Period

Pregnancy will be governed by medical roll procedures. Should a member seek to request an accommodation as the result of pregnancy, the member will notify the Medical Services Section and submit a written verification from her attending physician.

NOTE: Accommodation requests will be processed in accordance with the Department directive entitled "**City of Chicago Reasonable Accommodations Policy**" to ensure compliance with the Illinois Human Rights Act (775 ILCS 5/2-102)."

J. Sutures

Members who receive sutures **must** report to the Medical Services Section **with** a doctor's statement relative to fitness for duty. Department members will not be automatically placed upon the medical roll due to sutures.

K. Legal Action for an off duty injury

A member will prepare and submit a Notification of Legal Action to Recover Damages (CPD-62.388) to the Medical Services Section within 72 hours of:

1. taking legal action to recover damages.

2. negotiating for a settlement of a damage claim.

3. being contacted by an insurance company or any other interested party.

## III. RESPONSIBILITIES OF A SWORN MEMBER

A sworn member will:

A. when requesting placement on the medical roll:

1. notify a supervisor in the district/unit of assignment or detail at least one hour prior to the member's scheduled reporting time; in units not staffed until the member's reporting time, within fifteen minutes after the scheduled reporting time. The member will give the reason for the absence and any other information requested by the supervisor.

2.   be placed initially in either the Stationary Recuperation or Hospital Recuperation category.

> **NOTE:**   Only Medical Services Section personnel may change a member's status to Ambulatory Recuperation after a medical review at the Medical Services Section. The Medical Services Section will not automatically change a member's recuperation status to ambulatory because of a medical review at the Medical Services Section.

3.   comply with all provisions relative to the appropriate assigned recuperation category.

B.   report in person to the Medical Services Section for a fitness for duty evaluation on the second day of medical absence.

> **NOTE:**   A member who is unable to report (as outlined above) in person due to illness/injury, will telephone the Medical Services Section. The member will report as soon as the member is physically able to do so. The member reporting to the Medical Services Section may be required to bring an attending physician's written statement documenting the diagnosis, treatment plan, and projected return to duty or recovery date.

C.   personally provide any information requested and sign the Medical Absence Report (CPD-62.402).

D.   obtain a Medical Services Section/Return to Duty Notice from the Medical Services Section. Department members will notify their unit of assignment or detail before leaving the Medical Services Section. The member making the notification will enter the time, name, and star number of the unit member notified on the member's copy of the Medical Services Section/Return to Duty Notice. Upon reporting for duty, the member's copy of the Medical Services Section/Return to Duty Notice will be submitted to the watch commander/unit commanding officer as proof of release.

## IV.   SUPERVISOR'S RESPONSIBILITIES

A.   A supervisor receiving a report of a medical absence due to an off duty illness or injury will ensure that:

1.   the Supervisor's Report of Medical Absence (CPD-62.401) is completed in triplicate.

2.   the reason for the absence is stated in the box entitled, "Nature of the Sickness or Injury."

3.   the Supervisor's Report of Medical Absence is submitted to the district/unit watch commander for review and signature.

4.   a corrected Supervisor's Report of Medical Absence is completed if an error was discovered in the original. The corrected report will be marked with the item that was in error circled in red.

B.   The district/unit watch commander will ensure that:

1.   the Supervisor's Report of Medical Absence is faxed to the Medical Services Section.

2.   the original Supervisor's Report of Medical Absence is sent to the Medical Services Section via Department mail.

3.   a copy of the Supervisor's Report of Medical Absence is forwarded to the district/unit timekeeper.

4.   a copy of the Supervisor's Report of Medical Absence is retained by the watch commander/ unit commanding officer.

5.   notifications are made when the sick or injured member is unable to appear in court or other assignment/detail.

6.   the member's district of recuperation is contacted as warranted to conduct a home visit in accordance with the provisions of this directive.

ARROYO.DEF.000187

7. a Complaint Register number or Summary Punishment procedures are initiated against a member if the district of residence supervisor reports inability to make contact.

8. the member's copy of the Medical Services Section/Return to Duty Notice is obtained and forwarded to the district/unit timekeeper.

## V. MEDICAL SERVICES SECTION RESPONSIBILITIES

Medical Services Section personnel will:

A. forward the Unit Copy of the Medical Services Section/Return To Duty Notice to the respective member's unit of assignment via Department mail.

B. notify the member's unit of assignment upon granting a member on the medical roll permission to leave the state

## VI. DISTRICT OF RESIDENCE PROCEDURES

A. The watch commander in the district of residence will assign a supervisor to conduct a home visit when requested. The watch commander will ensure Part I of the Medical Absence Follow-up Report (CPD-62.402) is completed.

B. A supervisor assigned to conduct a home visit will:

1. visit the Department member between the hours of 0800 and 2100 hours.

2. if the member is absent from home with the permission of the district/unit of assignment/ detail, make another visit during the supervisor's tour of duty.

3. obtain the signature of the member on the Medical Absence Follow-up Report; if the member is unable or unwilling to sign the form, indicate this in the appropriate location.

4. contact the member's residence by telephone when it appears the member is absent from his residence without permission or the supervisor is unable to make any contact with a resident of the home. If still no response, the time will be entered on the Medical Absence Follow-up Report and forward to the member's requesting watch commander. The supervisor will also phone the watch commander requesting the home visit and inform the watch commander of the unauthorized absence.

5. complete the Medical Absence Follow-up Report and forward it to the watch commander requesting the home visit.

Authenticated by:

Terry G. Hillard
Superintendent of Police

99-029 ZMM(PMD)

## GLOSSARY TERMS:

1. **Stationary Recuperation**

A member recuperating from an injury or illness that may be remedied by short term rest and/or medication will remain in his or her residence. The member may leave his or her residence for a reasonable period of time to acquire medical services or products, obtain food, vote, attend religious services or attend to an emergency situation. When leaving his or her residence, the **member is**

ARROYO.DEF.000188

**required to notify** an on-duty supervisor in his or her unit of assignment or detail and provide them with the information required to complete the Sickness Report/Absence from Home Log (CPD-62.409). In the event the unit of assignment or detail is not staffed at the time of the required notification, the notification will be made to the Crime Prevention and Information Center (CPIC).

2.   **Medical Certification**

A finding by the Medical Section that use of the medical roll is appropriate as a result of an illness/injury and the member is in compliance with applicable rules and directions.

3.   **Hospital Recuperation**

A member who is recuperating in a hospital as the result of their illness/injuries.

4.   **Ambulatory Recuperation**

Allows a member who is recuperating from an illness or injury to leave their residence without notifying their unit of assignment or detail. A member assigned to this category will be given appointment dates for review of their illness or injury.

ARROYO.DEF.000189

# EXHIBIT H

## Section 17.6 — Lodge Negotiating Team

Members designated as being on the Lodge negotiating team who are scheduled to work on a day on which negotiations will occur, shall, for the purpose of attending scheduled negotiations, be excused from their regular duties without loss of pay. If a designated Lodge negotiating team member is in regular day-off status on the day of negotiations, he or she will not be compensated for attending the session.

## Section 17.7 — Lodge Activity

The Employer shall not prohibit discussion, solicitation, or distribution of literature, among Officers covered by this Agreement with respect to matters concerning Lodge affairs, unless such activity interferes with the performance of the duties of any employee or with the orderly and efficient operations of the Employer, or unless it interferes with the transaction of business by the public with the City government.

## ARTICLE 18 — DISABILITY INCOME

## Section 18.1 — I.O.D

Any Officer absent from work on account of injury on duty (I.O.D.) for any period of time not exceeding twelve (12) months shall receive for each such I.O.D. full pay and benefits for the period of absence, provided such injury or illness is certified by the Medical Services Section. Such certification shall not be unreasonably withheld.

Officers who have exhausted said twelve (12) month paid I.O.D. leave shall be given the option to voluntarily go on non-paid medical leave instead of disability pension, provided:

A.   The Officer must exhaust all furlough, personal days, baby furlough days, and accumulated compensatory time;

B.   Such non-paid leave shall continue for no more than three months, plus an extension of no more than three months, and shall not be granted or extended unless the Employer determines that the Officer is likely to return to duty within the period of the leave or extension thereof; and

C.   Such non-paid leave shall be subject to Section 23.1.B herein below, and shall not be deemed duty disability leave.

## Section 18.2 — Non-I.O.D

Any Officer absent from work on account of non-I.O.D. injury or illness for any period of time not exceeding twelve (12) months in any twenty-four (24) consecutive month period, shall receive full pay and benefits for the period of absence, provided such injury or illness is certified by the Medical Services Section. Such certification shall not be unreasonably withheld.

## Section 18.3 — Limited Duty I.O.D

Officers injured in the line of duty, who are certified by the Medical Services Section as being able to perform limited duty assignments, shall be given limited duty assignments until they can perform regular duty assignments, or until they are mandatorily retired, whichever occurs first.

## Section 18.4 — Recognized Openings

Any Officer who is certified by the Medical Services Section as being able to perform a limited duty assignment may be placed by the Employer in a recognized opening, as defined in Section 23.9, notwithstanding anything in Section 23.9 to the contrary.

ARROYO.DEF.000135

### Section 18.5 — Certification

Certification that an **O**fficer has been injured in the line of duty shall not be unreasonably withheld.

### Section 18.6 — Return to Duty

In order to enable **O**fficers applying to return from leave for injury or illness to be processed back to duty as soon as possible, the Employer shall advise such **O**fficers in advance of the records needed and other requirements they must meet in order to permit such return. The Employer must consider medical records and reports from legally-qualified practitioners of the healing arts acting within the scope of his or her license, including, but not limited to, chiropractors, in its determination of whether an **O**fficer is fit to return to duty.

If the Employer requires and specifies certain additional medical tests to be performed and passed as a condition of the **O**fficer's return and said tests were not, and are not normally, performed in the normal course of appropriate medical treatment for the illness or injury involved, then the Employer shall, at its option, either provide the test, or reimburse the **O**fficer for the cost of both the test and any required record thereof to the extent that such cost is not covered by insurance.

The Employer shall not require a physician's certificate as a condition of return to duty from medical leave lasting three days or less, except for good cause.

### Section 18.7 —Advisory Committee

The Employer and the Lodge shall establish a joint Committee to develop solutions to problems of medical leave cost and abuse. The Committee shall be advisory only.

### Section 18.8 — Injuries on Duty and Recurrence Claims

The Employer and the Lodge have agreed upon procedures which will be followed by the Medical Services Section when an **O**fficer reports an injury on duty or a recurrence of an injury on duty. Those procedures are set forth in Appendix N of this Agreement.

### Section 18.9 — Employer Responsibility for Hospital, Medical and Prescription Costs and Pension Contributions

Pending the final determination of benefits by the **Policemen's Annuity and Benefit** Fund, **O**fficers covered by this Agreement who apply for duty, ordinary or occupational disability benefits will be required to contribute the same amount as active **O**fficers for health care benefits; and the Employer will continue to provide the same health care benefits.

Officers who receive duty or occupational disability benefits will continue to receive those benefits at no cost without any refund of their previous contributions. Officers who are awarded ordinary disability benefits will be required to contribute at the Public Health Services Act (PHSA) rate reduced by the administrative fee of 2%, as of the first day of the month following the Fund's final determination of the **O**fficer's claim.

The Employer agrees to pay all hospital, medical and prescription costs of an **O**fficer who is on a leave of absence for duty or occupational disability purposes, all at no cost to the employee. The Employer shall make pension contributions on behalf of the employee as if the employee had remained in active service.

### Section 18.10 — Medical Benefit Statement

Upon the written request of an **O**fficer who is injured or becomes ill in the performance of his or her duties, the Employer will provide a written statement showing the period of absence and the amount

ARROYO.DEF.000136

# EXHIBIT I

| Chicago Police Department | Employee Resource   E03-01-03 |
|---|---|
| **SWORN LIMITED DUTY PROGRAM** | |

| ISSUE DATE: | 05 December 2013 | EFFECTIVE DATE: | 05 December 2013 |
|---|---|---|---|
| RESCINDS: | 05 June 2012 Version | | |
| INDEX CATEGORY: | Employee Rights and Responsibilities | | |

## I.     PURPOSE

This directive:

A.     outlines Department policy and defines procedures for a sworn member below the rank of lieutenant to be placed in the sworn limited duty program.

B.     discontinues the Convalescent Duty status.

## II.     ELIGIBILITY REQUIREMENTS

A.     Sworn members the rank of lieutenant and above are **not** eligible for the Sworn Limited Duty Program.

B.     Eligible sworn members approved for limited duty status will be required to have the ability to:

1.     safely carry, handle, and use their Department approved, prescribed firearm, which includes possessing a current, valid Firearm Owner's Identification (FOID) card.

2.     maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., crutches, canes, walkers, wheelchairs, etc.). Subject to evaluation by the Medical Services Section, an eligible sworn Department member wearing a prosthesis or other orthopedic device (e.g., brace, cast, etc.) may be granted a limited duty assignment.

3.     safely effectuate an arrest of an arrestee who is defined as an active resister in the Chicago Police Department Use of Force Model outlined in the Department directive entitled "**Use of Force Guidelines**."

    **NOTE:**     This requirement will not apply to members seeking a limited duty assignment due to being injured in the line of duty.

4.     drive a motor vehicle, which includes possessing a current, valid driver's license.

## III.     LIMITED DUTY

A.     Subject to the availability of an assignment, the needs of the Department, and consistent with an eligible sworn member's medical limitations, the Medical Services Section may place the member into a limited duty status when the member will not be able to perform full duty tasks.

B.     Eligible sworn Department members who are injured in the line of duty and certified by the Medical Services Section as being able to perform limited duty assignments shall be given available limited duty assignments until they can perform full duty assignments, or until they are mandatorily retired, whichever occurs first.

    **NOTE:**     For the purposes of this directive, "injured in the line of duty" is defined as an injury to an active duty officer during the course of performing police functions, while on or off duty, as determined by the Committee on Finance.

C.     Eligible sworn Department members *of the rank of police officer* who are not injured in the line of duty or who are ill and are certified by the Medical Services Section as being able to perform limited duty assignments may be given available limited duty assignments, subject to the needs of the

**ARROYO.DEF.000190**

Department, for a maximum of *730* days, or until they can perform full duty assignments, whichever occurs first.

1. *Beginning 1 January 2012, the 730 days shall be cumulative over the course of an eligible sworn member's career.*

2. *The 730 day count shall not include days:*

   a. *in which an eligible sworn member is on their assigned annual furlough.*

   b. *incurred by a sworn member approved for limited duty status whose injury was sustained during deployment as an active duty member of the United States Armed Forces in a combat zone as designated by an Executive Order from the President of the United States.*

D. *Eligible sworn Department members of the rank of sergeant who are not injured in the line of duty or who are ill and are certified by the Medical Services Section as being able to perform limited duty assignments may be given available limited duty assignments, subject to the needs of the Department.*

   1. *Beginning 1 October 2012, sergeants who have completed twenty full years of service with the Department shall be eligible to participate in the limited-duty program up to a maximum of 730 days.*

   2. *Beginning 1 October 2012, sergeants who have completed less than twenty full years of service with the Department shall be eligible to participate in the limited-duty program up to a maximum of 365 days.*

   3. *The aforementioned day count shall not include days in which an eligible sworn member is on their assigned annual furlough.*

E. An eligible sworn Department member currently on the medical roll for a certified injury or illness may be placed into a limited duty status by the Medical Services Section if the member's restrictions, based on reasonable medical standards, enable the member to perform limited duty assignments.

F. An eligible sworn Department member not currently on the medical roll but seeking limited duty status due to a reported injury or illness will contact the Medical Services Section and request a review of their medical condition. The member will submit all medical test results, medical evaluations, and other requested documentation in order to be considered for the program.

G. The Medical Services Section may refer any member on limited duty to a physician designated by the Department for a medical examination. The Medical Services Section will determine the eligible sworn member's continued use of the limited duty program. All medical expenses incurred as the result of this evaluation will be the responsibility of the Department.

## IV.   RESPONSIBILITIES

A. The Medical Services Section will:

   1. approve a limited duty status, as appropriate, based upon a review of the submitted Medical Certification for Limited Duty Assignment forms, the treating physicians work restrictions, and the requirements of this directive.

   2. notify the Director, Human Resources Division, and the Chief, Bureau of Administration, or their designee when:

      a. an eligible sworn member is approved for limited duty status, or

      b. a member in limited duty status is returned to full duty status.

   3. when a limited duty status has been approved:

      a. notify the eligible sworn member that a limited duty status has been approved, including the limited duty status expiration date, and ensure the CLEAR Automated Medical System reflects the limited duty status.

      b.    notify the eligible sworn Department member's unit of assignment using the work status section of the CLEAR system.

4.    when a limited duty status has not been approved, notify the eligible sworn member that a limited duty status has not been approved.

5.    review each eligible sworn Department member's limited duty status on a regular basis, as indicated in the CLEAR system.

6.    record in the eligible sworn Department member's medical file any changes in the member's status and the reason for the member's continued limited duty status.

B.    The Chief, Bureau of Administration, or designee will:

1.    identify a limited duty assignment within the Department.

2.    ensure members approved for limited duty status are detailed to limited duty assignments based on Department needs.

3.    ensure eligible sworn members that are returned to full duty status are assigned appropriately, in consultation with the First Deputy Superintendent.

Garry F. McCarthy
Superintendent of Police

13-161 RWN

ARROYO.DEF.000192

# EXHIBIT J

*Confidential - Subject to Protective Order*



ESSENTIAL FUNCTIONS FOR LIMITED DUTY APPROVAL
MEDICAL SECTION
HUMAN RSOURCES DIVISION
CHICAGO POLICE DEPARTMENT

Dear Doctor:      Patient's Name: _Reyna Arroyo_

Your patient is a member of the Chicago Police Department whose job duties sometimes require the officer to engage in strenuous physical activities. This information sheet is to assist you in determining whether your patient is able to return to work as a Chicago Police Officer.

Officers who are full duty are required to perform all police duties without restriction. Officers who are unable to work due to illness or injury may use available sick time. Officers who can work but have some restrictions may be considered for limited duty assignments. **Officers must be able to perform all of the essential functions of the police officer position in order to be considered for a limited duty assignment.** We are requesting your certification that your patient is able to do the following:

**Essential Functions of Police Officer**

1. Have the physical, psychological and emotional ability to safely effectuate an arrest at the resister level of the Chicago Police Department's Use of Force Model (this includes the ability to struggle with those resisting arrest, and may involve punching, hitting, kicking, running, climbing, squatting and other physical activities); please initial ____

2. Have the physical, psychological and emotional ability to safely carry, handle and use a Department approved, prescribed firearm; please initial: ____

3. Maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., no crutches, canes, walkers, wheelchairs, etc.); please initial: ____

4. Have and maintain the ability to drive (this includes having the physical, psychological and emotional ability to safely drive a motor vehicle: please initial: ____ and having and maintaining a valid Illinois Driver's License); and

5. Have and maintain a valid and current Firearms Owner's Identification Card.

See attached position description for examples of duties. Please bear in mind that the duties listed in the position description are representative and are not intended as an exclusive list of duties performed by officers in this title. Please also note that officers who are unable to produce this document with your assertion of his/her abilities to perform these functions will not be allowed a limited duty role.

Doctor's Signature: _____ 2/26/18

CPD-62.477 (Rev. 9/15)

ARROYO.DEF.002042

Confidential - Subject to Protective Order

## MEDICAL CERTIFICATION FOR LIMITED DUTY ASSIGNMENT

MEDICAL SECTION/HUMAN RESOURCES DIVISION/CHICAGO POLICE DEPARTMENT

Officers will not be eligible for limited duty assignment if their restrictions prevent them from performing the essential functions of a police officer.

Date: _____ Patient's Name: _Reyna Arroy. #_____

Does the patient's current medical condition restrict him/her from performing the activities below?

| WORK RESTRICTION | YES/NO | DESCRIBE RESTRICTION (e.g. must take break every 30 minutes) | SPECIFY TIME (e.g. for 2 months) |
|---|---|---|---|
| Repetitive use of hands | | | |
| Grasp objects/fine motor skills | | | |
| Stand | | | |
| Walk | | no restrictions | |
| Squat/kneel | | | |
| Twist | | | |
| Bend/stoop | | | |
| Climb ladders or stairs | | | |
| Push/pull | ✓ | No push/pull > 10 lbs | 5/18/18 |
| Operate motor vehicle | | | |
| Use radio equipment | | no restriction | 5/18/18 |
| Does the employee's current medical condition limit the hours the employee is available for work? | | | |
| Does the employee's current medical condition restrict the environment in which the employee may work? | ✓ | no wearing vest | 5/18/18 |
| Does the employee's current medical condition require the use of a walker, wheelchair, motorized scooter, crutches or cane? | | | |
| Does the employee's current medical condition affect his/her vision? | | no restriction | |
| Does the employee's current medical condition affect his/her hearing? | | | |
| Does the employee's current medical condition affect his/her mental or emotional functions? | | | |
| Does the employee's current medical condition affect any other ability? Identify the restriction. | ✓ | No lift > 10 lbs, no work above shoulder (exp) | 5/18/18 |

CPD-62.475 (Rev. 9/16) Side 1

ARROYO.DEF.002043

# EXHIBIT K

Confidential - Subject to Protective Order

**CERTIFICATE OF ELIGIBILITY FOR A LIMITED DUTY ASSIGNMENT**
MEDICAL SERVICES SECTION/HUMAN RESOURCES DIVISION
CHICAGO POLICE DEPARTMENT

Name: Reyna Arroyo

Star No: 18014

Employee No: 45919

Title: Police Officer

I, Reyna Arroyo, star no. 18014, state that I am requesting a limited duty assignment because I have an injury or illness that prevents me from performing full police duties. I understand that I am required to provide sufficient medical documentation, including medical test results, evaluations, and the completed doctor's certification provided by the Chicago Police Department, in order to support my claim for a limited duty assignment. I further understand that failure to provide complete medical information as requested in a timely manner will lead to denial of my request for limited duty.

I certify that I have received a copy of E03-01-03 in conjunction with my request for a limited duty assignment. I have read E03-01-03 and, by signing this certification, I certify that I meet the minimum qualifications as listed in E03-01-03, Section II for a limited duty assignment.

I understand that if I am granted a limited duty assignment, I will be subject to periodic evaluations, the frequency and scope of which will be determined by the Medical Services Section. I understand that the Medical Services Section will determine my continued participation in the limited duty program.

I understand that I am not eligible for promotion, special employment or secondary employment that requires me to perform duties contrary to my medical restrictions while in a limited duty status.

I understand that I am subject to assignment consistent with my medical limitations and the availability of an assignment. I understand that the Chicago Police Department is not required to create an assignment, duties or a position for me under this program.

I understand that the Chicago Police Department may change my hours of work, my work location, and my assignment or duties, subject to the needs of the Department. I understand that I may be required to rotate through a variety of assignments, subject to my medical restrictions, while I am in a limited duty status.

I certify that the information listed in this certification pertaining to my medical condition is true and accurate to the best of my information and belief.

I understand that a false statement in connection with my request for a limited duty assignment is prohibited. I understand that making a false statement in connection with a request for a limited duty assignment may lead to disciplinary action, up to and including discharge.

Signature: _____ Date: _____

CPD-62.474 (Rev. 1/12)

ARROYO.DEF.002086

EXHIBIT L

Case: 1:21-cv-01148 Document #: 134-2 Filed: 12/16/24 Page 131 of 196 PageID #:1004
*Confidential - Subject to Protective Order*

| | |
|---|---|
| **Entered By** | MORENO, MICHELLE E |
| **Entered Date/Time** | 27-NOV-2017 14:27 |
| | LD NON IOD |
| **Notes** | Member hand delivered a completed ld packet to mss, but mss covering staff did not update in clear. Member here today fu on LD status. Rn to extend LD NON IOD status through extension date given 16Feb18. |
| **Note No.** | 859046 |

| | |
|---|---|
| **Type** | Notes |
| **Medical Absence** | - |
| **Entered By** | ARJMAND, SUSAN B |
| **Entered Date/Time** | 15-NOV-2017 14:25 |
| **Notes** | prepared letter and notes for IME. Sent to cvty via email. SA |
| **Note No.** | 857881 |

| | |
|---|---|
| **Type** | Notes |
| **Medical Absence** | - |
| **Entered By** | BANKSON, MICHELLE G |
| **Entered Date/Time** | 27-OCT-2017 07:10 |
| **Notes** | MEMBER IS NON-IOD LD STATUS<br>LD EXPIRES ON 14 NOV 2017<br>DEPT EMAIL TO MEMBER REGARDING LD |
| **Note No.** | 855587 |

| | |
|---|---|
| **Type** | Notes |
| **Medical Absence** | - |
| **Entered By** | MORENO, MICHELLE E |
| **Entered Date/Time** | 25-SEP-2017 10:37 |
| **Notes** | 25 September 2017 member passed at the range. Member here today with her portion of the LD packet.<br><br>CM will initiate LD NON IOD effective 26Sep17 for left shoulder. |
| **Note No.** | 851669 |

| | |
|---|---|
| **Type** | Notes |
| **Medical Absence** | - |
| **Entered By** | NEARY, DAWN M |
| **Entered Date/Time** | 21-SEP-2017 11:55 |
| **Notes** | Member here today with Limited duty package completed by Dr C. Ho for a rtd-ld. Prior to being released to ld, member will need to range qualify. Range form issued & explained. Member to contact Area range for an appointment time on the 25 Sept 2017. Member is currently using Article 18.1 as per her request since she has requested to move forward with claiming Recur IOD for left shoulder r/t 01 Feb 2007 IOD. Member to choose IME MD, since MSS did not accept Dr Marsh relatedness opinion.<br><br>Per prior note: Member is requesting to see Dr Bresch. Once apt is scheduled Mss will collect notes for IME MD to review.<br><br>Member aware that once she has completed range to report back to MSS c her portion of the Ld package that was issued to her. |
| **Note No.** | 851365 |

| | |
|---|---|
| **Type** | Notes |
| **Medical Absence** | - |
| **Entered By** | MORENO, MICHELLE E |
| **Entered Date/Time** | 07-SEP-2017 07:21 |
| **Notes** | Original IOD injury: 01 February 2007<br>Extent of original injury: 01FEB07 DURING THE PROCESS OF PATTING DOWN AN OFFENDER, THE OFFENDER THRU PUNCHES THAT HIT CHEST AND CAUSED INJURY TO LT PINKY FINGER.<br>Medical IOD days used: exhausted 365 IOD days<br><br>Member wants to move forward with claiming Recur IOD for left shoulder r/t 01 Feb 2007 IOD. Member was escorted to mss referrals to choose IME MD, since mss did not accept Dr Marsh relatedness opinion.<br><br>Member is requesting to see Dr Bresch. Once apt is scheduled Mss will collect notes for IME MD to review. |
| **Note No.** | 849548 |

| | |
|---|---|
| **Type** | Notes |
| **Medical Absence** | - |
| **Entered By** | MORENO, MICHELLE E |

**ARROYO.DEF.000412**

# EXHIBIT M

**Confidential - Subject to Protective Order**



ESSENTIAL FUNCTIONS FOR LIMITED DUTY APPROVAL
MEDICAL SECTION
HUMAN RSOURCES DIVISION
CHICAGO POLICE DEPARTMENT

Dear Doctor:                    Patient's Name: _Reyna Arroyo_

Your patient is a member of the Chicago Police Department whose job duties sometimes require the officer to engage in strenuous physical activities. This information sheet is to assist you in determining whether your patient is able to return to work as a Chicago Police Officer.

Officers who are full duty are required to perform all police duties without restriction. Officers who are unable to work due to illness or injury may use available sick time. Officers who can work but have some restrictions may be considered for limited duty assignments. **Officers must be able to perform all of the essential functions of the police officer position in order to be considered for a limited duty assignment. We are requesting your certification that your patient is able to do the following:**

## Essential Functions of Police Officer

1. Have the physical, psychological and emotional ability to safely effectuate an arrest at the resister level of the Chicago Police Department's Use of Force Model (this includes the ability to struggle with those resisting arrest, and may involve punching, hitting, kicking, running, climbing, squatting and other physical activities); please initial _____

2. Have the physical, psychological and emotional ability to safely carry, handle and use a Department approved, prescribed firearm; please initial: _____

3. Maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., no crutches, canes, walkers, wheelchairs, etc.); please initial:_____

4. Have and maintain the ability to drive (this includes having the physical, psychological and emotional ability to safely drive a motor vehicle: please initial: _____
   and having and maintaining a valid Illinois Driver's License); and

5. Have and maintain a valid and current Firearms Owner's Identification Card.

See attached position description for examples of duties. Please bear in mind that the duties listed in the position description are representative and are not intended as an exclusive list of duties performed by officers in this title. Please also note that officers who are unable to produce this document with your assertion of his/her abilities to perform these functions will not be allowed a limited duty role.

Doctor's Signature:_____

CPD-62.477 (Rev. 9/15)

ARROYO.DEF.002080

*Confidential - Subject to Protective Order*

## MEDICAL CE.. .FICATION FOR LIMITED D .. / ASSIGNMENT

MEDICAL SECTION/HUMAN RESOURCES DIVISION/CHICAGO POLICE DEPARTMENT

Officers will not be eligible for limited duty assignment if their restrictions prevent them from performing the essential functions of a police officer.

Date: 09/8/17    Patient's Name: Reyna Arrayo

Does the patient's current medical condition restrict him/her from performing the activities below?

| WORK RESTRICTION | YES/NO | DESCRIBE RESTRICTION (e.g. must take break every 30 minutes) | SPECIFY TIME (e.g. for 2 months) |
|---|---|---|---|
| Repetitive use of hands | Y | | |
| Grasp objects/fine motor skills | Y | | |
| Stand | Y | | |
| Walk | Y | | |
| Squat/kneel | V | | |
| Twist | Y | | |
| Bend/stoop | V | | |
| Climb ladders or stairs | Y | | |
| Push/pull | N | NO push/pull 7 10 lbs | 11/10/17 |
| Operate motor vehicle | Y | | |
| Use radio equipment | Y | | |
| Does the employee's current medical condition limit the hours the employee is available for work? | N | | |
| Does the employee's current medical condition restrict the environment in which the employee may work? | Y | No wearing vest | |
| Does the employee's current medical condition require the use of a walker, wheelchair, motorized scooter, crutches or cane? | N | | |
| Does the employee's current medical condition affect his/her vision? | N | | |
| Does the employee's current medical condition affect his/her hearing? | N | | |
| Does the employee's current medical condition affect his/her mental or emotional functions? | N | | |
| Does the employee's current medical condition affect any other ability? Identify the restriction. | Y | NO lift 7 10 lbs, NO work above shoulder level | 11/10/17 |

CPD-62.475 (Rev. 9/15) Side 1

ARROYO.DEF.002081

*Confidential - Subject to Protective Order*



**ESSENTIAL FUNCTIONS FOR LIMITED DUTY APPROVAL**
MEDICAL SECTION
HUMAN RSOURCES DIVISION
CHICAGO POLICE DEPARTMENT

Dear Doctor:                    Patient's Name: _Reyna Arroyo_

Your patient is a member of the Chicago Police Department whose job duties sometimes require the officer to engage in strenuous physical activities. This information sheet is to assist you in determining whether your patient is able to return to work as a Chicago Police Officer.

Officers who are full duty are required to perform all police duties without restriction. Officers who are unable to work due to illness or injury may use available sick time. Officers who can work but have some restrictions may be considered for limited duty assignments. **Officers must be able to perform all of the essential functions of the police officer position in order to be considered for a limited duty assignment. We are requesting your certification that your patient is able to do the following:**

## Essential Functions of Police Officer

1. Have the physical, psychological and emotional ability to safely effectuate an arrest at the resister level of the Chicago Police Department's Use of Force Model (this includes the ability to struggle with those resisting arrest, and may involve punching, hitting, kicking, running, climbing, squatting and other physical activities); please initial _____

2. Have the physical, psychological and emotional ability to safely carry, handle and use a Department approved, prescribed firearm; please initial: _____

3. Maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., no crutches, canes, walkers, wheelchairs, etc.); please initial:_____

4. Have and maintain the ability to drive (this includes having the physical, psychological and emotional ability to safely drive a motor vehicle: please initial:_____ and having and maintaining a valid Illinois Driver's License); and

5. Have and maintain a valid and current Firearms Owner's Identification Card.

**See attached position description for examples of duties. Please bear in mind that the duties listed in the position description are representative and are not intended as an exclusive list of duties performed by officers in this title. Please also note that officers who are unable to produce this document with your assertion of his/her abilities to perform these functions will not be allowed a limited duty role.**

Doctor's Signature:_____

CPD-62.477 (Rev. 9/15)

**ARROYO.DEF.002082**

# EXHIBIT N

*Confidential - Subject to Protective Order*



**ESSENTIAL FUNCTIONS FOR LIMITED DUTY APPROVAL**
**MEDICAL SECTION**
**HUMAN RSOURCES DIVISION**
**CHICAGO POLICE DEPARTMENT**

Dear Doctor:                    Patient's Name: ___Rayna Arroyo___

Your patient is a member of the Chicago Police Department whose job duties sometimes require the officer to engage in strenuous physical activities. This information sheet is to assist you in determining whether your patient is able to return to work as a Chicago Police Officer.

Officers who are full duty are required to perform all police duties without restriction. Officers who are unable to work due to illness or injury may use available sick time. Officers who can work but have some restrictions may be considered for limited duty assignments. **Officers must be able to perform all of the essential functions of the police officer position in order to be considered for a limited duty assignment.** We are requesting your certification that your patient is able to do the following:

### Essential Functions of Police Officer

1. Have the physical, psychological and emotional ability to safely effectuate an arrest at the resister level of the Chicago Police Department's Use of Force Model (this includes the ability to struggle with those resisting arrest, and may involve punching, hitting, kicking, running, climbing, squatting and other physical activities); please initial _____

2. Have the physical, psychological and emotional ability to safely carry, handle and use a Department approved, prescribed firearm; please initial: _____

3. Maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., no crutches, canes, walkers, wheelchairs, etc.); please initial: _____

4. Have and maintain the ability to drive (this includes having the physical, psychological and emotional ability to safely drive a motor vehicle: please initial: _____ and having and maintaining a valid Illinois Driver's License); and

5. Have and maintain a valid and current Firearms Owner's Identification Card.

See attached position description for examples of duties. Please bear in mind that the duties listed in the position description are representative and are not intended as an exclusive list of duties performed by officers in this title. Please also note that officers who are unable to produce this document with your assertion of his/her abilities to perform these functions will not be allowed a limited duty role.

Doctor's Signature: _____ 2/26/18

CPD-62.477 (Rev. 9/15)

ARROYO.DEF.002042

*Confidential - Subject to Protective Order*

## MEDICAL CERTIFICATION FOR LIMITED DUTY ASSIGNMENT

MEDICAL SECTION/HUMAN RESOURCES DIVISION/CHICAGO POLICE DEPARTMENT

Officers will not be eligible for limited duty assignment if their restrictions prevent them from performing the essential functions of a police officer.

Date: _____ Patient's Name: _Reyna Arroy, #_ ▊▊▊▊▊

Does the patient's current medical condition restrict him/her from performing the activities below?

| WORK RESTRICTION | YES/NO | DESCRIBE RESTRICTION (e.g. must take break every 30 minutes) | SPECIFY TIME (e.g. for 2 months) |
|---|---|---|---|
| Repetitive use of hands | | | |
| Grasp objects/fine motor skills | | | |
| Stand | | | |
| Walk | | | |
| Squat/kneel | | no restrictions | |
| Twist | | | |
| Bend/stoop | | | |
| Climb ladders or stairs | | | |
| Push/pull | ✓ | NO push/pull > 10 lbs | 5/18/18 |
| Operate motor vehicle | | | |
| Use radio equipment | | no restriction | 5/18/18 |
| Does the employee's current medical condition limit the hours the employee is available for work? | | | |
| Does the employee's current medical condition restrict the environment in which the employee may work? | ✓ | no wearing vest | 5/18/18 |
| Does the employee's current medical condition require the use of a walker, wheelchair, motorized scooter, crutches or cane? | | | |
| Does the employee's current medical condition affect his/her vision? | | no restriction | |
| Does the employee's current medical condition affect his/her hearing? | | | |
| Does the employee's current medical condition affect his/her mental or emotional functions? | | | |
| Does the employee's current medical condition affect any other ability? Identify the restriction. | ✓ | no lift > 10 lbs, no work above shoulder (emp) | 5/18/18 |

CPD-62.475 (Rev. 9/15) Side 1

ARROYO.DEF.002043

# EXHIBIT O

**Confidential - Subject to Protective Order**



**ESSENTIAL FUNCTIONS FOR LIMITED DUTY APPROVAL**
MEDICAL SECTION
HUMAN RSOURCES DIVISION
CHICAGO POLICE DEPARTMENT

Dear Doctor:                    Patient's Name: _Reyna Arroyo_

Your patient is a member of the Chicago Police Department whose job duties sometimes require the officer to engage in strenuous physical activities. This information sheet is to assist you in determining whether your patient is able to return to work as a Chicago Police Officer.

Officers who are full duty are required to perform all police duties without restriction. Officers who are unable to work due to illness or injury may use available sick time. Officers who can work but have some restrictions may be considered for limited duty assignments. **Officers must be able to perform all of the essential functions of the police officer position in order to be considered for a limited duty assignment. We are requesting your certification that your patient is able to do the following:**

## Essential Functions of Police Officer

1. Have the physical, psychological and emotional ability to safely effectuate an arrest at the resister level of the Chicago Police Department's Use of Force Model (this includes the ability to struggle with those resisting arrest, and may involve punching, hitting, kicking, running, climbing, squatting and other physical activities); please initial _SA_

2. Have the physical, psychological and emotional ability to safely carry, handle and use a Department approved, prescribed firearm; please initial: _SA_

3. Maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., no crutches, canes, walkers, wheelchairs, etc.); please initial: _SA_

4. Have and maintain the ability to drive (this includes having the physical, psychological and emotional ability to safely drive a motor vehicle: please initial: _SA_
   and having and maintaining a valid Illinois Driver's License); and

5. Have and maintain a valid and current Firearms Owner's Identification Card.

See attached position description for examples of duties. Please bear in mind that the duties listed in the position description are representative and are not intended as an exclusive list of duties performed by officers in this title. Please also note that officers who are unable to produce this document with your assertion of his/her abilities to perform these functions will not be allowed a limited duty role.

Doctor's Signature: _CS H 5/18/18_

CPD-62.477 (Rev. 9/15)

ARROYO.DEF.002037

*Confidential - Subject to Protective Order*

## MEDICAL CERTIFICATION FOR LIMITED DUTY ASSIGNMENT

MEDICAL SECTION/HUMAN RESOURCES DIVISION/CHICAGO POLICE DEPARTMENT

Officers will not be eligible for limited duty assignment if their restrictions prevent them from performing the essential functions of a police officer.

Date: 5/18/18     Patient's Name: _____

**Does the patient's current medical condition restrict him/her from performing the activities below?**

| WORK RESTRICTION | YES/NO | DESCRIBE RESTRICTION (e.g. must take break every 30 minutes) | SPECIFY TIME (e.g. for 2 months) |
|---|---|---|---|
| Repetitive use of hands | | | |
| Grasp objects/fine motor skills | | | |
| Stand | | No restrictions | |
| Walk | | | |
| Squat/kneel | | | |
| Twist | | | |
| Bend/stoop | | | |
| Climb ladders or stairs | | | |
| Push/pull | ✓ | No push/pull >10 lbs | 3 mo |
| Operate motor vehicle | | No restrictions | |
| Use radio equipment | | | |
| Does the employee's current medical condition limit the hours the employee is available for work? | | | |
| Does the employee's current medical condition restrict the environment in which the employee may work? | ✓ | No wearing vest | 3 mo |
| Does the employee's current medical condition require the use of a walker, wheelchair, motorized scooter, crutches or cane? | | | |
| Does the employee's current medical condition affect his/her vision? | | No restrictions | |
| Does the employee's current medical condition affect his/her hearing? | | | |
| Does the employee's current medical condition affect his/her mental or emotional functions? | | | |
| Does the employee's current medical condition affect any other ability? Identify the restriction. | ✓ | No lifts 10 lbs, no work above shoulder level | 3 mo |

CPD-62.475 (Rev. 9/15) Side 1

ARROYO.DEF.002038

*Confidential - Subject to Protective Order*

Do you have any additional information which is relevant to the patient's ability to perform the essential functions of his or her position which hasn't been addressed above?

If yes, please provide an explanation below:

Please explain why you answered "yes" to any of the questions listed above. Use additional sheets if necessary.

(see previous side)

MRI @ Shoulder ordered. Patient to follow up in 4 weeks to review MRI.

OAR
Michael J. Hejna, MD
Erling Ho, MD
Scott A. Seymour, MD
353 E. Burlington Suite 100
Riverside, Il 60546
(708) 442-9221 (phone)
(708) 442-5870 (fax)

If any of the above were answered "yes", what is the projected duration of the restriction?

( 3-6 mo. )

I certify that the information given is true and correct.

Signature of Physician or Practitioner                    Date    5/18/4

CPD-62.475 (Rev. 9/15) Side 2

ARROYO.DEF.002039

EXHIBIT P

Confidential - Subject to Protective Order



**ESSENTIAL FUNCTIONS FOR LIMITED DUTY APPROVAL**
**MEDICAL SECTION**
**HUMAN RSOURCES DIVISION**
**CHICAGO POLICE DEPARTMENT**

Dear Doctor:      Patient's Name: _Reyna arroyo_

Your patient is a member of the Chicago Police Department whose job duties sometimes require the officer to engage in strenuous physical activities. This information sheet is to assist you in determining whether your patient is able to return to work as a Chicago Police Officer.

Officers who are full duty are required to perform all police duties without restriction. Officers who are unable to work due to illness or injury may use available sick time. Officers who can work but have some restrictions may be considered for limited duty assignments. **Officers must be able to perform all of the essential functions of the police officer position in order to be considered for a limited duty assignment. We are requesting your certification that your patient is able to do the following:**

## Essential Functions of Police Officer

1. Have the physical, psychological and emotional ability to safely effectuate an arrest at the resister level of the Chicago Police Department's Use of Force Model (this includes the ability to struggle with those resisting arrest, and may involve punching, hitting, kicking, running, climbing, squatting and other physical activities); please initial _____

2. Have the physical, psychological and emotional ability to safely carry, handle and use a Department approved, prescribed firearm; please initial: _____

3. Maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., no crutches, canes, walkers, wheelchairs, etc.); please initial: _____

4. Have and maintain the ability to drive (this includes having the physical, psychological and emotional ability to safely drive a motor vehicle: please initial: _____ and having and maintaining a valid Illinois Driver's License); and

5. Have and maintain a valid and current Firearms Owner's Identification Card.

See attached position description for examples of duties. Please bear in mind that the duties listed in the position description are representative and are not intended as an exclusive list of duties performed by officers in this title. Please also note that officers who are unable to produce this document with your assertion of his/her abilities to perform these functions will not be allowed a limited duty role.

Doctor's Signature: _Desmond W. Dethrich_

CPD-62.477 (Rev. 9/15)

**ARROYO.DEF.002020**

*Confidential - Subject to Protective Order*

## MEDICAL CERTIFICATION FOR LIMITED DUTY ASSIGNMENT

MEDICAL SECTION/HUMAN RESOURCES DIVISION/CHICAGO POLICE DEPARTMENT

Officers will not be eligible for limited duty assignment if their restrictions prevent them from performing the essential functions of a police officer.

Date:_____    Patient's Name:_____

**Does the patient's current medical condition restrict him/her from performing the activities below?**

| WORK RESTRICTION | YES/NO | DESCRIBE RESTRICTION (e.g. must take break every 30 minutes) | SPECIFY TIME (e.g. for 2 months) |
|---|---|---|---|
| Repetitive use of hands | | | |
| Grasp objects/fine motor skills | | w/ moderation | |
| Stand | | | |
| Walk | | | |
| Squat/kneel | | | |
| Twist | No | see attached note | 6mo |
| Bend/stoop | | | |
| Climb ladders or stairs | | | |
| Push/pull | No | see note attached | 6mo |
| Operate motor vehicle | | w/ moderation | |
| Use radio equipment | | | |
| Does the employee's current medical condition limit the hours the employee is available for work? | | | |
| Does the employee's current medical condition restrict the environment in which the employee may work? | | | |
| Does the employee's current medical condition require the use of a walker, wheelchair, motorized scooter, crutches or cane? | | | |
| Does the employee's current medical condition affect his/her vision? | | | |
| Does the employee's current medical condition affect his/her hearing? | | | |
| Does the employee's current medical condition affect his/her mental or emotional functions? | | | |
| Does the employee's current medical condition affect any other ability? Identify the restriction. | | | |

CPD-62.475 (Rev. 9/15) Side 1

ARROYO.DEF.002021

*Confidential - Subject to Protective Order*

Do you have any additional information which is relevant to the patient's ability to perform the essential functions of his or her position which hasn't been addressed above?

If yes, please provide an explanation below:

*Reyna Arroyo had surgery on 7/19/18. She may return to work w/ restriction on Monday, Oct 1, 2018. No duty but for 6mo. No lifting more than 10#.*

Please explain why you answered "yes" to any of the questions listed above. Use additional sheets if necessary.

If any of the above were answered "yes", what is the projected duration of the restriction?

I certify that the information given is true and correct.

_____          8/31/18
Signature of Physician or Practitioner        Date

CPD-62.475 (Rev. 9/15) Side 2

ARROYO.DEF.002022

# EXHIBIT Q



**ESSENTIAL FUNCTIONS FOR LIMITED DUTY APPROVAL**
MEDICAL SECTION
HUMAN RSOURCES DIVISION
CHICAGO POLICE DEPARTMENT

Dear Doctor:                    Patient's Name: _Zeyna Arroyo_

Your patient is a member of the Chicago Police Department whose job duties sometimes require the officer to engage in strenuous physical activities. This information sheet is to assist you in determining whether your patient is able to return to work as a Chicago Police Officer.

Officers who are full duty are required to perform all police duties without restriction. Officers who are unable to work due to illness or injury may use available sick time. Officers who can work but have some restrictions may be considered for limited duty assignments. **Officers must be able to perform all of the essential functions of the police officer position in order to be considered for a limited duty assignment. We are requesting your certification that your patient is able to do the following:**

## Essential Functions of Police Officer

1. Have the physical, psychological and emotional ability to safely effectuate an arrest at the resister level of the Chicago Police Department's Use of Force Model (this includes the ability to struggle with those resisting arrest, and may involve punching, hitting, kicking, running, climbing, squatting and other physical activities); please initial _____

2. Have the physical, psychological and emotional ability to safely carry, handle and use a Department approved, prescribed firearm; please initial: _____

3. Maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., no crutches, canes, walkers, wheelchairs, etc.); please initial: _____

4. Have and maintain the ability to drive (this includes having the physical, psychological and emotional ability to safely drive a motor vehicle: please initial: _____ and having and maintaining a valid Illinois Driver's License); and

5. Have and maintain a valid and current Firearms Owner's Identification Card.

See attached position description for examples of duties. Please bear in mind that the duties listed in the position description are representative and are not intended as an exclusive list of duties performed by officers in this title. Please also note that officers who are unable to produce this document with your assertion of his/her abilities to perform these functions will not be allowed a limited duty role.

Doctor's Signature: _____

CPD-62.477 (Rev. 9/15)

ARROYO.DEF.002014

Confidential - Subject to Protective Order

## MEDICAL CERTIFICATION FOR LIMITED DUTY ASSIGNMENT

MEDICAL SECTION/HUMAN RESOURCES DIVISION/CHICAGO POLICE DEPARTMENT

Officers will not be eligible for limited duty assignment if their restrictions prevent them from performing the essential functions of a police officer.

Date: 10-1-18       Patient's Name: Reyna Arroyo

Does the patient's current medical condition restrict him/her from performing the activities below?

| WORK RESTRICTION | YES/NO | DESCRIBE RESTRICTION (e.g. must take break every 30 minutes) | SPECIFY TIME (e.g. for 2 months) |
|---|---|---|---|
| Repetitive use of hands | | | |
| Grasp objects/fine motor skills | | w/moderation | |
| Stand | | | |
| Walk | | | |
| Squat/kneel | | | |
| Twist | No | see attached note | 5mo |
| Bend/stoop | | | |
| Climb ladders or stairs | | | |
| Push/pull | No | see attached note | 5mo |
| Operate motor vehicle | | w/ moderation | |
| Use radio equipment | | | |
| Does the employee's current medical condition limit the hours the employee is available for work? | | | |
| Does the employee's current medical condition restrict the environment in which the employee may work? | | | |
| Does the employee's current medical condition require the use of a walker, wheelchair, motorized scooter, crutches or cane? | | | |
| Does the employee's current medical condition affect his/her vision? | | | |
| Does the employee's current medical condition affect his/her hearing? | | | |
| Does the employee's current medical condition affect his/her mental or emotional functions? | | | |
| Does the employee's current medical condition affect any other ability? Identify the restriction. | | | |

CPD-62.475 (Rev. 9/15) Side 1

ARROYO.DEF.002015

*Confidential - Subject to Protective Order*

Do you have any additional information which is relevant to the patient's ability to perform the essential functions of his or her position which hasn't been addressed above?

If yes, please provide an explanation below:

Reyna Arroyo had surgery on 7/19/18. She may return to work on Friday Nov 2, 2018. No duty belt for 5 mo since her surgical site remains tender + sensitive on her left side + she cannot tolerate the pressure against the healing incision. No lifting > 10#.

Please explain why you answered "yes" to any of the questions listed above. Use additional sheets if necessary.

If any of the above were answered "yes", what is the projected duration of the restriction?

I certify that the information given is true and correct.

_____          10/1/18
Signature of Physician or Practitioner          Date

CPD-62.475 (Rev. 9/15) Side 2

ARROYO.DEF.002016

# EXHIBIT R



**ESSENTIAL FUNCTIONS FOR LIMITED DUTY APPROVAL**
**MEDICAL SECTION**
**HUMAN RSOURCES DIVISION**
**CHICAGO POLICE DEPARTMENT**

Dear Doctor:                  Patient's Name: REYNA  ARROYO

Your patient is a member of the Chicago Police Department whose job duties sometimes require the officer to engage in strenuous physical activities. This information sheet is to assist you in determining whether your patient is able to return to work as a Chicago Police Officer.

Officers who are full duty are required to perform all police duties without restriction. Officers who are unable to work due to illness or injury may use available sick time. Officers who can work but have some restrictions may be considered for limited duty assignments. **Officers must be able to perform all of the essential functions of the police officer position in order to be considered for a limited duty assignment. We are requesting your certification that your patient is able to do the following:**

## Essential Functions of Police Officer

1. Have the physical, psychological and emotional ability to safely effectuate an arrest at the resister level of the Chicago Police Department's Use of Force Model (this includes the ability to struggle with those resisting arrest, and may involve punching, hitting, kicking, running, climbing, squatting and other physical activities); please initial _SM_

2. Have the physical, psychological and emotional ability to safely carry, handle and use a Department approved, prescribed firearm; please initial: _____

3. Maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., no crutches, canes, walkers, wheelchairs, etc.); please initial: _____

4. Have and maintain the ability to drive (this includes having the physical, psychological and emotional ability to safely drive a motor vehicle: please initial: _____ and having and maintaining a valid Illinois Driver's License); and

5. Have and maintain a valid and current Firearms Owner's Identification Card.

**See attached position description for examples of duties. Please bear in mind that the duties listed in the position description are representative and are not intended as an exclusive list of duties performed by officers in this title. Please also note that officers who are unable to produce this document with your assertion of his/her abilities to perform these functions will not be allowed a limited duty role.**

Doctor's Signature: _____

CPD-62.477 (Rev. 9/15)

Opt-Out: Not Define 02/28/2019   2:31PM (GMT-06:00)

**ARROYO.DEF.001956**

Confidential - Subject to Protective Order

## MEDICAL CER~ ICATION FOR LIMITED DUTY  SSIGNMENT

MEDICAL SECTION/HUMAN RESOURCES DIVISION/CHICAGO POLICE DEPARTMENT

Officers will not be eligible for limited duty assignment if their restrictions prevent them from performing the essential functions of a police officer.

Date: 3/1/19          Patient's Name: REYNA ARROYO

Does the patient's current medical condition restrict him/her from performing the activities below?

| WORK RESTRICTION | YES/NO | DESCRIBE RESTRICTION (e.g. no lifting, bending over 20 lbs.) | SPECIFY TIME (e.g. for 2 months) |
|---|---|---|---|
| Repetitive use of hands | | | |
| Grasp objects/fine motor skills | | | |
| Stand | | | |
| Walk | | | |
| Squat/kneel | | No restrictions | |
| Twist | | | |
| Bend/stoop | | | |
| Climb ladders or stairs | | | |
| Push/pull | ✓ | No push/pull > 10 lbs | 3 mo |
| Operate motor vehicle | | | |
| Use radio equipment | | No restrictions | |
| Does the employee's current medical condition limit the hours the employee is available for work? | | | |
| Does the employee's current medical condition restrict the environment in which the employee may work? | ✓ | No wearing vest | 3 mo |
| Does the employee's current medical condition require the use of a walker, wheelchair, motorized scooter, crutches or cane? | | | |
| Does the employee's current medical condition affect his/her vision? | | No restrictions | |
| Does the employee's current medical condition affect his/her hearing? | | | |
| Does the employee's current medical condition affect his/her mental or emotional functions? | | | |
| Does the employee's current medical condition affect any other ability? Identify the restriction. | ✓ | No lift > 10 lbs, No work above shoulder level | 3 mo |

CPD 38.475 (Rev. 8/15) Side 1

Opt-Out: Not Define 02/28/2019   2:38PM (GMT-06:00)

ARROYO.DEF.001957

*Confidential - Subject to Protective Order*

Do you have any additional information which is relevant to the patient's ability to perform the essential functions of his or her position which hasn't been addressed above?

If yes, please provide an explanation below:

Please explain why you answered "yes" to any of the questions listed above. Use additional sheets if necessary.

See previous side)

MRI ① shoulder ordered. Patient to follow up to review MRI

If any of the above were answered "yes", what is the projected duration of the restriction?

3-6 mo

I certify that the information given is true and correct.

Signature of Physician or Practitioner

8/1/19
Date

CPD-62.475 (Rev. 9/15) Side 2

Opt-Out: Not Define 02/28/2019   2:38PM (GMT-06:00)

ARROYO.DEF.001958

# EXHIBIT S

DIAMOND D. DETTORE, M.D.
4705 WILLOW SPRINGS ROAD, SUITE 203
LA GRANGE, IL 60525
(708) 795-1520 TEL          DEA # AD 8035900
(708) 795-15_3 FAX          LIC. # 036-039227

NAME _Reyna Arroyo_          DOB _____
DATE 6-1 2020
ADDRESS _____

TAMPER-RESISTANT SECURITY FEATURES LISTED ON BACK OF SCRIPT

℞

OFFICE Arroyo is writen
for surgel shoulder surgery
which has been postponed due to
COVID-19. She is able to work.
limited duty (desk) w/o restraints
her surgery is performed.

Ref# NR 1 2 3 4 5

☐ MAY SUBSTITUTE
☐ MAY NOT SUBSTITUTE

_____
(Signature)

♻ 000946                     9L44FP1133974

ARROYO.DEF.001814

# EXHIBIT T

Case: 1:21-cv-01148 Document #: 134-2 Filed: 12/06/24 Page 158 of 196 PageID #:1031
**Confidential - Subject to Protective Order**

**Medical Section**
**Human Resources Division**
**Chicago Police Department**

[ *08 JAN 19*

## LIMITED DUTY NOTIFICATION LETTER - A

TO: *ARROYO, REYNA*
Name

Employee # *45919*

*18014*

Street

Star #

Chicago, IL-606
Zip

District/Unit *010 / 122*

Please be advised that the records of the Medical Section (MS) of the Chicago Police
Department indicate that as of *15 NOV 18* you have used *689* days of the
maximum allowable time in a Limited Duty status for your non-duty related condition as described in
Employee Resource E03-01-03, Sworn Limited Duty Program. Your last day in a Limited Duty status
is projected to be *06 APR 19*.

If you cannot return to Full Duty before you exhaust your allotted time in Limited Duty status, you must
choose one of the following options:

* You may use any available Medical Roll days;
* You may retire or resign by submitting a Personnel Action Request (PAR);
* You may apply for a leave of absence in order to apply for disability benefits;
* If applicable, you may request a Reasonable Accommodation as defined by the American with
  Disabilities Act; or
* If applicable, you may request leave under the Family Medical Leave Act.

You are encouraged to discuss your medical condition, treatment options and potential to return to work
in a Full Duty status with your physician as soon as possible. You are required to keep the Medical
Section apprised of your medical condition as information becomes available.

You must notify the MS no later than *06 MAR 19* of which of the listed
options you will take so that there will be no delay in processing. **Failure to complete processing
before the expiration of your Limited Duty time will lead to you being placed in a NO PAY status**
as of *07 APR 19*.

If you have any questions about leaves of absence, the Family Medical Leave Act, Reasonable
Accommodations or disability benefits, please direct your questions to the Human Resources Division at
(312) 745-5310 or PAX 0349. If you have any questions about your medical records, please contact the
Medical Section at (312) 745- 5000 or PAX 0130 or 0134.

Commanding Officer
Medical Section

cc: Director of Human Resources
Unit CO
Unit Timekeeper
Medical File

Rec: _____

Date: _____

Witness or certified: _____

Date/Time: _____

CPD-62.478 (Rev. 9/15)

**ARROYO.DEF.002013**

# EXHIBIT U

**Medical Section**
**Human Resources Division**
**Chicago Police Department**

24 JAN 19

## LIMITED DUTY NOTIFICATION LETTER - B

TO:
ARROYO, REYNA
Name

Street

Chicago, IL-606___
Zip

Employee # 45919

18014

Star # 

010 / 122
District/Unit

Please be advised that the records of the Medical Section (MS) of the Chicago Police
Department indicate that as of 3/ MAR /19, you will exceed the maximum allowable time in a
Date
Limited Duty status for your non-duty related condition as described in Employee Resource E03-01-03,
Sworn Limited Duty Program. If you are unable to return to Full Duty by that date, you must choose one
of the following options:

* You may use any available Medical Roll days;
* You may retire or resign by submitting a Personnel Action Request (PAR);
* You may apply for a leave of absence in order to apply for disability benefits;
* If applicable, you may request a Reasonable Accommodation as defined by the American with
  Disabilities Act; or
* If applicable, you may request leave under the Family Medical Leave Act.

You are encouraged to discuss your medical condition, treatment options and potential to return to work
in a Full Duty status with your physician as soon as possible. You are required to keep the Medical
Section apprised of your medical condition as information becomes available.
**You must notify the MS no later than** 01 MAR 19 **of which of the listed
options you will take** so that there will be no delay in processing. **Failure to complete processing
before the expiration of your Limited Duty time will lead to you being placed in a NO PAY status
as of** 3/ MAR 19.

If you have any questions about leaves of absence, the Family Medical Leave Act, Reasonable
Accommodations or disability benefits, please direct your questions to the Human Resources Division at
(312) 745-5310 or PAX 0349. If you have any questions about your medical records, please contact the
Medical Section at (312) 745- 5000 or PAX 0130 or 0134.

Commanding Officer
Medical Section

cc: Director of Human Resources
Unit CO
Unit Timekeeper
Medical File

Rec: _____  Date: _____

Witness or certified: _____  Date/Time: _____

CPD-62.479 (Rev. 9/15)

**ARROYO.DEF.002012**

# EXHIBIT V

**Sent:** Tuesday, January 29, 2019 10:30 AM CST
**To:** Arroyo, Reyna <Reyna.Arroyo@chicagopolice.org>
**CC:** Jones, Sheree <Sheree.Jones@chicagopolice.org>; Smith, Latonya Y. <Latonya.Smith@chicagopolice.org>; Arjmand, Susan B. <Susan.Arjmand@chicagopolice.org>
**Subject:** Expiration of Non-IOD Limited Duty

Officer Arroyo, Reyna #45919,

Your Non-IOD limited duty status will expire 30Mar19. Please schedule an appointment with Supervisor Jones at 312 745 5021 no later than 01 MAR 2019 in regards to your chosen option outlined in the Limited Duty Notification Letter-B mailed to you on 25Jan19.

P.O. Marilyn Bishop
Disability Liason
Medical Services Section
Ph:   312 745 5000
Fax:  312 745 6955

**ARROYO.DEF.003186**

# EXHIBIT W

*Comm*

BUREAU OF ORGANIZATIONAL DEVELOPMENT     DATE: *03 SEP 19*
HUMAN RESOURCE DIVISION
MEDICAL SECTION

TO:     *ARROYO, REYNA*                              *45919*
        (Name)                              (Employee #)
        ███████████████████                 *18014*
        (Street)                            (Star #)

        Chicago, IL 606 ███████             *010 / 122*
                (Zip)                       (District/Unit)

Please be advised that the records of the Medical Section of the Chicago Police

Department indicate that as of *03 SEP 19* you have used *290*
                            (Date)                  (Number)

Days of the maximum allowable for your current <u>Duty/Non-Duty</u> medical absence:

If you are not able to return to work, your last day on the Medical Roll is projected

to be  *17 NOV 19* .
            (Date)

If you do not return to Duty before you exhaust these paid medical absence benefits, you
will be removed from the Active Roll. Your options at that time will include Retirement,
Resignation or Leave of Absence, such as to apply for Disability Pension benefits.

You are encouraged to consider your situation and discuss your medical condition,
treatment options and potential to return to Duty with your physician as soon as possible.
Keep the Medical Section advised as information becomes available. The Medical
Section can assist you as questions arise in coordinating your medical status with your
employment status.

                                    Medical Section
                                    P.O. Marilyn Bishop #17542

CC:     Unit Commander
        Unit Timekeeper
        Medical File

(Revised May 2017)

ARROYO.DEF.003534

# EXHIBIT X

**From:** Bishop, Marilyn Y. on behalf of Bishop, Marilyn Y. <Marilyn.Bishop@chicagopolice.org>
**Sent:** Friday, March 20, 2020 12:08 PM CDT
**To:** Reyna Arroyo <​███████████████​>
**CC:** Ford, Christi <Christi.Ford@chicagopolice.org>; susan.rajmand@chicagopolice.org
<susan.rajmand@chicagopolice.org>
**Subject:** Re: P.O. Arroyo- Disability Application

Afternoon,
The Medical Section documents required for application for LOA/Disability have been emailed to:
reyna.arroya@chicagopolice.org
today at 1200hrs

---

**From:** Reyna Arroyo <​███████████████​>
**Sent:** Friday, March 20, 2020 8:55 AM
**To:** Bishop, Marilyn Y. <Marilyn.Bishop@chicagopolice.org>
**Cc:** Ford, Christi <Christi.Ford@chicagopolice.org>; susan.rajmand@chicagopolice.org <susan.rajmand@chicagopolice.org>
**Subject:** P.O. Arroyo- Disability Application

Good morning Officer Bishop,

Being that I've not received any news from the F.O.P./arbitration regarding my 2016 Injury, I am being force to apply for
disability. Though, being that I am a cancer survivor & asthma sufferer, I am scare going outside. Any possible way you
can e-mail paperwork please. If not, please let me know what steps to take. I need money in order to sustain my eleven
year old son and myself.

Thank you,

P.O. Arroyo

---------- Forwarded message ---------
**From:** Mail Delivery Subsystem <mailer-daemon@googlemail.com>
**Date:** Fri, Mar 20, 2020, 8:32 AM
**Subject:** Delivery Status Notification (Failure)
**To:** ███████████████



### Address not found

Your message wasn't delivered to
**marilyn.bishop@chicagipolice.org** because the domain
chicagipolice.org couldn't be found. Check for typos or
unnecessary spaces and try again.

The response was:
DNS Error: 464689 DNS type 'mx' lookup of chicagipolice.org responded with code NXDOMAIN Domain name not
found: chicagipolice.org

---------- Forwarded message ----------
From: Reyna Arroyo <​███████████████​>
To: marilyn.bishop@chicagipolice.org
Cc: "Ford, Christi" <Christi.Ford@chicagopolice.org>, susan.rajmand@chicagopolice.org
Bcc:
Date: Fri, 20 Mar 2020 08:32:35 -0500
Subject: Re: Re:

**ARROYO.DEF.003193**

Good morning Officer Bishop,

Being that I've not received any news from the F.O.P./arbitration
regarding my 2016 Injury, I am being force to apply for disability.
Though, being that I am a cancer survivor with asthma I am scare going
outside to.  Any possible way you can e-mail paperwork please.  If not,
please let me know what steps to take. I need money  in order to sustain my
eleven year old son and myself.

Thank you,

P.O. Arroyo

On Fri, Mar 20, 2020, 7:59 AM Reyna Arroyo <████████████████> wrote:

> Will do.
>
> Thank you. Be safe.
>
> P.O. Reyna Arroyo
>
> On Fri, Mar 20, 2020, 7:19 AM Smith, Latonya Y. <
> Latonya.Smith@chicagopolice.org> wrote:
>
>> Good Morning,
>>
>> You can call PO Bishop, and ask her, I can't sending the forms via email:
>>
>> PO Bishop: 312-745-5124
>>
>> LaTonya Smith BSN, RN
>> Occupational Health Nurse
>> Chicago Police Department
>> Medical Services Section
>> (P) 312-745-5041
>> (F) 312-745-6955
>> Latonya.smith@chicagopolice.org
>> ------------------------------
>> *From:* Reyna Arroyo <████████████████>
>> *Sent:* Wednesday, March 18, 2020 11:23 AM
>> *To:* Smith, Latonya Y. <Latonya.Smith@chicagopolice.org>
>> *Cc:* Ford, Christi <Christi.Ford@chicagopolice.org>
>> *Subject:* Re: Re:
>>
>> Good morning,
>>
>> Any possible way you can scan required chart paperwork (for the release
>> copy to the Pension Board) and sent to me for signature.
>>
>> I have a child at home and no sitter.  Plus, I'm congested/ashtma
>> sufferer and I am afraid of going out.
>>
>> Thank you,
>>
>> P.O. Reyna Arroyo
>>
>> On Fri, Mar 13, 2020, 9:15 AM Smith, Latonya Y. <
>> Latonya.Smith@chicagopolice.org> wrote:
>>
>> Good Morning,
>> Come into MSS anytime between 0800-1100 and  1300-1500
>>
>> LaTonya Smith BSN, RN
>> Occupational Health Nurse

>> Chicago Police Department
>> Medical Services Section
>> (P) 312-745-5041
>> (F) 312-745-6955
>> Latonya.smith@chicagopolice.org
>> -------------------------------
>> *From:* Reyna Arroyo <████████████████>
>> *Sent:* Thursday, March 12, 2020 8:55 PM
>> *To:* Smith, Latonya Y. <Latonya.Smith@chicagopolice.org>
>> *Subject:* Re:
>>
>> Thank you. Can I come in tomorrow, or do I need to make an appointment?
>>
>> Please let me know.
>>
>> Thank you,
>>
>> Reyna
>>
>> On Thu, Mar 12, 2020, 4:15 PM Smith, Latonya Y. <
>> Latonya.Smith@chicagopolice.org> wrote:
>>
>> Good Evening,
>> I only did your PAR form, You must come in and sign for your chart to be
>> copy and delivered to the Pension broad.
>>
>>
>> LaTonya Smith BSN, RN
>> Occupational Health Nurse
>> Chicago Police Department
>> Medical Services Section
>> (P) 312-745-5041
>> (F) 312-745-6955
>> Latonya.smith@chicagopolice.org
>> -------------------------------
>> *From:* Reyna Arroyo <████████████████>
>> *Sent:* Thursday, March 12, 2020 2:31 PM
>> *To:* Smith, Latonya Y. <Latonya.Smith@chicagopolice.org>
>> *Subject:*
>>
>> Good afternoon Mrs. Smith,
>>
>> Hope you are well. Per our phone conversation held on 11 FEB 2020, did
>> you get a chance to turn in disability on my behalf? If so, what's the
>> process? Time? Has it been approved?
>>
>> Please let me know.
>>
>> Thanks and God bless,
>>
>> Reyna
>>
>> ** EXTERNAL EMAIL WARNING ** This email originated outside of the Chicago
>> Police Department. **NEVER CLICK, DOWNLOAD, or OPEN** unexpected links or
>> attachments. **NEVER** provide User ID (PC Number) or Password or other
>> sensitive information. If this email seems suspicious, contact the City of
>> Chicago Help Desk at 312-744-DATA (312-744-3282) or follow instructions on
>> THE WIRE to report Junk Email or SPAM.
>>
>>
>> -------------------------------
>> This e-mail, and any attachments thereto, is intended only for use by the
>> addressee(s) named herein and may contain legally privileged and/or
>> confidential information. If you are not the intended recipien
----- Message truncated -----

** EXTERNAL EMAIL WARNING ** This email originated outside of the Chicago Police Department. **NEVER CLICK,
DOWNLOAD, or OPEN** unexpected links or attachments. **NEVER** provide User ID (PC Number) or Password or other sensitive
information. If this email seems suspicious, contact the City of Chicago Help Desk at 312-744-DATA (312-744-3282) or follow

ARROYO.DEF.003195



instructions on THE WIRE to report Junk Email or SPAM.

ARROYO.DEF.003196

# EXHIBIT Y

**From:** Reyna Arroyo ▪
**Sent:** Monday, March 23, 2020 4:43 PM CDT
**To:** Jackson, Jermeka J. <Jermeka.Jackson@chicagopolice.org>
**CC:** Landowski, Robert F. <Robert.Landowski@chicagopolice.org>; Brown, Nicole <Nicole.Brown2@chicagopolice.org>
**Subject:** Re: Cancelation of LOA documents
**Attachment(s):** "Outlook-gcjtp5ck.png"

Good afternoon.

Thank you for your email.

P.O. Reyna Arroyo

On Mon, Mar 23, 2020, 4:05 PM Jackson, Jermeka J. <Jermeka.Jackson@chicagopolice.org> wrote:
Good afternoon Officer Arroyo,

The Human Resources Division is in receipt of your email.

It is to my understanding that you have exhausted all medical IOD time allotted to you. At this time you will be placed in an Unpaid LOA status while you petition the Police Pension Board for Duty Disability Benefits.

If you have any questions please do not hesitate to contact me

Thanks
*Jermeka J. Jackson*

Manager of Police Personnel
Chicago Police Department
Human Resources Division
3510 S Michigan Ave 4th Floor
Employment and Records Services Section
312-745-5310
*jermeka.jackson@chicagopolice.org*

---

**From:** Brown, Nicole <Nicole.Brown2@chicagopolice.org>
**Sent:** Monday, March 23, 2020 3:53 PM
**To:** Landowski, Robert F. <Robert.Landowski@chicagopolice.org>
**Cc:** Jackson, Jermeka J. <Jermeka.Jackson@chicagopolice.org>
**Subject:** Re: Cancelation of LOA documents

Director-fyi,

Nicole Brown
Administrative Services Officer I
Chicago Police Human Resources Division
Employee Services Section
312-745.5310 ex 84344

---

**From:** Reyna Arroyo ▪
**Sent:** Monday, March 23, 2020 3:36 PM
**To:** Brown, Nicole <Nicole.Brown2@chicagopolice.org>
**Cc:** Bishop, Marilyn Y. <Marilyn.Bishop@chicagopolice.org>; Ford, Christi <Christi.Ford@chicagopolice.org>
**Subject:** Re: Cancelation of LOA documents

Good afternoon,

I am going to hold off on that VOLUNTARY leave-of-absence request for now. I am waiting for the arbitration verdict for my 2016 shoulder work injury. Is supposed to be resolved sometime this month (had arbitration hearing in January 2020).

I am making this changed request because I have been under pressure and things were not clear when speaking to you. As noted in my e-mails, I am off work due to a 2016 injury and wanting to apply for I.O.D. DISABILITY vs. Plain DISABILITY.

**ARROYO.DEF.003386**

My last limited duty day at work was March 31, 2019. My last day medical roll day was 19th November/December 2019. I have not been getting pay since then. I have been using my 11 year old sons college fund to sustain him and myself (single mother).

In hopes to comeback to work before November, I had shoulder surgery on June 2016 (own insurance). Had therapy for approximately 4 months and did not work. Turns out, I required a second surgery due to much scar tissue. It was scheduled on 19 November 2019, but my main physician canceled operation with the orthopedic due that I had swollen ankles, stress, asthma, & other medical issues.

Finally, I want to reiterated that am off because of my 2016 shoulder injury pending approval. Per E.E.O. I should wait arbitrations outcome. If the Department is ordering me to surrender my equipment, canceling my medical insurance, or if I have pay any dues, or other due money, please put in writing.

I know things are complicated and don't mean to add on, just asking for more time.

Thank you and please be safe,

P.O. Reyna Arroyo –45919

On Fri, Mar 20, 2020, 5:53 PM Reyna Arroyo · █████████████ wrote:
> There is no attachment.

> Please resend.

> Thank you,

> Reyna

> On Fri, Mar 20, 2020, 3:16 PM Brown, Nicole <Nicole.Brown2@chicagopolice.org> wrote:
>> Hi Officer Arroyo,

>> I have attached the LOA documents we discussed, which at this point have been extended thru May 15 2020. Please remember to call Bob Crawford. 312-744-3891 along with Benefits at 877.299-5111.

>> Also please remember to have someone bring in your star, shield and badge.

>> Feel free to call me with questions.

>> Take care.


>> Nicole Brown
>> Administrative Services Officer I
>> Chicago Police Human Resources Division
>> Employee Services Section
>> 312-745.5310 ex 84344



This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

** EXTERNAL EMAIL WARNING ** This email originated outside of the Chicago Police Department. **NEVER CLICK, DOWNLOAD, or OPEN** unexpected links or attachments. **NEVER** provide User ID (PC Number) or Password or other sensitive information. If this email seems suspicious, contact the City of Chicago Help Desk at 312-744-DATA (312-744-3282) or follow instructions on THE WIRE to report Junk Email or SPAM.

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

\*\* EXTERNAL EMAIL WARNING \*\* This email originated outside of the Chicago Police Department. \*\*NEVER CLICK, DOWNLOAD, or OPEN\*\* unexpected links or attachments. \*\*NEVER\*\* provide User ID (PC Number) or Password or other sensitive information. If this email seems suspicious, contact the City of Chicago Help Desk at 312-744-DATA (312-744-3282) or follow instructions on THE WIRE to report Junk Email or SPAM.

**ARROYO.DEF.003388**

# EXHIBIT Z

| Chicago Police Department | **Employee Resource    E01-04** |
|---|---|
| **CITY OF CHICAGO REASONABLE ACCOMMODATIONS POLICY** | |

| **ISSUE DATE:** | 23 September 2019 | **EFFECTIVE DATE:** | 23 September 2019 |
|---|---|---|---|
| **RESCINDS:** | 5 May 2009 version | | |
| **INDEX CATEGORY:** | Employee Rights and Responsibilities | | |

## I.    PURPOSE

This directive:

A.    sets forth the City of Chicago's policy of providing equal access to employment opportunities by providing reasonable accommodations to qualified applicants and employees with disabilities.

B.    describes the Chicago Police Department's obligations under the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) and other disability laws.

C.    defines terminology related to persons with disabilities.

D.    describes Department procedures for members requesting an accommodation under the provisions of the ADAAA.

E.    *satisfies CALEA law enforcement in chapter 22.*

## II.    POLICY

The City of Chicago is committed to providing equal access to employment opportunities for individuals with disabilities. The City of Chicago recognizes that individuals with disabilities may need reasonable accommodations to participate in or benefit from employment opportunities. It is the policy of the City of Chicago to provide reasonable accommodations to qualified applicants and *Department members* with disabilities *or who are pregnant*.

**NOTE:**    *Confidentiality must be maintained. A request for reasonable accommodation may only be disclosed to those individuals who have a legitimate need to know about the request in order to evaluate or implement it.*

## III.    AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT OF 2008 (ADAAA)

The ADAAA, effective 1 January 2009, amends the Americans with Disabilities Act of 1990. This law prohibits discrimination in state and local government programs and activities on the basis of disability. It guarantees equal opportunity for individuals with disabilities in public accommodations, employment, transportation, state and local government services, and telecommunications. The ADAAA gives civil rights protections to qualified individuals and protects them from discrimination on the basis of disability in regard to job application procedures; the hiring, advancement, or discharge of *Department members*; *member* compensation; job training; and other terms and conditions of employment. State and local laws require similar protections.

## IV.    REQUEST FOR REASONABLE ACCOMMODATION

A.    Member's Responsibilities

To request a reasonable accommodation, a Department member will:

1.    contact their immediate supervisor, the Department Disability Liaison, Human Resources Division, *or the City of Chicago Department of Human Resources Disability Officer* to request an accommodation.

**ARROYO.DEF.000168**

2. complete the City of Chicago Reasonable Accommodation Request form as soon as possible, including information identifying the specific limitations and the accommodation that will enable the member to perform the essential functions of their position.

3. provide medical documentation that:

   a. identifies the member's medical impairment *or pregnancy*;

   b. certifies that the impairment rises to the level of a disability by specifically identifying the major life activity that is substantially limited by the impairment and identifying how the major life activity is substantially limited.

B. Immediate Supervisor's Responsibilities

The requesting member's immediate supervisor will:

1. submit a To-From-Subject report before the end of their tour of duty directly to the Disability Liaison when a member requests an accommodation. The request for accommodation may be written or oral. The To-From-Subject report will contain the following items:

   a. name of member requesting accommodation,

   b. star number (for sworn members) and employee number of *any Department member* requesting accommodation,

   c. nature of the requested accommodation,

   d. date and time that the *Department* member made the request for accommodation.

2. notify the Disability Liaison telephonically, indicating that the To-From-Subject report has been submitted.

3. maintain confidentiality.

4. provide the member with a copy of the City of Chicago Reasonable Accommodation Request Form and instruct the *Department* member to complete and return the form as soon as possible.

5. respond promptly to requests from the Disability Liaison *and/or the City of Chicago Department of Human Resources Disability Officer* for information concerning the accommodation request.

C. Disability Liaison's Responsibilities

The Disability Liaison will:

1. *promptly notify and send all documentation to the City of Chicago Department of Human Resources Disability Officer.*

2. assist and provide guidance with requests from Department members.

3. *assist the City of Chicago Department of Human Resources Disability Officer as needed.*

4. maintain confidentiality.

5. *promptly* provide a City of Chicago Reasonable Accommodation Request form to the member requesting an accommodation whether the request is received from the *Department* member or the *Department* member's immediate supervisor.

D. *The City of Chicago Department of Human Resources Disability Officer's Responsibilities*

1. *review documentation submitted by the member requesting an accommodation to determine if:*

   a. *a medical impairment or pregnancy exists;*

   b. *a major life activity is substantially limited;*

ARROYO.DEF.000169

      c.   *the Department member is a qualified individual with a disability or pregnancy and can perform the essential functions of their position with or without an accommodation; and*

      d.   *there is a reasonable accommodation(s) that will enable the Department member to perform the essential functions of their position.*

2.   *engage in the interactive process with the Department member seeking an accommodation.*

3.   *notify the Department member in writing of the determination whether:*

      a.   *the accommodation request will be granted or an alternative accommodation is being offered that will allow the Department member with a disability or pregnancy to perform the essential functions of their position.*

      b.   *the member's request for reasonable accommodation has been denied .*

## V.   AVAILABILITY OF CITY OF CHICAGO REASONABLE ACCOMMODATION REQUIRED FORMS

A.   *The City of Chicago Reasonable Accommodation Request form is available from the Disability Liaison.*

B.   *The City of Chicago Reasonable Accommodation Request form is also available online through the Human Resources Division's intranet site or through the City of Chicago Department of Human Resources web site.*

(Items indicated by *italics/double underline* have been added or revised.)

Authenticated by:

                    Eddie T. Johnson
                    Superintendent of Police

19-029 PMD

**ARROYO.DEF.000170**

# EXHIBIT AA

| Chicago Police Department | Employee Resource  E01-16 |
|---|---|
| **LEAVES OF ABSENCE AND RESIGNATIONS** | |

| ISSUE DATE: | 07 January 2019 | EFFECTIVE DATE: | 07 January 2019 |
|---|---|---|---|
| RESCINDS: | 02 June 2017 Version | | |
| INDEX CATEGORY: | 01 - Employee Rights and Responsibilities | | |
| CALEA: | | | |

## I. PURPOSE

This directive:

A.  delineates policy and procedures relative to:

   1.  end of employment interviews;

   2.  leaves of absence; and

   3.  resignations.

B.  *continues* the:

   1.  City of Chicago Department of Human Resources End of Employment Form (PER 78);

   2.  City of Chicago Request For Paid Administrative Leave or Absence Form; and

   3.  Notice To Employees Leaving Employment form (CPD-62.144).

C.  *introduces the automated Personnel Action Request (PAR) for leave of absence requests*.

D.  satisfies the CALEA standards in Chapters 22 and 26.

## II. LEAVE OF ABSENCE

A.  General Policy Governing Leaves of Absence

   1.  With the approval of the Superintendent, the Human Resources Division may grant to career-service members and nonunion probationary career-service members leaves of absence. Probationary AFSCME, SEIU Unit II, *and Illinois Nurses Association* employees are not entitled to take personal, union, and, if applicable, paid parental leaves of absence. AFSCME, SEIU Unit II, *and Illinois Nurses Association* members must meet the qualifications for FMLA to qualify and to be granted a medical or parental leave.

   2.  An *automated* Personnel Action Request will be *generated* for all leave of absence requests. *The automated PAR application can be accessed via CLEAR Applications by utilizing the member's assigned CLEAR user name and password (PC Login).* Members will comply with the instructions contained within the *automated* Personnel Action Request (PAR) application concerning required approval and additional required forms.

   **NOTE:**   *Members are advised to print a copy of a submitted automated PAR for their records.*

   3.  Leave of absence requests must be submitted to the member's unit commanding officer at least 45 days prior to the requested effective date of the leave, except in cases of emergency.

   **NOTE:**   Other than in cases of an emergency, PAR forms received less than 45 days prior to the effective date of the leave may not be granted.

ARROYO.DEF.004365

4. Members requesting a leave of absence that requires a reason for the leave will be specific in the narrative when writing the reason for the leave. Any general descriptions will not be granted.

5. Sworn Department members remain bound by the rules, regulations, directives, and orders of the Chicago Police Department while on a leave of absence or duty disability. A sworn member of the Department on a leave of absence or duty disability will not:

   a. exercise the power of arrest or any other police powers of a sworn Department member;

   b. carry a firearm as a sworn Department member;

   c. be required to appear at court hearings in cases in which they were the arresting officer when such hearings are scheduled during the period of time the member will be on a leave of absence or duty disability, unless subpoenaed.

6. A leave of absence may be canceled by the Superintendent upon evidence that the reason stated for the leave was fraudulent or has, as a matter of fact, ceased to exist. The member will, upon request, have the right to a hearing by the Director, Human Resources Division, prior to the cancellation of the leave. The Superintendent may seek to have a member on leave of absence discharged and the right to reinstatement withdrawn.

7. If a member fails to return to work upon expiration of his or her leave of absence, without making application for extension or without being placed on a reinstatement list, it will be considered that the member resigned effective as of the last day of the authorized leave of absence. The Commissioner, Department of Human Resources, will notify the member that the resignation has been effected by the action of the member.

8. *Members requesting an extension of any leave of absence will be responsible for contacting the Employee Services and Assignment Section, Human Resources Division, for an extension of a leave of absence. Members requesting a leave extension will also complete and submit a Personnel Action Request (CPD-11.612) formset along with the City of Chicago Department of Human Resources, Request for Leave of Absence form (PER-73-A). A request for an extension of any leave of absence will be made at least 30 days prior to the expiration of the leave.* An extension of leave will not be approved unless it is consistent with the administrative purposes of City government. Any such extension must be approved by both the Superintendent and the Commissioner, Department of Human Resources.

9. Any member who is on a leave of absence from City service will not be considered in the certification and appointment from promotional eligibility lists. Members on leave will not be allowed to bid for posted positions.

10. Sworn members who request a leave of absence to accept an appointment to a non-command-staff civilian position after 1 January 1993 will be considered civilian members for the purpose of payroll and timekeeping benefits.

11. According to respective collective bargaining agreements, certain leaves may affect the member's continuous service date and/or the members' years of service for pension calculations. Members may contact their pension fund directly with any inquiries.

B. A member requesting an original leave of absence for personal or medical purposes for 30 days or more or leave to accept a non-career-service position will:

1. *generate and complete an automated Personnel Action Request* prior to the effective date of the requested leave, except in case of an emergency; and

2. *attach* a City of Chicago Department of Human Resources Request for Leave of Absence form (PER-73-A) to accompany the *automated* Personnel Action Request; and

3. *attach* a doctor's statement in the case of medical leave of absence; and

        4.    *attach* a To-From-Subject report specifically detailing the reason for the request, if requesting a leave of absence for personal reasons; *and*

        5.    *submit through the chain of command.*

C.    Unit commanding officers will ensure:

        1.    the *automated* Personnel Action Request *is reviewed for completeness and approved or denied in a timely manner*.

              **NOTE:**          Unit commanding officers can not deny leaves of absence for medical, military, FMLA, or disability reasons.

        2.    upon approval of the *submitted automated* Personnel Action Request, the original PER-73-A forms are sent to the *Employee Services and Assignment Section*, Human Resources Division, at least fourteen scheduled working days prior to the effective date of the leave, if possible.

        3.    *to print a copy of the submitted automated Personnel Action Request and retain it in the unit personnel file.*

              **NOTE:**          The Payroll Section, Finance Division, is *automatically* notified when a member requests a leave of absence.

        4.    *in the event of a member's disability leave of absence, the original Time and Attendance Record (CPD-11.602) will be forwarded to the Centralized Timekeeping Unit (Unit 222), in accordance with the provisions of the directive entitled "*Payroll and Timekeeping - Attendance.*" For all other leaves, the original Time and Attendance Record will remain in the member's unit of assignment.*

        5.    the unit personnel file, which will include the member's Personnel Card (CPD-11.600) and a photocopy of the Time and Attendance Record, is forwarded to the Human Resources Division.

D.    For leave of absence requests:

        1.    the Director, Human Resources Division, will notify the Chief, Bureau of Internal Affairs.

        2.    The Chief, Bureau of Internal Affairs, will ensure a proper evaluation of the requested leave is conducted consistent with bureau standard operating procedures.

        3.    The Director, Human Resources Division, will forward the request through the chain of command to the Superintendent as needed.

E.    Prior to the effective date of a leave of absence for 30 days or more, the unit / district commander or the Director, Human Resources Division, will ensure that all Department equipment issued to a member is collected and returned to the Department.

        1.    The following Department equipment will be recovered by the Human Resources Division:

              a.    Star;

              b.    Hat Shield;

              c.    Identification Card (Sworn and Civilian Members);

              d.    Badge (Applicable Civilian Members).

        2.    The Equipment and Supply Section will recover the gas mask / respirator, if one has been assigned to the member.

              **NOTE:**          Members are not required to return a Department-issued helmet and face shield prior to the effective date of the leave of absence.

ARROYO.DEF.004367

NOTE:    When a sworn member is placed on disability leave of absence by the Medical Services Section, the commanding officer, Medical Services Section, will ensure that the member is ordered to turn in all Department equipment prior to the first day of the leave. The Medical Section will immediately notify the unit / district commander that the member was ordered to turn in all Department property.

F.    Leave Extension

1.    *Members requesting an extension of any leave of absence will be responsible for contacting the Employee Services and Assignment Section, Human Resources Division, for an extension of a leave of absence. Members requesting a leave will also complete and submit a Personnel Action Request (CPD-11.612) formset along with the City of Chicago Department of Human Resources, Request for Leave of Absence form (PER-73-A). A request for an extension of any leave of absence will be made at least 30 days prior to the expiration of the leave.*

2.    An extension of leave will not be approved unless it is consistent with the administrative purposes of City government. Any such extension must be approved by both the Superintendent and the Commissioner, Department of Human Resources.

3.    Failure to report for reinstatement or request an extension will result in acceptance of the member's resignation under terms of the leave of absence. It is the member's responsibility to obtain and submit the required forms to the Human Resources Division prior to the expiration of the leave. All requested extensions for leaves of absence must be forwarded to the Chief, Bureau of Internal Affairs, who will ensure a proper evaluation of the requested extension is conducted consistent with bureau standard operating procedures.

G.    When a leave has been properly granted and when the member is prepared to return to work in conformance with the terms and conditions of the leave of absence, the member will be:

1.    restored to his or her position in the career service, provided that the position is available, or

2.    placed on a reinstatement list if a position is not available at the time of the termination of the leave, or

3.    reinstated subject to lay-off and recall provisions of the applicable collective bargaining agreements.

NOTE:    All requests for reinstatement will be forwarded to the Chief, Bureau of Internal Affairs, who will ensure that the request for reinstatement is properly evaluated consistent with bureau standard operating procedures.

H.    Military Leave

For Department policy regarding military leave of absence, refer to the Department directive entitled "Military Leave Of Absence Act."

I.    Marriage Leave / Civil Union Leave

1.    At the discretion of the commanding officer, the following members may be granted marriage leave/civil union leave for a period not to exceed three consecutive working days:

a.    sworn members

b.    probationary police officers

c.    members covered by the AFSCME agreement

d.    members covered by the Unit II agreement

e.    non-union civilian members.

**EXCEPTION:** _Members of the Illinois Nurses Association are not entitled for marriage leave / civil union leave as indicated in their respective collective bargaining agreement._

2. A request for a marriage leave/civil union leave must be requested by submitting an _automated_ Personnel Action Request (PAR) at least twenty-four hours in advance. The _automated_ PAR must be approved by the unit commanding officer. The unit commanding officer will notify the timekeeper of all marriage leave/civil union leave approvals.

J. Training

A leave of absence with pay may be granted for attendance at a college, university, or other training facility for the purpose of training in subjects related to the work of the member as part of an approved training program. If such leave is for one month or less, it will be subject to, reported to, and approved by the Commissioner, Department of Human Resources. If such leave is for more than one month, the leave must be approved by the Mayor.

K. Disability

A leave of absence for disability may be granted for sworn members in accordance with the provisions of the directive entitled "Payroll and Timekeeping - Attendance." Personal disability leave of absence for civilian members may be granted under terms of applicable union agreements or Department of Human Resources rules in accordance with provisions of the directive entitled "Payroll And Timekeeping - Attendance."

L. Paid Administrative Leave and Administrative Absence

This policy defines when City of Chicago employees may be placed on Paid Administrative Leave or Absence for administrative reasons. This policy does not change or affect the policies and procedures governing sick leave, duty disability, parental leave, family and medical leave, military leave, Victims' Economic Security and Safety Act (VESSA) leave, bereavement leave, jury duty, personal leave, vacation leave, or unpaid leave of absence.

1. Paid administrative leave is an absence from work with pay for a salaried administrative or professional employee, when such leave is granted within the discretion of the Department head. Eligible employees include the following:

   a. those in positions:

      (1) Grade BX-12 or higher;

      (2) Grade GY-4 or higher;

      (3) that have Special Rates; and

   b. those not covered by a collective bargaining agreement.

   **NOTE:** Eligible members seeking a paid administrative leave will send a To-From-Subject report to the Superintendent of Police requesting the leave. Paid administrative leave **will not** be granted to compensate non-represented employees who worked hours outside their normal tour of duty.

2. Administrative Absence is an absence from work with pay for an employee who is asked NOT to work (with reason) by the authority of the Department head. Such absences are normally related to disciplinary matters or situations where an employee is under investigation. An employee may be placed on an Administrative Absence under the following circumstances only:

   a. pending an internal review or investigation where it is deemed necessary to remove the employee from the workplace while the review or investigation ensues;

   b. pending a discharge or termination for disciplinary reasons where the discharge or termination process has been initiated;

ARROYO.DEF.004369

      c.     a special circumstance or emergency situation where it is in the City's best interest to place the employee on a paid leave.

3.    Requesting Paid Administrative Leave or Absence

    a.    For all Paid Administrative Leaves or Absences, the Superintendent will submit a City of Chicago Request for Paid Administrative Leave or Absence form ("Request Form") to both the Budget Director and the Mayoral Chief of Staff for approval.

        **NOTE:**      A justification memo that explains the need for placing the employee on paid leave must be attached along with any supporting documentation. **Requests will be automatically denied if the justification memo and supporting documentation are not provided.**

    b.    The Superintendent will indicate on the request form the anticipated duration of the Paid Administrative Leave or Absence, provided that the Paid Administrative Leave or Absence may only be granted for a maximum of ten days per request.

    c.    The approval of both the Budget Director and the Mayoral Chief of Staff is required for the Superintendent to place an employee on Administrative Leave or Absence.

    d.    Upon approval from both the Budget Director and the Mayoral Chief of Staff and before the employee begins the Paid Administrative Leave or Absence, the Superintendent will provide written notice to the Commissioner, Department of Human Resources, including the name of the employee and the start and end dates of the employee's approved Paid Administrative Leave or Absence.

        **NOTE:**      The Superintendent will ensure a copy of the written notice sent to the Commissioner, Department of Human Resources, is sent to the affected member's unit time keeper.

4.    During the Paid Administrative Leave or Absence

    a.    An employee on Paid Administrative Leave or Absence will retain his or her seniority and continue to accrue sick time, vacation time, and pension credit while on leave.

    b.    If the Superintendent determines that the need for the Paid Administrative Leave or Absence will extend beyond the stated anticipated duration of the leave as indicated on the request form, the Superintendent must submit an additional request form to both the Budget Director and the Mayoral Chief of Staff for an extension. Such request will be made as soon as possible but no less than two business days prior to the extension of the originally requested leave.

    c.    If an extension is approved, the Superintendent will provide written notice of the updated leave dates to the Commissioner, Department of Human Resources, as soon as possible prior to the expiration of the originally requested leave.

5.    Return From the Paid Administrative Leave or Absence

    a.    The Superintendent will provide the employee with written notice of no less than two business days when the Paid Administrative Leave or Absence will be discontinued and a date when the employee is to return to work.

    b.    If an employee fails to return to work on the date that the Paid Administrative Leave or Absence is discontinued, the employee will be considered absent without leave and subject to disciplinary action up to and including discharge.

M.    Union Board Member Leave - Fraternal Order of Police, Lodge Number 7

ARROYO.DEF.004370

1. Sworn members that have been granted a paid leave from the Department to perform full-time duties as a union board member for the Fraternal Order of Police, Lodge Number 7, will have the option to:

   a. retain their full police powers by successfully qualifying with their prescribed duty weapon during the annual Prescribed Weapon Qualification Program and Taser Re-Certification Program, or

   b. surrender their police powers.

2. Full-time, sworn union board members who surrender their police powers, in lieu of qualifying annually with their prescribed duty weapon, will be:

   a. issued an identification card from the Department identifying them as an official union representative which will afford them access to police facilities for representation of their union members.

   b. reinstated with full police powers when the full-time duties as a union board member have ceased or members request to be reinstated with police powers, provided the requirements for reinstatement are fulfilled. Union board members who request to be reinstated with police powers will:

      (1) notify the Director, Human Resources Division, in writing, via the union board president, identifying the date reinstatement is anticipated;

      (2) successfully qualify with their prescribed duty weapon, if not currently qualified;

      (3) exchange their Department-issued identification card identifying them as an official union representative to the Director, Human Resources Division, for a sworn member identification card; and

      (4) follow all other requirements for returning from union leave, as delineated in this directive.

N. Family and Medical Leave Act (FMLA)

1. To be eligible for FMLA leave, an employee must:

   a. be employed by the City for at least twelve months. The twelve months do not need to be consecutive as long as the twelve months occurred sometime in the last seven years; and

   b. have worked at least 1,250 hours during the previous twelve-month period. Hours worked does not include paid time off, including sick leave, vacation time, or any other paid leave where the employee is not actively working.

2. FMLA leave may be taken for one or more of the following reasons:

   a. For the birth and care of the employee's newborn child within one year of the birth of that child;

   b. For placement with the employee of a child for adoption or foster care within one calendar year of the adoption or placement;

   c. To care for the employee's spouse, child, or parent who has a serious health condition, including incapacity due to pregnancy and for prenatal medical care;

   d. To take leave when the employee's own serious health condition makes the employee unable to perform the essential functions of his or her job, including incapacity due to pregnancy and for prenatal medical care;

e.  Any qualifying exigency arising out of the fact that the employee's spouse, son, daughter, or parent is a covered military member on covered active duty; or

f.  To care for a covered service member with a serious injury or illness if the employee is the spouse, son, daughter, parent, or next of kin of the service member.

3.  An employee is entitled to a total of twelve work weeks of unpaid leave in a calendar year for the reasons listed in II-N-2-a-e in this directive. Employees who meet the eligibility requirements stated in II-N-1 in this directive will receive the equivalent of twelve weeks in their FMLA bank for the duration of that leave year. Leave may be taken in increments of less than twelve weeks. Any leave taken for the reasons stated in II-N-2-a-e in this directive will be counted towards the twelve weeks of allowed FMLA leave.

4.  An employee is entitled to a total of twenty-six work weeks each year of unpaid leave for the reason stated in II-N-2-f of this directive. Employees who meet the eligibility requirements stated in II-N-1 in this directive will receive the equivalent of twenty-six weeks in their FMLA bank for the duration of that leave year. Leave may be taken in increments of less than twenty-six weeks. Any leave taken for the reason stated in II-N-2-f of this directive will be counted towards the 26 weeks of allowed FMLA leave.

**NOTE:**  An eligible employee's FMLA leave entitlement is limited to a combined total of twenty-six weeks of FMLA for any qualifying reasons; the employee is entitled to no more than twelve weeks of leave for FMLA-qualifying reasons other than to care for an injured or ill service member. For example, an eligible employee may take fourteen weeks for FMLA leave to care for an injured service member and twelve weeks of FMLA to care for a newborn, for a combined total of twenty-six weeks of leave.

5.  Requesting FMLA Leave

a.  Employees must provide forty-five calendar days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on an expected birth, placement for adoption or foster care, or planned medical treatment for a serious health condition of the employee or the employee's spouse, child, or parent.

**NOTE:**  When the leave is foreseeable and the employee fails to provide forty-five calendar days advance notice, approval of the leave may be delayed until thirty days after the employee provided the notice.

b.  If the need for the leave is not foreseeable because of lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, then the employee must give as much notice as possible under the particular circumstances involved. It is expected that an employee will give notice within two working days of learning of the need for leave, except in extraordinary circumstances.

c.  Department members will contact the Employment Section, Human Resources Division, to request FMLA leave. A FMLA leave application packet must be obtained from the Employment Section, Human Resources Division and submitted for each request for FMLA leave (including intermittent FMLA leave). Any questions regarding FMLA leaves may be directed to the Employment Section, Human Resources Division, or the U.S. Department of Labor.

O.  Victims' Economic Security and Safety Act (VESSA) Leave

ARROYO.DEF.004372

1.    VESSA allows Department members who are victims of domestic or sexual violence or who have family or household members who are victims of such violence to take up to twelve weeks of unpaid leave per any twelve-month period to seek medical help, legal assistance, counseling, safety planning, and other assistance. The Act also prohibits employers from discriminating against employees who are victims of domestic or sexual violence or who have family or household members who are victims of domestic or sexual violence.

2.    Department members may obtain the VESSA Leave application packet along with further instructions from the Employment Section, Human Resources Division. Any questions regarding VESSA Leaves may be directed to the Employment Section, Human Resources Division, or the Illinois Department of Labor.

P.    Paid Parental Leave Policy

This policy applies to nonunion City of Chicago employees, AFSCME members, and SEIU Unit II members. Such an employee must also be eligible to take FMLA leave in order to take paid parental leave.

1.    Eligible employees may receive the following paid parental leaves:

a.    up to four weeks paid maternity leave to a birth mother to recover from a nonsurgical delivery; or

b.    up to six weeks paid maternity leave to a birth mother to recover from a surgical delivery; or

c.    up to two weeks paid parental leave for the birth of a child or children to a spouse or domestic partner of the birth mother; or

d.    up to two weeks paid parental leave for the adoption of a child or children by the employee or the spouse or domestic partner of the employee.

2.    Paid Parental Leave and FMLA must run concurrently. In order to receive Paid Parental Leave, an employee must request and be approved for FMLA under this policy.

3.    Utilizing paid parental leave will not have a negative impact on employment status and may be combined with other earned paid time off such as vacation or sick time to achieve the maximum amount of paid time off from work while taking FMLA leave. Additional information regarding FMLA leave can be found in Rule XI of the City of Chicago Personnel Rules.

4.    Any fraudulent attempts to obtain paid parental leave may result in discipline up to and including discharge.

**NOTE:**    *Paid Parental Leave Policy does not apply to members of the Illinois Nurses Association.*

5.    Procedures

a.    Requesting Paid Maternity Leave

(1)    To request paid maternity leave, eligible employees must submit both a completed *City of Chicago Department of Human Resources Request for Leave of Absence form (PER-73-A) and a City of Chicago Application For Family and Medical Leave Or Personal Medical Leave form* to the Human Resources Division at least forty-five days prior to the date of the leave. To the extent forty-five days notice is not possible, the employee must submit these forms to the Human Resources Division as soon as possible. The Request for Leave of Absence Form will indicate both the Paid Length of Leave Requested and the length of any Not Paid Leave requested up to a maximum total of twelve weeks in accordance with FMLA.

ARROYO.DEF.004373

(2)    Employees requesting paid maternity leave must also submit an FMLA Medical Certification indicating the expected delivery date. If a surgical delivery is performed, the employee must submit another FMLA Medical Certification in order to qualify for six weeks of paid leave.

(3)    If an unforeseen medical condition requires an employee to stop working prior to the originally anticipated start date of the leave, the employee must provide as much advance notice as reasonably possible to the Human Resources Division by submitting doctor verification of the need to start the leave early.

b.    Requesting Paid Spousal/Domestic Partner Leave

(1)    To request paid spousal or domestic partner leave, eligible employees must submit a completed *City of Chicago Department of Human Resources Request for Leave of Absence form (PER-73-A), a City of Chicago Application For Family and Medical Leave Or Personal Medical Leave form*, and proof of marriage or domestic partnership at least forty-five days in advance of the leave to the Human Resources Division. To the extent forty-five days notice is not possible, the employee must submit these forms to the Human Resources Division as soon as possible. The Request for Leave of Absence Form will indicate both the Paid Length of Leave Requested and the length of any Not Paid Leave Requested up to a maximum total of twelve weeks in accordance with FMLA.

(2)    Employees requesting paid spousal or domestic partner leave must also submit either:

(a)    an FMLA Medical Certification For Family Member confirming the pregnancy of their spouse or domestic partner; or

(b)    a birth certificate within sixty days of taking the leave.

c.    Requesting Paid Adoption Leave

(1)    To request paid adoption leave, eligible employees must submit both a completed *City of Chicago Department of Human Resources Request for Leave of Absence form (PER-73-A)* and a *City of Chicago Application For Family and Medical Leave Or Personal Medical Leave* form to the Human Resources Division at least forty-five days in advance of the leave. To the extent forty-five days notice is not possible, the employee must submit these forms to the Human Resources Division as soon as possible. The Request for Leave of Absence Form will indicate both the Paid Length of Leave Requested and the length of any Not Paid Leave requested up to a maximum total of twelve weeks in accordance with FMLA.

(2)    Employees requesting paid adoption leave must also submit either:

(a)    a certification from an adoption agency confirming that the employee, or the employee's spouse or domestic partner (along with proof of the spousal or domestic partnership relationship), has been matched by the agency with a child or children; or

(b)    a birth certificate within sixty days of taking the leave confirming that the employee, or the employee's spouse or domestic partner (along with proof of the spousal or domestic partnership relationship), is the adoptive parent.

ARROYO.DEF.004374

d. During the Parental Leave

If an employee needs to request an extension of his or her leave of absence, the employee must complete another *City of Chicago Department of Human Resources Request for Leave of Absence form (PER-73-A)* at least thirty days prior to the expiration of the originally requested leave. To the extent thirty days notice is not possible, the employee must submit the request as soon as possible. If applicable, the employee will also provide a statement from his or her physician stating the reason for and the projected length of the extension.

e. Return From Parental Leave

(1) The first regularly scheduled workday after the expiration date of the requested leave is the scheduled return date for the employee. The employee must return to work on that date unless the employee requested and has been granted an extension of leave. Failure to report to work on the scheduled return date may cause the termination of the employee to be effectuated.

(2) Should an employee wish to return to work prior to the expiration of the leave, the employee must notify the Human Resources Division. The return date will be no later than the original date of the leave of absence.

(3) For medical leaves of absence, including maternity leaves, the employee must submit a complete release from his or her physician prior to the expiration of the leave to the Human Resources Division. The employee will submit the physician's statement of release at least ten calendar days prior to the expiration of the leave. To the extent ten days notice is not possible, the employee must submit these forms to the Human Resources Division as soon as possible prior to the expiration of the leave.

## III. OTHER EXCUSED ABSENCES

A. Sickness in Family (Sworn Personnel)

1. Policy

a. Sickness in family encompasses mother or father (including step), wife, husband, domestic partner, daughter or son (including step or adopted), sister or brother (including half or step), father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, grandparent, or grandchild. In unusual circumstances, the unit exempt member may extend this definition to include other relatives.

b. Generally, one day of sick leave with pay may be granted for sickness in family. The unit commanding officer may grant additional time off by allowing the use of compensatory time, baby furlough or vacation day (if applicable), by changing the member's day-off schedule, or by excusing the member without pay (non-disciplinary). Allowing a change in the member's day-off schedule will constitute a voluntary schedule change.

2. Procedures

a. A member requesting an authorized absence for sickness in family will notify the appropriate unit supervisor at least one hour prior to the member's scheduled reporting time or, if the unit is not staffed before reporting time, within fifteen minutes after the scheduled reporting time.

b. The supervisor who receives the call acknowledging the member's absence will immediately notify the member's unit supervisor.

ARROYO.DEF.004375

    c.    If a member requests an authorized absence for sickness in family for the scheduled working day preceding or following the compensatory or the annual furlough and its authorized extension, the unit supervisor will investigate and verify the specific circumstances of the request and submit a report to the unit commanding officer. The unit supervisor will include sufficient information to either justify or disapprove the request.

    d.    If the authorized absence for sickness in family is approved, *the member's daily duty status will reflect "Sickness in Family" on the Automated A&A Sheets consistent with the Department directive entitled* "Time and Attendance Record."

    e.    If the unit supervisor recommends that a member not be paid for an absence due to sickness in family, he or she will:

        (1)    *access CLEAR Applications - Personnel Suite to generate an automated PAR;*

        (2)    *select "Personnel Action Request";*

        (3)    *select "Absence Without Pay - AWOP" from the available type of actions;*

        (4)    *enter the affected member's information;*

        (5)    *enter the effective and end dates;*

        (6)    *select if a supervisor has been notified;*

        (7)    *attach supporting documents, if applicable;*

        (8)    *enter any additional remarks;*

        (9)    *submit the automated PAR through the chain of command; and*

        (10)    *notify the affected member and unit timekeeper of the final decision.*

**B.**    Sickness in Family (Civilian Personnel)

With the approval of the appropriate unit supervisor, a compensatory time day, vacation day, sick day, or a day excused without pay (nondisciplinary) may be granted to a civilian member for illness, disability, or injury of a member's family or household. Family encompasses mother, father, husband, wife, brother or sister (including step or half), son or daughter (including step or adopted), father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, grandparents, grandchildren, court-appointed legal guardian, and a person for whom the employee is a court-appointed legal guardian.

**C.**    Death in Family / *Bereavement Leave*

    1.    A member of the immediate family will be defined as follows:

        a.    A sworn member's mother or father (including step), wife, husband, daughter or son (including step or adopted), sister or brother (including step or half), father-in-law, mother-in-law, daughter-in-law, son-in-law, sister-in-law, brother-in-law, grandparent, grandchild, or domestic partner.

        b.    A civilian member's mother, father, wife, husband, daughter or son (including step or adopted), sister or brother (including step or half), father-in-law, mother-in-law, daughter-in-law, son-in-law, sister-in-law, brother-in-law, grandparent, grandchild, or domestic partner.

ARROYO.DEF-004376

  c. Domestic partners are defined as two persons, regardless of their gender, who have a close personal relationship, sharing the same regular and permanent residence for at least six months; are each eighteen years of age or older; not married to anyone; not related by blood closer than would bar marriage in the State of Illinois; and are each other's sole domestic partner, responsible for each other's common welfare and jointly sharing their financial responsibilities.

    **NOTE:**  Members who meet the above definition for domestic partners will be granted bereavement leave according to the procedures listed in **Item III-C-2** of this directive.

 2. Bereavement leave will be granted to Department members in the following manner:

  a. Sworn members

   (1) Members of the rank of police officer

    (a) As per the Agreement between the City of Chicago and the applicable bargaining unit, leave with pay as a result of a death of a member of the immediate family will be granted to a police officer not to exceed three consecutive days, (except for brother-in-law and sister-in-law, which will be for the day of the funeral only).

    (b) Leave will be granted within seven calendar days immediately following the death of a member of the immediate family.

    (c) When an officer is entitled to bereavement leave and where death occurs and the funeral is to be held out of Illinois and beyond the states contiguous thereto, the employee will be entitled to a maximum of five consecutive days. For the purpose of this section, those states contiguous to the State of Illinois are Missouri, Iowa, Wisconsin, Indiana, Kentucky, and Michigan.

   (2) Members of the rank of sergeant

    (a) As per the Agreement between the City of Chicago and the applicable bargaining unit, leave with pay as a result of a death of a member of the immediate family will be granted to a sergeant not to exceed three consecutive days including regularly scheduled days off.

    (b) Leave will be granted within fourteen calendar days immediately following the death of a member of the immediate family.

    (c) When a sergeant is entitled to bereavement leave and where the death occurs and the funeral is to be held out of Illinois and beyond the states contiguous thereto, the employee will be entitled to a maximum of five consecutive days. For the purpose of this section, those states contiguous to the State of Illinois are Missouri, Iowa, Wisconsin, Indiana, Kentucky, and Michigan.

     **EXCEPTION:** In the case of the death of a sister-in-law or a brother-in-law, a sergeant will have the option of extending the three day leave set forth for up to two additional days to a maximin of five consecutive days leave.

   (3) Members of the rank of lieutenant

ARROYO DEF 004377

(a)     As per the Agreement between the City of Chicago and the applicable bargaining unit, leave with pay as a result of a death of a member of the immediate family will be granted to a lieutenant not to exceed three consecutive days, (except for brother-in-law and sister-in-law, which will be for the day of the funeral only), including regularly scheduled days off.

(b)     Leave will be granted within fourteen calendar days immediately following the death of a member of the immediate family.

(c)     When a lieutenant is entitled to bereavement leave and where the death occurs and the funeral is to be held out of Illinois and beyond the states contiguous thereto, the employee will be entitled to a maximum of five consecutive days. For purpose of this section, those states contiguous to the State of Illinois are Missouri, Iowa, Wisconsin, Indiana, Kentucky, and Michigan.

(4)     Members of the rank of captain

(a)     As per the Agreement between the City of Chicago and the applicable bargaining unit, leave with pay as a result of a death of a member of the immediate family will be granted to a captain not to exceed three consecutive days, (except for brother-in-law and sister-in-law, which will be for the day of the funeral only), including regularly scheduled days off.

(b)     Leave will be granted within fourteen calendar days immediately following the death of a member of the immediate family.

(c)     When a captain is entitled to bereavement leave and where the death occurs and the funeral is to be held out of Illinois and beyond the states contiguous thereto, the employee will be entitled to a maximum of five consecutive days. For purpose of this section, those states contiguous to the State of Illinois are Missouri, Iowa, Wisconsin, Indiana, Kentucky, and Michigan.

b.     Civilian members (*represented by AFSCME, SEIU, Unit II, and Illinois Nurses Association*)-In the event of a death in an employee's immediate family or domestic partner, such employee will be entitled to a paid leave of absence up to a maximum of three consecutive days including the day of the funeral. Where death occurs and the funeral is to be held out of Illinois and beyond the states contiguous thereto, the employee will be entitled to a maximum of five consecutive days.

c.     Civilian member (non-union)-Leave with pay as a result of death may be granted to employees not to exceed three consecutive days following the death of a member of the immediate family or domestic partner.

3.     When a civilian employee is entitled to bereavement leave and where death occurs and the funeral is to be held out of Illinois and beyond the states contiguous thereto, the employee will be entitled to a maximum of five consecutive days. For purpose of this section, those states contiguous to the State of Illinois are Missouri, Iowa, Wisconsin, Indiana, Kentucky, and Michigan.

4.     The member requesting bereavement leave, if time permits, will:

a.     *access CLEAR Applications - Personnel Suite to generate an automated PAR;*

b.     *select "Personnel Action Request";*

c.     *select "Death In Family" from the available type of actions;*

d.     *enter the effective and end dates;*

ARROYO.DEF.004378

  e. *list relationship to deceased;*

  f. *enter location of where the death occurred or the funeral is to be held;*

  g. *enter the member's collective bargaining unit; and*

  h. *submit the automated PAR through the chain of command.*

 5. If circumstances do not permit the member to *submit an automated PAR request for bereavement leave, the member's supervisor will generate an automated Personnel Action Request, following the step delineated in item III-C-4 of this directive.*

 6. Annual or compensatory time furloughs will not be extended as a result of death occurring in the member's immediate family or of a domestic partner during such furlough unless the death occurs during the last three days of the furlough period, at which time the procedure outlined in Item III-C of this directive will be followed, if applicable.

D. Jury Duty

 A member summoned to serve as a juror will follow the procedure as outlined in the Department directive entitled "Department Members Summoned to Jury Duty."

E. Excused (Non-Disciplinary)

 Unit exempt commanding officers may excuse a member without pay for nondisciplinary reasons not to exceed five calendar days. *Unit commanding officers will generate, submit, and approve an automated Personnel Action Request.*

 1. Unit exempt commanding officers will:

  a. *access CLEAR Applications - Personnel Suite to generate an automated PAR;*

  b. *select "Personnel Action Request";*

  c. *select "Create PAR by Administrator";*

  d. *enter the affected member's information;*

  e. *select "Excused Without Pay - Non-Disciplinary" from the available type of actions;*

  f. *enter the effective date;*

  g. *enter the circumstances of the incident;*

  h. *enter any remarks, if applicable; and*

  i. *submit the automated PAR through the chain of command.*

   **NOTE:** *A separate automated PAR must be generated for each day of excused absence.*

 2. A designated unit supervisor may excuse a member for nondisciplinary reasons *during a tour of duty* not to exceed one working day.

F. Traumatic Incidents

 The Street Deputy or, in his or her absence, the appropriate area deputy chief, Bureau of Patrol, will be responsible for authorizing the detail of an officer involved in a traumatic incident to the Bureau of Organizational Development on his or her next scheduled tour of duty. When, in the opinion of the authorizing member, such detail should be delayed, the affected member may, in the interim, be excused with pay.

  **NOTE:** Refer to the Department directive entitled "Traumatic Incident Stress Management Program" for further information.

## IV. ENDING EMPLOYMENT WITH THE DEPARTMENT

ARROYO_DEF_004379

A.     To end employment with the Department, including retiring and discharged members, Department members will submit to the Employment Section, Human Resources Division:

1.     an *automated* Personnel Action Request (PAR). Members who are either resigning or retiring will complete an automated PAR form via the CLEAR system and will submit a printout of the electronic automated PAR to include the member's signature and the signature of the commanding officer/supervisor; and

> **NOTE:**     The effective date is the close of business (COB) on the last day for which the member receives pay from the Department. This date will be entered in the "Effective Date" box on the *automated* PAR *application*. Members who are unable to complete an Automated PAR via the CLEAR system will contact the Human Resources Division, Monday through Friday, 0900-1700 hours, excluding holidays, or the Information Services Division Help Desk at all other times, for further direction.

2.     a completed City of Chicago Department of Human Resources End of Employment Form (PER 78);

3.     a completed City Notice to City Employees of Ethics Rules Concerning Post-City Employment form; and

4.     a completed Department Notice To Employees Leaving Employment form (CPD-62.144).

B.     Resignations/retirements should be submitted at least two weeks prior to leaving the City service. Incomplete documents will not be processed and returned to the unit/district for completion.

C.     After acceptance by the Human Resources Division, a resignation is final and cannot be withdrawn by the member.

D.     Unit commanding officers will ensure that:

1.     the original Time and Attendance Record (CPD-11.602) of a member who ends employment with the Department, *including discharge from the Department*, will be forwarded to the *Centralized Timekeeping Unit (Unit 222)* after the member's last day on the payroll. For resignations/ retirements, upon completion of the buy-out process, the *Centralized Timekeeping Unit* will forward the original Time and Attendance Record to the Employment Section, Human Resources Division, *in accordance with the provisions of the directive entitled "Payroll and Timekeeping - Attendance."*

2.     a City of Chicago Department of Human Resources End of Employment Form (PER 78) is completed during the end of employment interview as outlined in **Item V** of this directive.

3.     a City of Chicago Notice to City Employees of City Ethics Rules Concerning Post-City Employment and a Department Notice to Employees Leaving Employment (CPD-62.144) forms are completed. The forms will then be forwarded to the *Employee Services and Assignment Section*, Human Resources Division.

4.     a civilian member is not permitted to utilize vacation time accrued in the current year but available for use in the following year. Vacation time accrued for use in the following year must be paid on a supplemental payroll.

5.     prior to the effective date of the ending employment with the Department, the district commander, unit commanding officer, or the civilian unit ranking member affected will ensure that all Department equipment issued to the member is collected and returned to the Human Resources Division or Equipment and Supply Section, as appropriate. The following Department equipment will be recovered:

    a.     Star;

    b.     Hat Shield;

ARROYO-DEF-004380

    c.     Identification Card (Sworn & Civilian);

    d.     Badge (Applicable Civilian Members); and

    e.     Gas Mask / Respirator, if one has been assigned to the member.

> **NOTE:**     The resigning member is not required to return a Department-issued helmet and face shield.

6.     *Members ending employment with the Department who are unable to generate and submit an automated PAR due to medical leave of absence, leave of absence, suspension pending separation, administrative leave (no pay) pending separation, or otherwise unavailable will be responsible for contacting the Employee Services and Assignment Section, Human Resources Division. Members ending employment with the Department who are unable to generate and submit an automated PAR will also complete and submit the following:*

    a.     *A Personnel Action Request (CPD-11.612) formset indicating resignation;*

    b.     *a completed City of Chicago Department of Human Resources End of Employment Form (PER 78);*

    c.     *a completed City Notice to City Employees of Ethics Rules Concerning Post-City Employment form; and*

    d.     *a completed Department Notice To Employees Leaving Employment form (CPD-62.144).*

## V.    END OF EMPLOYMENT INTERVIEWS

A.     The commanding officer, supervisor, or a designee will conduct an end of employment interview with a member ending employment with the Department, including retiring and discharged members.

B.     Data obtained from the end of employment interview will be recorded on the *City of Chicago Department of Human Resources End of Employment Form (PER 78).*

> **NOTE:**     Data contained on the *City of Chicago Department of Human Resources End of Employment Form (PER 78)* will be utilized by the City of Chicago Department of Human Resources for retiree records; therefore, the prompt return of the completed report to the *Employee Services and Assignment Section*, Human Resources Division, is necessary.

C.     The Department member conducting the end of employment interview will:

1.     request the terminating member sign the *City of Chicago Department of Human Resources End of Employment Form (PER 78)*. If the terminating member refuses or is not available to sign, the interviewer will note the appropriate reason in the section designated "Employee Signature."

> **NOTE:**     When unable to conduct an end of employment interview due to compulsory retirement, disciplinary discharge, absent without permission, etc., the Department member who would have conducted the interview will complete a *City of Chicago Department of Human Resources End of Employment Form (PER 78)*, stating the reason for termination and any other pertinent data. The interviewer will state in the "Additional Comments Required" section that the parting member was not available.

2.     document in the "Additional Comments Required" space on the *City of Chicago Department of Human Resources End of Employment Form (PER 78)* :

    a.     an explanation for:

       (1)     all separating members whether leaving voluntarily or involuntarily; and

ARROYO_DEF_004581

    (2)    when the date of the last day worked is different from the date of the last day on the payroll.

    b.    the terminated member signed and received a copy of the Notice To Employees Leaving Employment form (CPD-62.144).

3.    upon completion of the end of employment interview:

    a.    provide a copy of the *City of Chicago Department of Human Resources End of Employment Form (PER 78)* and the Notice to Employees Leaving Employment form (CPD-62.144) to the terminating member, if available.

    b.    forward the originals directly to the Department's Human Resources Division via intra-departmental mail.

        **NOTE:**    The Department's Human Resources Division will forward a copy of the *City of Chicago Department of Human Resources End of Employment Form (PER 78)* to the City of Chicago Department of Human Resources.

D.    Inquiries regarding preparation of the *City of Chicago Department of Human Resources End of Employment Form (PER 78)* will be directed to the *Employee Services and Assignment Section*, Human Resources Division.

**VI.**    **SEPARATION FOR OTHER CITY SERVICE POSITION**

A member leaving a career-service position to accept a career-service position with another City department will:

A.    *access CLEAR Applications - Personnel Suite to generate an automated PAR;*

B.    *select "Create PAR by Employee";*

C.    *select "Separation to Accept Other City Position/Title" from the available type of actions;*

D.    *enter the effective date, which is the close of business on the last day which the member receives pay from the Chicago Police Department;*

E.    *enter both the new job title and new city department;*

F.    *submit the automated PAR through the chain of command.*

    **NOTE:**    *Members electing to leave the Department for another city service position are reminded that in addition to submitting an automated PAR members will follow the appropriate procedures as outlined in item IV of this directive.*

(Items indicated by *italics/double underline* were added or revised.)


Authenticated by KC

T17-161 EW

Eddie T. Johnson
Superintendent of Police

ARROYO-DEF-004382